```
 1                  IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF COLUMBIA
 2

 3      United States of America,        ) Criminal Action
                                         ) No. 21-cr-246
 4                        Plaintiff,     )
                                         ) VIDEO STATUS CONFERENCE
 5      vs.                              )
                                         ) Washington, DC
 6      Daniel Rodriguez,                ) August 31, 2021
                                         ) Time:  2:00 p.m.
 7                        Defendant.     )
        _____
 8
                     TRANSCRIPT OF VIDEO STATUS CONFERENCE
 9                               HELD BEFORE
                THE HONORABLE JUDGE AMY BERMAN JACKSON
10                     UNITED STATES DISTRICT JUDGE
        _____
11
                          A P P E A R A N C E S
12

13      For Plaintiff:      Kimberly Paschall
                            Assistant U.S. Attorney
14                          555 Fourth Street, NW
                            Washington, DC  20530
15                          (202) 252-2650
                            Email:  Kimberly.paschall@usdoj.gov
16
        For Defendant:      Rebecca Ann Levy
17                          Katherine A. Tanaka
                            Margaret Lambrose
18                          Assistant Federal Public Defender
                            411 E Bonneville Avenue, Suite 250
19                          Las Vegas, NV  89101
                            (702) 388-6261
20                          Email:  Rebecca_levy@fd.org
                            Email:  Katherine_tanaka@fd.org
21                          Email:  Maggie_lambrose@fd.org

22      _____

23      Court Reporter:           Janice E. Dickman, RMR, CRR, CRC
                                  Official Court Reporter
24                                United States Courthouse, Room 6523
                                  333 Constitution Avenue, NW
25                                Washington, DC  20001
                                  202-354-3267
```

1          THE COURTROOM DEPUTY:  Your Honor, good afternoon.

2     This afternoon we have a criminal video status conference.

3     This is case No. 21-246, the United States of America V. Daniel

4     Rodriguez.

5          Will counsel for the government please identify

6     herself and her colleague for the record?

7          MS. PASCHALL:  Good afternoon, Your Honor.  Kimberly

8     Paschall for the United States, joined by my colleague Tara

9     Ravindra.

10          THE COURT:  Good afternoon.

11          THE COURTROOM DEPUTY:  Counsel for the defendant

12     please identify yourself and your colleagues for the record.

13          MS. LEVY:  Good afternoon.  Rebecca Levy, Katherine

14     Tanaka, and Maggie Lambrose for Mr. Rodriguez, who is present

15     via video technology.

16          THE COURTROOM DEPUTY:  Will the defendant please

17     place his name on the record and verify that he can see Her

18     Honor and both government and defense counsel.

19          THE DEFENDANT:  Yes.  My name is Daniel Joseph

20     Rodriguez and I can hear everyone and see everyone.

21          THE COURT:  All right.  And, Mr. Rodriguez, have you

22     discussed with your lawyers the fact that you have a right to

23     be in court in person for this proceeding, and do you agree to

24     proceed by video this afternoon?

25          THE DEFENDANT:  Yes, I do agree to go on video, Your

1    Honor.

2              THE COURT:  All right.  And I find that that's

3    appropriate under the CARES Act, for your protection and for

4    everyone's protection, given the current preference and the

5    Court's standing orders for video proceedings, that we can at

6    least move forward and keep this case moving in this manner.

7              All right.  We got together last, I believe, on July

8    16, and discovery was ongoing, and continued this matter to see

9    where we were headed.  There was still some discussion that

10   needed to take place between the parties and some discovery

11   that needed to take place and question about a possible plea

12   offer.  So what's the status of the matter right now?

13             MS. PASCHALL:  Thank you, Your Honor.  The government

14   has continued to make discovery disclosures.  Earlier this week

15   we sent approximately 270 pages worth of records to the defense

16   in this case.  Defense has also provided us with a large hard

17   drive, which the FBI in Los Angeles is downloading materials

18   relevant to defendant Rodriguez's case, to include his cell

19   phone that was taken during the search warrant, as well as some

20   other media.  We expect that to be sent back to defense counsel

21   as early as today.

22             We also filed this week -- or, excuse me, the end of

23   last week the status of discovery globally with the January 6

24   cases.  When we filed that memorandum it was our understanding

25   that in consultation with the federal public defender's office

1  here in D.C. we expect, within the next two weeks, to be

2  rolling out two different platforms, a Relativity platform and

3  an Evidence.com platform for both documentary evidence and

4  video evidence relative to the larger January 6th proceedings

5  that will available.  We expect that to start to become

6  available after the Labor Day holiday.  That's where we are

7  with the status of discovery at this point.

8          We did discuss with defense counsel about posable

9  disposition in this case.  We indicated to defense counsel that

10 in order for a plea offer to be made, we would have to have a

11 debrief.  Mr. Rodriguez is a mandatory debrief due to the

12 severity of the case and his importance in the January 6th

13 prosecution.  We also went over potential guidelines, as well

14 as potential departure from the guidelines based on his current

15 indictment, with defense counsel.

16          I believe Your Honor had also mentioned at the last

17 hearing concerns about this case as in being separate from

18 other defendants who are charged with assaulting officer

19 Michael Fanone.  We understand Your Honor's concerns about

20 judicial economy.  We want this to run as smoothly as possible.

21 And so our recommendation is going to be that we set this --

22 another status hearing on the same day as the other Michael

23 Fanone defendants who are currently set for September 28.  We

24 continue to have discussions with defense counsel about

25 possible debrief and any outstanding discovery issues.  And we

1    would ask for tolling of the speedy trial clock at this time.

2           THE COURT:  I've seen the debrief requirement

3    referenced a few times here in pleas that I've handled already

4    in these cases.  But are you saying that it's something that

5    needs to precede the entry of any plea?  Because I think that

6    happened in one case, but not another.

7           MS. PASCHALL:  Yes, Your Honor.  This is a slightly

8    different posture than some of our other January 6th cases,

9    where we would consider this defendant a mandatory debrief

10   before the plea could be offered.

11          THE COURT:  Before the plea can be offered or before

12   the plea can be entered?  I'm sorry, you swallowed your last

13   word there.

14          MS. PASCHALL:  Offered, Your Honor.

15          THE COURT:  Okay.  So, Ms. Levy, what do you have to

16   add with respect to that and the status of the case?

17          MS. LEVY:  I was unaware that there would be a

18   mandatory debrief prior to a plea agreement even being offered.

19   So we have not even discussed that timing with our client.

20          My concern, Your Honor, is that we have basically the

21   video that the government would need and, you know, we are

22   prepared for, at least, the Court to set calendar call and

23   trial date within my client's speedy trial rights; they're

24   tolling, I mean, thus far, and my client has been sitting in

25   custody.

1              You know, we had sent a drive to the government weeks

2     ago with the anticipation we would get it back within like a

3     week, and we still have not received that.  We did receive some

4     records on Monday, but those would not be, in my opinion,

5     essential records to go to trial.  At this point I think we're

6     ready.  And then, you know, if we can resolve the case,

7     wonderful.  You know, obviously, you know, we would all work

8     towards that goal, if possible.

9              But, without a trial date on the calendar, I am

10    concerned about my client's speedy trial rights, particularly

11    because he has been in custody.  And we have been patient thus

12    far, but I am concerned about waiting for this database to go

13    online because, you know, I'm getting some conflicting

14    information about when exactly all of it would be uploaded.

15    And I'm concerned, based upon some of the things that I'm

16    seeing in other cases, where prosecutors are saying it is

17    likely to be closer to 2022, and certainly we don't want to be

18    in that position.

19             So, Your Honor, with all that said, I would ask for a

20    trial date.  And hopefully we can, you know, work something out

21    with the government and, if not, at least we have that trial

22    date on calendar, Your Honor.

23             THE COURT:  Well, there's a lot in that statement.

24    First, I don't understand, from the prosecution, have you

25    extended a plea offer?  You're saying you're not going to

1  extend a plea offer until there's been a debrief.  And how can

2  Ms. Levy not know that?

3          MS. PASCHALL:  My apologies, Your Honor.

4          THE COURT:  Are you talking to each other or are you

5  just waiting until you get your status conferences before me?

6          MS. PASCHALL:  No, Your Honor.  And I apologize, we

7  did have a phone conversation with Ms. Levy and prior counsel,

8  Mr. Riddle.  We may not have been as clear as we needed to be

9  with Ms. Levy in that discussion.  To be clear now, the

10  government is saying that we will not be offering a plea offer

11  in this case, because we consider him a mandatory debrief,

12  until a debrief would occur.  That is the posture we are in

13  now.

14          THE COURT:  So how does he debrief without waiving

15  his Fifth Amendment rights, with no plea agreement in place?

16  How do you do that?

17          MS. PASCHALL:  So we have a standard debriefing

18  letter that we have extended to other January 6 defendants

19  before plea offers have been extended.  I have done this in

20  two, possibly three cases of my own, where we lay out exactly

21  the contours of what would be appropriate, what the

22  government would be able to use, we discussed the *Kastigar* case

23  and the contours therein and then have the appropriate

24  discussions necessary for the government to feel that we've

25  done our due diligence for our other January 6th cases that are

1    still pending investigation.

2         THE COURT:  Have you sent this letter to counsel for

3    the defendant?

4         MS. PASCHALL:  No, we have not, Your Honor.  The

5    discussion that we had with defense counsel happened about

6    three weeks ago, and that was before defense counsel was going

7    to be able to meet in person with their client.  So, we had

8    made the representation then that we would be expecting the

9    defendant to come in and debrief.  I apologize if that was not

10   clear in those discussions, but that is our intention.

11        The government would be happy to send that standard

12   debriefing letter so that everyone knows the ground rules that

13   we are talking about for a debrief.

14        THE COURT:  Well, it's just -- and you haven't even

15   suggested what the contours of a plea would be yet?

16        MS. PASCHALL:  We did have a discussion with defense

17   counsel about what the standard plea offer has been in cases of

18   this type, what we had been looking at in some of the other

19   assault-on-law-enforcement cases, which has generally been a

20   plea to the 1512 and the 111 charge.  However, this defendant

21   is in a slightly different position than some of those

22   defendants, like some of the other defendants Your Honor has

23   who assaulted Officer Fanone, and that he also has, I believe,

24   the destruction of property count, which is one the government

25   may be seeking out of any plea offer, given its relevance to

1    the terrorism statute.

2           So those are the counts we had discussed as

3    potentially asking for in any plea.  But, again, because we

4    would be asking for a mandatory debrief we did not make any

5    firm offer and cannot make any firm offer at this time.

6           THE COURT:  All right.  Well, you could at least

7    formally send out the letter inviting him for the debrief.  It

8    seems like we haven't really moved the ball since the last

9    hearing with respect to the disposition.  And I'm not

10   suggesting that he needs to enter into one; he has a right to

11   have a trial.  But, he ought to at least know what it would

12   involve and if there's some precondition to that.  This

13   shouldn't be the first time that they're finding out about it.

14          Now, in terms of your review of the defendant's hard

15   drive, how much longer do you think that's going to take?

16          MS. PASCHALL:  Your Honor, when we spoke with the FBI

17   last, they indicated that the download of all the materials was

18   happening today.  They expected it to be finished today, and

19   that we would be shipping that back to the defense either today

20   or tomorrow.

21          THE COURT:  All right.  Well, that wasn't my

22   question, how long it's going to take you to download it.  I

23   asked you -- you're going to have to review it, I guess, to

24   determine if you intend to introduce any of it as evidence in

25   your case, yes?

 1              MS. PASCHALL:  Yes, Your Honor.  We have those --

 2     most of those materials already.  Some of the scoped materials

 3     were sent to the defense in the initial download of that

 4     discovery that was done back in July.

 5              The government is also aware of additional

 6     information that will be disclosed on that hard drive.  We have

 7     done a fulsome review of everything that is on that hard drive.

 8     The government is aware of what we would be using.  I would be

 9     happy to discuss that with defense once they receive those

10     materials, as well.

11              THE COURT:  All right.  Well, I have a little

12     problem -- and I have a lot of friends named Levy.  Are you

13     Levy or Levy?

14              MS. LEVY:  Levy.

15              THE COURT:  You were on mute, so I didn't catch the

16     sound.

17              MS. LEVY:  Oh, it's like the New Orleans levees.

18              THE COURT:  All right.  I apologize if I

19     mispronounced it.

20              I'm a little concerned, what the government is saying

21     with respect to the information that it's going to be making

22     available on these databases is that this is information that

23     has to be produced pursuant to its Rule 16 obligations and it

24     also -- I would think the defense is going to want to review it

25     in connection with the possibility that there's exculpatory

1    information in there or aspects of the video that you might

2    want to use in your defense of your client.  So, I guess I'm

3    not sure why you would want to set a trial date before you've

4    reviewed that material?

5               MS. LEVY:  Your Honor, the concern that I have is

6    that this may be an ongoing situation with Mr. Rodriguez, in

7    that we set a status for September, but this database, you

8    know, does not have all the information until, you know, months

9    and months from now, and I'm concerned about the continued

10   delay.  I would tell the Court, I'm also concerned that

11   Mr. Rodriguez may be looking at other charges.  Perhaps the

12   government is, you know, we're delaying now and then all of a

13   sudden my client has a superseding indictment, which is

14   something we have sniffed out from the internet.  Twitter has

15   given us some information that that might be on the horizon.

16              So here we might be preparing for what we believe to

17   be a trial on the charges thus far, and the government is

18   requesting more time just to provide discovery on these charges

19   and then has a superseding indictment that delays the case even

20   further.

21              So, I'm concerned about --

22              THE COURT:  Well, that would happen if I set a trial

23   date today or not.  They're allowed to supersede, are they not?

24              MS. LEVY:  Yes, Your Honor.  But I'm concerned about

25   delaying this inevitable -- you know, forever, allowing the

1    government, you know, time to basically gather evidence for

2    this case but then really going to supersede him, which they

3    certainly can supersede him if they want.  But we're sort of

4    sitting here without a trial date and my client has been in

5    custody for quite some time.  We have video from the most

6    significant allegation in this case and we've had that video

7    for quite some time.

8           So, in terms of what we are ready for, we are

9    prepared for a trial date at this time, Your Honor.

10          THE COURT:  All right.  Well, I understand that he's

11   been locked up since April of 2021, and certainly defendants

12   that are incarcerated are getting -- we want to get them to

13   trial.  Even though everybody has a speedy trial right, it's

14   more urgent if they're detained.  As you're probably well

15   aware, there are people who have been detained since January

16   6th.  And then, of course, there are people that have been

17   detained for offenses other than the assault on the Capitol on

18   January 6th that, unfortunately, have been there since 2020 or

19   2019, during the period of time when the court was closed and

20   it wasn't bringing jurors to the courthouse at all.

21          So, now we are bringing jurors to the courthouse and

22   we are trying to move cases forward.  And he is a priority, but

23   he's not the only one in that queue.  So that is something we

24   need to talk about when we're trying to pick a trial date, it

25   has to be a trial date that we can accommodate.

1              Now, my first question is:  Are you planning to file

2       any motions in connection with this case?

3              MS. LEVY:  Your Honor, that depends on what we get in

4       this drive that we are anticipating that we receive, I'm

5       hoping, in the next few days.  So, we were supposed to receive

6       that two weeks ago.  So we were hoping to have filed anything

7       prior to this status check, but because we haven't received

8       that, you know, I'm unclear about that.  So, I don't know.

9       There would be really two issues:  One, if that discovery then

10      leads us to the point where we have to file either a pretrial

11      motion or a motion in limine and, two, any concerns we have

12      about my client's custodial status, given the delay in the

13      trial date.

14             THE COURT:  All right.  You can file a bond motion.

15      There's no date a bond motion is due.  People can file them

16      anytime; thus, there's nothing stopping you.

17             Motions in limine, I will set a whole separate

18      schedule once we have a trial date.  We count backwards to when

19      the pretrial conference is going to be and then the motions in

20      limine have to have been fully briefed before that.  So you

21      basically count back a week for the reply and two weeks for the

22      opposition, et cetera, going back to when they have to be

23      filed.

24             So, until we have a trial date, we don't have a due

25      date for motions in limine.  But my question was:  Are you

1    planning to file any motions to suppress?  And you're saying,

2    with respect to the matter on the hard drive, you don't know

3    yet.  But, I was told the last time you were here that there

4    have been a custodial interview, I think, that there were 175

5    files and body-worn camera evidence and quite a volume of

6    material you've been provided so is there anything that you're

7    planning to move to suppress because if you want to move this

8    case along the thing to do would be to set a schedule for that

9    to start with.

10         MS. LEVY:  I think that would be appropriate, Your

11   Honor.  We would request a scheduling date for pretrial

12   motions.

13         THE COURT:  Okay.  When do you want to file them?

14         MS. LEVY:  Your Honor --

15         THE COURT:  We'll set a date for the filing of

16   motions.  You tell me when you can file them and their response

17   is due in two weeks and then we set a hearing date.

18         So, you asked for a calendar call.  We don't have

19   calendar calls on this docket, so I'm not exactly sure what you

20   meant.  I take it you want a trial date, and what the trial

21   date can be reasonably depends on whether there are motions

22   that are filed or not and how long it takes to resolve them.

23   But if you want to get started, I'm willing to get started, but

24   the ball starts -- the first volley is the motion to suppress.

25         So, if you would like a scheduling for the filing of

1    the motions to suppress, I would be delighted to accommodate

2    you, but it starts with:  When can you have them?

3              MS. LEVY:  I would request 45 days.  I would -- the

4    only caveat would be is if we get that disk late from the

5    government.  So as of today, I would request 45 days, Your

6    Honor.

7              THE COURT:  Okay.  I would just like to say that you

8    were quite vocal about objecting to a status hearing in 30

9    days, but now you're asking for 45 days to even start the

10   process of filing motions.  So even assuming that everybody

11   then opposes them on time and the reply is filed on time and we

12   have a hearing date set promptly -- and I'm willing to set a

13   hearing date today on motions filed within that timeframe --

14   you're already seeing what's happened to the trial date here,

15   through no-fault of anyone's, but because of the need to

16   resolve motions first.  So, let me pull up my calendar.

17             Once we, hopefully, get past the requirement of

18   having to use the ceremonial courtroom for our voir dires for

19   every single trial in the courthouse, and being required to

20   have trials only in certain courtrooms in the courthouse, and

21   each judge can go back to scheduling their own cases, I've got

22   plenty of time.  Where things start to get dicey is dealing

23   with the shared facilities of the court for voir dire.

24             But, let's see, 45 days from now is mid October.  And

25   I would encourage the government, under all these

1    circumstances, to provide the download that it's expecting to

2    provide on the schedule that it has set.  If it doesn't and you

3    need additional time to file your motions, let me know.  But,

4    that would make the motions due October 15, any oppositions

5    October 29, and reply November 5th.  And with that schedule, we

6    could set a hearing on any motions to suppress on November 10,

7    November 12, November 15, November 16.

8              MS. PASCHALL:  Your Honor, I am going to be out of

9    the jurisdiction November 10 through 13.  I am widely available

10   the week of November 15, and I believe November -- the week of

11   November 22nd is probably the holiday.  So perhaps the week of

12   the November 15th would be best.

13             THE COURT:  All right.  How about November 16, at

14   9:30 in the morning, for a motions hearing in this case?

15   Ms. Levy?

16             MS. LEVY:  That's fine, Your Honor.

17             THE COURTROOM DEPUTY:  They're in Vegas.

18             THE COURT:  I'm sorry.  We can do it later in the

19   day, if that's too early.  How many -- are you two hours

20   behind, or three?

21             MS. LEVY:  We're three, Your Honor.

22             THE COURT:  All right.  Why don't we set it for

23   1 p.m. Eastern Standard Time.

24             MS. LEVY:  Your Honor, are those still via video?

25             THE COURT:  I'm happy to do it in person, if you want

 1    to be here in person.  At this point it's really not clear to

 2    me what will be happening in this building by then.  But we can

 3    have motions hearings in person now, if we want.  Given where

 4    you're located and where the defendant is located, I was going

 5    to set it down by video.  But if the parties want to have it in

 6    person, we can have it in person.

 7              I'm not exactly sure where he's being detained at the

 8    moment.  Is he here?

 9              THE COURTROOM DEPUTY:  He's in Northern Neck.

10              MS. PASCHALL:  He's in Northern Virginia.

11              THE COURT:  Okay.  If you want to have that motions

12    hearing in person, we can have it in person.  I don't want to

13    make this too inconvenient for everybody else.

14              So what's your preference?

15              MS. LEVY:  My preference, Your Honor, would be to do

16    it in person at this point.  But, obviously, depends on how

17    things go with COVID.

18              THE COURT:  We're having individual hearings, if it's

19    one defendant and, you know, a lawyer or two on each side.  I'm

20    here, I'm in the courtroom right now; my staff is in the

21    courtroom right now, we're vaccinated.  As long as the people

22    entering the courtroom are vaccinated, we're having hearings.

23    And there's masks required in the building.  You can figure out

24    what all the requirements are.  But, I'm happy to make it, on

25    November 16, in person.  We'll make sure the defendant is

1    transported here.  And then that puts us back to 9:30 in the

2    morning.  So, I'll do that.

3               MS. LEVY:  Thank you, Your Honor.

4               THE COURT:  All right.  In the meantime, then, I

5    think I do want to keep this completion of the discovery under

6    some -- a short leash and supervision.  So, when is the other

7    status conference that you were talking about?  September 28th,

8    I think?

9               MS. PASCHALL:  That's correct, Your Honor.

10              THE COURT:  So, why don't we set another video status

11   conference on -- let's see.  We can make it on the afternoon of

12   October 1st, at 2 p.m. Eastern Standard Time -- that would be

13   by video -- just to ensure that everything has been provided to

14   the defense that's supposed to be provided to the defense by

15   that point and to ascertain where we are status-wise in

16   connection with the other individuals.

17              MS. PASCHALL:  That works fine for the government,

18   Your Honor.

19              THE COURT:  All right.  But it is not your intention,

20   am I correct, Ms. Paschall, to try those three gentlemen and

21   this gentleman at the same time?

22              MS. PASCHALL:  No.  But, we are happy to review the

23   status of those cases, which I think may be heading towards

24   disposition -- or, are closer to heading towards disposition

25   than this case in the interim -- so that by October 1 we may

1    have an answer firmly to that question.  Right now the answer

2    would be no.  But, of course, as I mentioned, we are aware of

3    Your Honor's concern and the government's concern of judicial

4    economy and not wanting to try a similar fact pattern in

5    different proceedings.

6         THE COURT:  It's not so much the judicial economy as

7    I just wasn't sure if there was a reason to designate it as

8    related, what the reason would be to designate it as related

9    but separate.  And I was thinking more of the burdens on the

10   witnesses and the overlap of the evidence.  I mean, it may be

11   that the defenses would not be appropriate to have them joined,

12   I don't know.  I don't know enough about each individual's

13   position.

14        MS. PASCHALL:  And from the government's perspective,

15   Your Honor, we do see them as different -- different fact

16   patterns.  But we also have the same concern about witnesses

17   and overlap between the cases.  So it's something that we are

18   still considering.  It's something that we are reviewing.  And

19   as I mentioned, we're going to continue to evaluate that.  We

20   should have a more firm answer on October 1.  But because of

21   this case being somewhat unique compared to the others that are

22   currently joined before Your Honor, we would intend to keep it

23   separate at this point.

24        THE COURT:  And is there anything you can say about

25   whether there's going to be a superseding indictment in this

1    case, or not?

2         MS. PASCHALL:  We are still evaluating that

3    possibility as well and actively evaluating it.  That's about

4    as much as I can say.

5         THE COURT:  All right.  I would like to know, by the

6    next time we're in here, that a plea offer -- whether it's

7    contingent on a debrief or not -- that this whole issue of how

8    the case could be disposed of, in the government's view, be put

9    to the defense.  I think by that point, and certainly by this

10   point, you know enough about the case to know what you would

11   consider to be a fair resolution of the case.  And the defense

12   is entitled to that information as it moves forward, to

13   consider what his options are.

14        MS. PASCHALL:  Yes, Your Honor.

15        THE COURT:  All right.  So, we now have a status

16   conference set for October 1st, and the defense has asked for

17   45 days to file motions to suppress.  Obviously, if, once

18   you've reviewed the material, you determine, Ms. Levy, by the

19   1st, that you don't have any motions that you intend to file

20   and are going to forego that step, then we don't need to await

21   the completion of the motion briefing and hearing schedule to

22   talk about trial dates.  But, if you're going to be filing

23   motions, then it seems to me that has an impact on the speedy

24   trial calculation.  And so, given your desire to have that time

25   to file these motions, what's your position with respect to the

1      speedy trial calculation between now and October 1st?

2             MS. LEVY:  Well, Your Honor, it would be my position

3      that it wouldn't toll until I file the motion.  And once I file

4      the motion, I would agree that the trial right is then tolled,

5      until the resolution of that motion.

6             THE COURT:  Well, of course it will be tolled when

7      you file the motion.  I'm talking about between now and then.

8      If you're saying you get 45 days to file your motions and the

9      clock just ticks, that doesn't quite seem right.  So, if you're

10     saying to me, I need to consider all this material and consider

11     the law and consider the facts and write motions and I want

12     time to do it, it seems to me that bears on whether it would be

13     in the interest of justice to exclude the time.

14            MS. LEVY:  Well, Your Honor, it's our position that,

15     you know, we would have been prepared to put forward any

16     motions that needed to be put forward if we had received the

17     discovery earlier, as we had anticipated; 45 days would be what

18     we need and then once we file the motion, then, as this Court

19     said, speedy trial would be tolled until the resolution of that

20     motion, and then there still would be a sufficient amount of

21     time after the resolution to prepare for trial.

22            And I'm unclear how this Court handles trial dates.

23     As I mentioned, in our district in Nevada we set a calendar

24     call one week prior to trial.  So I don't know exactly what

25     court dates would be next, after the resolution of these trial

1    motions, if the court just goes right into trial or if there is

2    some type of status or check prior to trial, Your Honor.

3              THE COURT:  We would have status conferences -- we

4    have status conferences along the way.  If I rule on the

5    motion, ordinarily, depending on which way the motion goes,

6    then I would set a status conference shortly thereafter to set

7    the trial date, the pretrial conference schedule, et cetera.

8    As I said, I require the parties to do quite a bit in advance

9    of trial.  When you get -- as soon as we set a date, you'll get

10   a pretrial order that requires you to submit, in advance of the

11   pretrial conference, all the voir dire, all the jury

12   instructions, all the motions in limine.

13             I rule on all evidentiary objections, decide what the

14   voir dire is going to be and rule on all the motions in limine

15   and the admission of all the exhibits at the pretrial

16   conference, so that what happens at trial is the trial.  And

17   so, we kind of reverse engineer from the trial date the

18   schedule for the submission of all that information.  And

19   there's a fair amount to do prior to the trial date.  But I

20   don't set trial dates for the purpose of, well, maybe moving

21   them some other time.  When I set them, that's when we're

22   having the trial.

23             So, that's how it works.  And as I said, I have the

24   availability to try this case.  I have a short trial possibly

25   starting at -- was it the end of October?  October 29th?  But I

1    think there's quite a likelihood that that person would enter a

2    plea.  But it's not entirely clear, it may go to trial.  I have

3    a four codefendant guns and drugs case that's going to trial in

4    March because we needed the ceremonial courtroom to get that

5    many people under one roof.  So between now and then I have

6    time to try this case.

7           I am happy to ascertain what all the dates would be

8    that would unable us to try this case between now and then.

9    Again, a lot of that depends on whether there's a way -- I

10   think if we can do jury selection later in the week of a week

11   that another judge has the ceremonial courtroom reserved.  The

12   way they're doing it is every Monday it's another trial.  But I

13   don't see why we couldn't have jury selection on a Wednesday or

14   Thursday or Thursday and Friday and then start our trial the

15   next week in this courtroom.  So, we can be creative.  There

16   are a lot of ways to get this done.

17          But, at this point, I don't see -- given your request

18   to file the motions, and I think to this point I've extended --

19   I've excluded the time from the speedy trial calculation until

20   now because of the extraordinary volume of material that the

21   government has an obligation to go through and to get to you.

22   These are unique circumstances.  And I respect the defendant's

23   right to a speedy trial, but he can't go to trial until you

24   know what the evidence is, and the government has an obligation

25   to get it to you.

1       Is there any reason to believe that the date of the

2   uploading of all this material is going to slip?

3       MS. PASCHALL:  Your Honor, do you mean specific to

4   Mr. Rodriguez or the dates that I mentioned for the January 6th

5   databases?

6       THE COURT:  The databases.

7       MS. PASCHALL:  Yes, that is actually going to be a

8   rolling production, Your Honor, beginning early next month, but

9   not finished at that point in time.  So --

10      THE COURT:  But any video, any body-worn camera video

11  or CCTV that you believe captured him you have produced

12  already?

13      MS. PASCHALL:  We have, Your Honor.

14      THE COURT:  All right.  So what is the relationship

15  of these databases to the discovery in this case?

16      MS. PASCHALL:  So, the databases are more to cover

17  the government's writ large Rule 16 and *Brady* obligations.  We

18  have done extensive review of the holdings of the FBI, the

19  Capitol police body-worn camera in this case and have disclosed

20  what is relevant to this indictment so far.  What would be in

21  the broader holdings are, frankly, Your Honor, things that

22  Ms. Ravindra and I cannot anticipate, things that have come up

23  in other investigations that also occurred on the lower west

24  terrace, where this case took place, other videos that

25  Ms. Ravindra and I have not reviewed that have come through

1    search warrants from other defendants, or 302 from

2    investigative interviews from the FBI that may have come

3    through from other defendants.  That's what those larger

4    databases are meant to capture, and that will be searchable

5    through the Relativity platform for defense counsel, as well as

6    videos that are going to be designated by GPS location for

7    defense counsel to the best of our ability, so that they can

8    search within those databases as necessary.

9           THE COURT:  All right.  So what you're telling me is

10   that you've gone through -- you've produced everything that, as

11   far as you know, bears on this case for purposes of Rule 16?

12          MS. PASCHALL:  What bears on this indictment.  Once

13   they get what is coming to them and the download of the phone

14   and the other media materials, I believe that is correct, Your

15   Honor.  Of course, we are continuing to review and evaluate, so

16   I cannot say with certainty that every Rule 16 relevant item

17   has been turned over.  But we have done extensive review, in

18   this case in particular, about what is in the FBI, Capitol

19   Police holdings.  We believe that we have met the obligations

20   to the best of our ability at this point, understanding that

21   those obligations are ongoing.

22          THE COURT:  All right.  So what's your position with

23   respect to the Speedy Trial Act between now and -- I don't even

24   think we need to go to the date the motions are filed, since

25   we're getting together again on October 1.

1          MS. PASCHALL:  We would ask for exclusion until

2    October 1, Your Honor, to continue that discovery process, to

3    have any further discussions with the defense, to get that

4    debrief letter that Your Honor would like us to send to the

5    defense -- which we are happy to do so -- and continue to

6    engage in discussions about the discovery as it is turned over.

7    We believe that the interest of justice would be served by

8    exclusion through October 1.

9          THE COURT:  Well, it's not -- I'm not saying I want

10   you to send a debrief letter, I'm saying that it's important in

11   this case for the government to extend plea offers.  And if you

12   have a prerequisite for a plea offer, you need to tell them

13   about it, and you need to tell them about it soon.  So that's

14   what I'm saying about the letter.  But I don't want to be here

15   on October 1 and hear, oh, yeah, I'm going to talk to her later

16   today about this or that or the other.  I want -- the reason I

17   put these cases off is so that something happens between this

18   hearing and the next hearing, not on the eve of the next

19   hearing.

20         So I think everybody knows what their marching orders

21   are.  And while I understand your position, Ms. Levy, I don't

22   think we're in a position to set a trial date right now, when

23   there are motions that are going to be filed.  And I also --

24         MS. LEVY:  Your Honor, may inquire?

25         THE COURT:  Go ahead.

1          MS. LEVY:  My apologies for interrupting.  Does this

2     Court make the determination of the pretrial motions, without

3     going to the other court?

4          THE COURT:  Say that again.

5          MS. LEVY:  In our district magistrate judges make the

6     determination of pretrial motions --

7          THE COURT:  No.  I decide my own motions.  I don't

8     see any -- you're not going to be back before a magistrate

9     judge in this case.  So when I just set that hearing date for

10    the pretrial motions, that was before me.

11         MS. LEVY:  Thank you, Your Honor.

12         THE COURT:  Yes, barring some unusual circumstance or

13    some unusual issue that I would want a report investigation --

14    recommendation from a magistrate judge, the trial judges here

15    do all the criminal work themselves.  And given what the

16    magistrate judges are dealing with right now and how

17    overwhelmed they are and understaffed they are, I can't imagine

18    anything that they're going to be doing in connection with this

19    case.  They handle, generally, the initial appearances, and

20    then there are misdemeanor cases where defendants can agree to

21    be tried by a magistrate judge.  So far I don't know that

22    that's been happening, although that would be -- they're all

23    very experienced and I don't know why it wouldn't be a good

24    idea.  But, any dates I'm setting right now relate to the group

25    of us here, that are on this Zoom.

1            So, given the fact that when I asked you how long you

2    wanted to file motions, you asked for 45 days, I don't see how

3    it would not be in the interest of justice to exclude the time

4    between now and our next status conference, which is October 1.

5    And so, while I understand your position with respect to the

6    defendant wanting a speedy trial and I share your desire to get

7    trials up and running all over this courthouse, and we're doing

8    everything we can in our power to accomplish that, I think it's

9    still appropriate, given the volume of the discovery in this

10   case and the need for everyone to get it to you and the need

11   for you to file all the motions that you would file on

12   Mr. Rodriguez's behalf, to exclude the time between now and

13   October 1.  So that's what I'm going to do.

14           Is there anything else I need to take up right now on

15   behalf of Mr. Rodriguez?

16           MS. LEVY:  Your Honor, if we could just ask for a

17   complete list from the government of the cases that they

18   believe could potentially be related to Mr. Rodriguez, that

19   would be helpful.

20           THE COURT:  I think there's only one; is that

21   correct?  The three codefendant case?

22           MS. PASCHALL:  That's correct, Your Honor.  And we're

23   happy to provide that citation.

24           THE COURT:  I think it's probably on the docket,

25   isn't it, that this case is related to those cases?

1          MS. PASCHALL:  I think that may be the case, Your

2     Honor, but we're happy to pass that information along.

3          THE COURT:  Mr. Haley, is there anything you were

4     about to ask me?

5          THE COURTROOM DEPUTY:  Yes.  I just want to check

6     with you --

7          (Off-the-record discussion between the Court and

8     courtroom deputy.)

9          THE COURT:  All right.  We're trying to juggle the

10    video rooms at Northern Neck and the D.C. jail on the 30th, and

11    the D.C. jail is apparently trying to reduce the numbers of

12    video rooms that we have available.  So some of the timing may

13    be in flux, but that will be the date.  And if we need to

14    change it, we'll issue an order and let you know.

15         All right.  Is there anything further I need to take

16    up right now on behalf of the defense, beyond the question

17    of --

18         MS. LEVY:  No.  Thank you, Your Honor.

19         THE COURT:  Anything further from the government?

20         MS. PASCHALL:  No, Your Honor.  Thank you.

21         THE COURT:  Thank you very much, everybody.

22         MS. LEVY:  Thank you for your patience, Your Honor.

23                        *   *   *

24

25

1

2                    CERTIFICATE OF OFFICIAL COURT REPORTER

3

4        I, JANICE DICKMAN, do hereby certify that the above and

5    foregoing constitutes a true and accurate transcript of my

6    stenographic notes and is a full, true and complete transcript

7    of the proceedings to the best of my ability.

8                          Dated this 5th day of October, 2021

9

10                       _____

11                       Janice E. Dickman, CRR, CMR, CCR
                         Official Court Reporter
12                       Room 6523
                         333 Constitution Avenue, N.W.
13                       Washington, D.C.  20001

14

15

16

17

18

19

20

21

22

23

24

25