UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 21-cr-246 (ABJ) |
| v. : | |
| : | |
| DANIEL JOSEPH RODRIGUEZ : | |
| : | |
| Defendant. : | |

**UNITED STATES' MOTION TO EXCLUDE TIME UNDER THE SPEEDY TRIAL ACT**

Pursuant to this Court's Order on October 4, 2021, the United States of America, by and through the United States Attorney for the District of Columbia, hereby moves this Court exclude time within which a trial must commence under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.* (hereinafter, "the STA"), until the next hearing before this Court on November 16, 2021. In support of its motion, the government states as follows:

**PROCEDURAL BACKGROUND**

The defendant is charged by indictment with violations of 18 U.S.C. §§ 1512(c)(2), 2 (obstructing an official proceeding, aiding and abetting); 18 U.S.C. § 231(a)(3) (certain acts during a civil disorder); 18 U.S.C. §§ 111(a)(1) and (b) (assaulting, resisting, or impeding certain officers); 18 U.S.C. § 641 (theft of government property); 18 U.S.C. § 1361 (destruction of government property); 18 U.S.C. § 1752(a)(1) and (b)(1)(A) (unlawful entry and remaining on restricted grounds with a deadly or dangerous weapon); 18 U.S.C. § 1752(a)(2) and (b)(1)(A) (disorderly and disruptive conduct on restricted grounds with a deadly and dangerous weapon); and 18 U.S.C. § 1752(a)(3) and (b)(1)(A) (impeding ingress and egress in restricted buildings and grounds with a deadly or dangerous weapon). The obstruction charge carries a maximum statutory penalty of twenty years.

1

The defendant has been detained pending trial since the date of his arrest on March 31, 2021.

On August 31, 2021, the defendant asked for a briefing schedule, and this Court ordered defense motions due on October 15, 2021, oppositions due on October 29, 2021, replies due on November 5, 2021, and scheduled an evidentiary hearing on November 16, 2021. The Court scheduled a further status hearing for October 1, 2021 and excluded time under the STA from August 31, 2021 until October 1, 2021.

Then, because of Court scheduling, the status hearing scheduled for October 1, 2021 occurred on October 4, 2021. At the hearing on October 4, 2021, the government moved for a further exclusion of time under the STA due to ongoing discovery and plea negotiations.

Even though the investigation into the defendant's charged conduct and the Capitol Breach is ongoing, substantial evidence specific to this defendant's present indictment (ECF No. 1) has been produced, as outlined in four discovery notices filed with the Court on July 15, 2021, August 30, 2021, and September 28, 2021. *See* ECF Nos. 20, 21, 25, and 28.  Separately, however, the government is in possession of a broad array of discoverable material among which may be interspersed arguably exculpatory material. These documents include, for example, thousands of hours of video footage from multiple sources (e.g., Capitol surveillance footage, body-worn-camera footage, results of searches of devices and Stored Communications Act ("SCA") accounts, digital media tips, Parler video, and unpublished news footage); hundreds of thousands of investigative documents including but not limited to interviews of tipsters, witnesses, investigation subjects, defendants, and members of law enforcement; and financial, travel, and communications records. The government has filed three memoranda regarding its ongoing and diligent efforts to

produce discovery from these voluminous materials (the "Discovery Status Memoranda"). S*ee* ECF Nos. 24, 29, and 33 incorporated herein by reference.

## ARGUMENT

For the reasons described below, the government seeks to continue this matter and exclude time under the STA to permit both parties to file motions in the case, and for the government to complete its collection, review, cataloging, and production of discoverable materials pursuant to Federal Rule of Criminal Procedure 16(a) and the *Brady*[1] doctrine.  Although we have been diligent in our efforts to comply with unprecedented discovery obligations, given the nature and volume of material, our plan is still ongoing.  Our need for reasonable time to address unprecedented complex discovery obligations warrants the requested continuance and exclusion of time under the STA, even over the defendant's objection.  In fact, much longer continuances have been granted in cases involving far less complexity in terms of the volume and nature of data. Further, the STA expressly contemplates that warranted periods of delay may lengthen the period of pretrial detention of a defendant, and the defendant's constitutional speedy trial rights are in no danger of being violated in view of the government's ongoing and diligent efforts to produce discovery.

### I.     The Defense Has Asked for Time to Brief the Issues in the Case.

The Speedy Trial Act lists a set of exclusions from the 70–day period, including "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." § 3161(h)(1)(D) (2006 ed., Supp. III). *See, United States v. Tinklenberg*, 563 U.S. 647, 650, 131 S. Ct. 2007, 2010 (2011) (the Act's exclusion does not require a court to find that the event the exclusion specifically describes, here

---

[1]      *Brady v. Maryland*, 373 U.S. 83 (1963).

the filing of the pretrial motion, actually caused or was expected to cause delay of a trial.) As the Court noted at the October 4, 2021 status hearing, the defendant requested a briefing schedule on August 31, 2021 that allowed sufficient time to prepare their motions. The Court ordered the defense to file motions by October 15, 2021, per the defense's request for 45 days to file the motions. Once the motions are filed, the STA exclusion period outlined in § 3161(h)(1)(D) should commence. Further, given that the defense requested the 45-day time period to file the motions, the time between the status held on October 4, 2021 and October 15, 2021, should also be excluded.

    II.    **The Government Is Continuing to Produce Discovery in the Larger Capitol Breach Investigation, to Ensure that All Arguably Exculpatory Materials are Produced in a Comprehensive, Accessible, and Useable Format.**

The Capitol Breach involved thousands of individuals inside and outside of the Capitol, many of whom overwhelmed and assaulted law enforcement officers. According to a Washington Post analysis of the events, the mob on the west side eventually grew to at least 9,400 people, outnumbering officers by more than 58 to one. *See* https://www.washingtonpost.com/investigations/interactive/2021/dc-police-records-capitol-riot/?itid=sf_visual-forensics. As these individuals attacked the Capitol, members of Congress, including the Vice President in his capacity as President of the Senate, worked to certify the Electoral College vote of the 2020 Presidential Election until doing so became unsafe due to the breach of the Capitol.

The amount of potentially discoverable information is truly unprecedented. The government's Discovery Status Memoranda have discussed this in some detail. *See, e.g.*, Dkt. 24 at 3-5. The voluminous materials described above comprise *at least* 250 terabytes of data, as the government has mentioned at previous status hearings. Since January, the government has worked diligently to obtain, organize, review, and make accessible this data, as described in the Discovery

Status Memoranda. As elaborated therein, these processes are complex and performing the required tasks correctly and comprehensively takes time.

For example, before documents are loaded to Relativity, we must ensure that we have the password for protected documents, that the documents were provided in a format that will open, and that we remove irrelevant software and system files that would only cloud the workspace and confuse reviewers. Once the documents are loaded, we must deduplicate, i.e., remove documents that have already been processed so that they are not analyzed or reproduced multiple times. We must also review documents to identify items that must be excluded or redacted. These processes are necessary to avoid production of unorganized data dumps, unreadable files, and unusable databases; or a failure of the government to take adequate steps to prevent both victims' and defendants' private information from being shared with hundreds of defendants.

We are prioritizing documents that have been requested by the Capitol Breach defendants. In September, we produced U.S. Capitol Police ("USCP") reports related to allegations of misconduct by law enforcement in connection with the events of January 6, 2021 and Metropolitan Police Department ("MPD") use-of-force investigation files. *See* ECF No. 28.

Similarly, the production of thousands of hours of digital evidence is also complex and time-consuming. As related in the Discovery Status Memoranda, we are using evidence.com as a platform to manage, review, and share digital media evidence. On Friday, September 3, 2021, the government amended its contract with Axon to fund a defense instance of evidence.com and to provide the necessary licensing services through Axon, to be administered by the Federal Public Defender for the District of Columbia. As of today, the government is technologically prepared to share body-worn-camera footage with all Capitol Breach defendants, subject to the entry of an appropriate protective order.

Other digital evidence must first be transmitted from law enforcement to the vendor and may then require conversion from a proprietary format before it can be ingested into evidence.com. The process of transmitting hundreds of terabytes of digital information alone can take weeks. As of Friday, September 7, 2021, our vendor has received the majority of USCP surveillance footage, and we are in the process of creating tags to organize the video data to facilitate its review by defendants, e.g., identifying cameras by location. As the material is organized, we will share it to the defense instance of evidence.com on a rolling basis.

While it may be tempting to view many of the charged cases (including the defendant's) as individual matters with straightforward discovery, the reality is that the Capitol Breach spawned hundreds of single cases bound by interrelated facts and shared evidence. Each defendant's conduct was enabled because of the collective efforts of the mob. Thus, within the thousands of hours of video footage depicting the conduct of other rioters or law enforcement officials, or the hundreds of interviews with rioters and law enforcement officials, *inter alia*, the defendant may identify conduct by other individuals he believes is relevant to his defense. For example, some defendants have claimed they believed they were authorized to enter the Capitol on January 6 because police officers purportedly did not impede their entry or did not confront them after they entered. Others may argue they believed they were permitted to enter or remain because they observed others doing so, or because others stated that the law enforcement was permitting people to do so.

Notably, the volume of discoverable materials is unrelated to the government's entirely justified decision to prosecute hundreds of cases simultaneously. It *is* directly related to decision of thousands of rioters – including the defendant – to participate in a massive crime in and upon the grounds of the Capitol. Certainly, it is no surprise that the Capitol and its grounds were

monitored by an extensive camera system, that responding law enforcement recorded the events on body-worn cameras, and that news agencies also captured the riot as it unfolded. The rioters themselves left behind their own enormous digital footprint as they proudly and overtly recorded each other on their cell phones and cameras and described their conduct through copious digital communications and social media posts. Similarly, the volume of potentially discoverable materials that was (and continues to be) generated and accumulated after January 6 is not a consequence of the number of pending prosecutions, but rather the unavoidably overt nature of this investigation. Had the government failed to move quickly to investigate, including collecting evidence from defendants' digital devices and social media accounts, it would have risked the loss or destruction of terabytes of evidence.[2]

Because the charges, the facts, and the evidence of each Capitol Breach case are inextricably bound, the government has taken a very expansive view of what information may be material or potentially exculpatory and thus discoverable. Given the volume of material, and because "[d]efendants are in a better position to determine what evidence they believe is exculpatory and will help in their defense,"[3] the government intends to provide all defendants with

---

[2] The attack on the U.S. Capitol and grounds, and all that it involved, was an attack on the rule of law. "The violence and destruction of property at the U.S. Capitol on January 6 showed a blatant and appalling disregard for our institutions of government and the orderly administration of the democratic process." *See* Federal Bureau of Investigation Director Christopher Wray, Statement before the House Oversight and Reform Committee (June 15, 2021) (hereinafter "FBI Director Wray's Statement"), available at
https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Wray%20Testimony.pdf.

Moreover, the prompt filing of charges against numerous offenders was a necessary general deterrent to those plotting future, similar attacks. As for specific deterrence, the prompt filing of criminal charges against the defendant—whom this Court has previously found to have shown an escalating willingness to advocate for and engage in violence—was vital to protect the community from him.

[3] *United States v. Meek,* No. 19-cr-00378-JMS-MJD, 2021 WL 1049773 *5 (S.D. Ind. 2021). *See also United States v. Ohle*, No. S3 08 CR 1109 (JSR), 2011 WL 651849 *4

7

all data that may contain such information, and in a manner that will facilitate the search, retrieval, sorting, and management of that information.

The government's approach to the production of voluminous discovery in the Capitol Breach cases, as elaborated in its previously filed Discovery Status Memoranda, is consistent with the *Recommendations for Electronically Stored Information (ESI) Discovery Production* developed by the Department of Justice and Administrative Office of the U.S. Courts Joint Working Group on Electronic Technology in the Criminal Justice System.[4] It is also the generally accepted approach in cases involving voluminous information. Notably, every circuit to address the issue has concluded that, where the government has provided discovery in a useable format, and absent bad faith such as padding the file with extraneous materials or purposefully hiding exculpatory material within voluminous materials, the government has satisfied its *Brady* obligations. *See United States v. Tang Yuk*, 885 F.3d 57, 86 (2d Cir. 2018) the "government's duty to disclose generally does not include a duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence") (internal citations omitted); *United States v. Stanford*, 805 F.3d 557, 572 (5th Cir. 2015) ("We have previously rejected such 'open file' *Brady* claims where the government provided the defense with an electronic and searchable database of records, absent some showing that the government acted in bad faith or used the file to obscure exculpatory

---

(S.D.N.Y. 2011)(not reported in F.Supp.2d)("placing a higher burden on the Government to uncover such evidence would place prosecutors in the untenable position of having to prepare both sides of the case at once. Indeed, the adversarial system presumes that the defense will be more highly motivated to uncover exculpatory evidence, so if anything, the onus is on defense counsel to conduct a more diligent search for material potentially favorable to his client. This is especially true considering that, if exculpatory evidence exists, the defense is in the best position to know what such evidence might be and where it might be located.")

[4] *See* https://www.justice.gov/archives/dag/page/file/913236/download.

material.").[5] The rare cases where courts have required the government to identify *Brady* within previously produced discovery are the exceptions to this widely observed rule. For example, in *United States v. Saffarinia*, 424 F. Supp. 3d 46 (D.D.C. 2020), in which the court ordered the government to identify any known *Brady* material within its prior productions that involved over a million records and defense counsel was working "*pro bono* with time constraints and limited financial resources," the court acknowledged that "persuasive authority has articulated a 'general rule' that 'the government is under no duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence.'" *Id*. at 84 n.15, quoting *Skilling*, 554 F.3d at 576.

### III.     An Ends-of Justice Tolling of the Speedy Trial Act is Warranted.

Given the due diligence the government has and continues to apply to meet its discovery obligations, and the time needed by both parties to brief the issues in the case, the government has established that the requested ends-of-justice continuance is warranted under the STA.

---

[5]     *See also United States v. Gray*, 648 F.3d 562, 567 (7th Cir. 2011) ("The government is not obliged to sift fastidiously through millions of pages (whether paper or electronic). . . [and] is under no duty to direct a defendant to exculpatory evidence [of which it is unaware] within a larger mass of disclosed evidence.") (quotation marks and citations omitted); *Rhoades v. Henry*, 638 F.3d 1027, 1039 (9th Cir. 2011) (rejecting *Brady* claim on the ground that the defendant "points to no authority requiring the prosecution to single out a particular segment of a videotape, and we decline to impose one"); *United States v. Warshak*, 631 F.3d 266, 297 (6th Cir. 2010) ("As a general rule, the government is under no duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence"); *United States v. Skilling*, 554 F.3d 529, 576 (5th Cir. 2009) (same), *aff'd in part, vacated in part, remanded*, 561 U.S. 358 (2010); *United States v. Pelullo*, 399 F.3d 197, 212 (3d Cir. 2005) ("*Brady* and its progeny . . . impose no additional duty on the prosecution team members to ferret out any potentially defense-favorable information from materials that are so disclosed."); *United States v. Jordan*, 316 F.3d 1215, 1253-54 (11th Cir. 2003) (concluding that the defendant's demand that the government "identify all of the *Brady* and *Giglio* material in its possession," "went far beyond" what the law requires); *United States v. Yi*, 791 F. App'x 437, 438 (4th Cir. 2020) ("We reject as without merit Yi's argument that fulfillment of the Government's obligation under *Brady* requires it to identify exculpatory material.");

The STA requires the district court to "exclude" from "the time within which . . . the trial . . . must commence":

> Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

18 U.S.C.A. § 3161(h)(7)(A).

As the Supreme Court has observed, the STA "recognizes that criminal cases vary widely and that there are valid reasons for greater delay in particular cases." *Zedner v. United States*, 547 U.S. 489, 497 (2006). "Much of the Act's flexibility is furnished by § 3161(h)([7]), which governs ends-of-justice continuances." *Id*. at 498. "Congress clearly meant to give district judges a measure of flexibility in accommodating unusual, complex, and difficult cases." *Id*. at 508. Congress recognized "that the many sound grounds for granting ends-of-justice continuances could not be rigidly structured." *Id*.

Although the "substantive balancing underlying the decision" to grant an ends-of-justice continuance is "entrusted to the district court's sound discretion," *United States v. Rice*, 746 F.3d 1074, 1078 (D.C. Cir. 2014), the requirement of express findings imposes "procedural strictness" on the court. *Zedner*, 547 U.S. at 509 (2006). Those findings "must indicate [the court] 'seriously weighed the benefits of granting the continuance against the strong public and private interests served by speedy trials.'" *Rice*, 746 F.3d at 1078 (quoting *United States v. Bryant*, 523 F.3d 349, 361 (D.C. Cir. 2008)).

The need for a reasonable period of time to address discovery obligations is among the reasons that justify an ends-of-justice continuance. The courts have repeatedly upheld, against defense challenges, discovery-based continuances involving far less complexity and far less data than exists in the Capitol Breach cases. *See, e.g., United States v. Bikundi*, 926 F.3d 761, 777-79 (D.C. Cir. 2019) (upholding ends-of-justice continuances totaling 18 months in a two-co-defendant health care fraud and money laundering conspiracy case, in part because the District Court found a need to "permit defense counsel and the government time to both produce discovery and review discovery").[6]

## CONCLUSION

---

[6] *See also United States v. Bell*, 925 F.3d 362, 374 (7th Cir. 2019) (upholding two-month ends-of-justice continuance in firearm possession case, over defendant's objection, where five days before trial a superseding indictment with four new counts was returned, "1,000 pages of new discovery materials and eight hours of recordings" were provided, and the government stated that "it needed more than five days to prepare to try [the defendant] on the new counts"); *United States v. Vernon*, 593 F. App'x 883, 886 (11th Cir. 2014) (District court did not abuse its broad discretion in case involving conspiracy to commit wire and mail fraud by granting two ends-of-justice continuances due to voluminous discovery); *United States v. Gordon*, 710 F.3d 1124, 1157-58 (10th Cir. 2013) (upholding ends-of-justice continuance of ten months and twenty-four days in case involving violation of federal securities laws, where discovery included "documents detailing the hundreds financial transactions that formed the basis for the charges" and "hundreds and thousands of documents that needs to be catalogued and separated, so that the parties could identify the relevant ones")(internal quotation marks omitted); *United States v. Lewis*, 611 F.3d 1172, 1177-78 (9th Cir. 2010) (upholding ninety-day ends-of-justice continuance in case involving international conspiracy to smuggle protected wildlife into the United States, where defendant's case was joined with several co-defendants, and there were on-going investigations, voluminous discovery, a large number of counts, and potential witnesses from other countries); *United States v. O'Connor*, 656 F.3d 630, 640 (7th Cir. 2011) (upholding ends-of-justice continuances totaling five months and twenty days in wire fraud case that began with eight charged defendants and ended with a single defendant exercising the right to trial, based on "the complexity of the case, the magnitude of the discovery, and the attorneys' schedules").

For the reasons described above, the government requests the Court grant its motion to exclude time under the Speedy Trial Act until the next hearing in this case, set for November 16, 2021.

                                          Respectfully submitted,

                                          CHANNING D. PHILLIPS
                                          ACTING UNITED STATES ATTORNEY

By:         */s/*
                 KIMBERLY L. PASCHALL
                 Assistant United States Attorney
                 D.C. Bar 1015665
                 555 4th Street, N.W.
                 Washington, D.C. 20530
                 (202) 252-2650
                 Kimberly.Paschall@usdoj.gov