# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>DANIEL RODRIGUEZ,<br><br>Defendant. | )<br>)<br>)<br>)<br>)   Crim. Action No. 21-0246 (ABJ)<br>)<br>)<br>)<br>) |

## ORDER

On March 24, 2021, a grand jury sitting in the United States District Court for the District of Columbia returned an eight count indictment charging defendant Daniel Rodriguez with Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2; Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. §§ 111(a)(1) and (b); Theft of Government Property, in violation of 18 U.S.C. § 641; Destruction of Government Property, in violation of 18 U.S.C. § 1361; Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(l) and (b)(l)(A); Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(2) and (b)(l)(A); Impeding Ingress and Egress in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(3) and (b)(l)(A). Indictment [Dkt. # 1]. Specifically, defendant is charged with using an electroshock weapon to attack a D.C. Metropolitan Police Officer who was defending the U.S. Capitol on January 6, 2021. Indictment at 2–3.[1]

Pending before the Court are submissions filed by the parties regarding the appropriate calculation of the time in this case under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.* ("STA"). The statute requires that if a defendant is incarcerated, his trial must commence within seventy

---

[1]    The government has designated this case as related to *United States v. Sibick, et al.*, 21-cr-291-ABJ, in which three unrelated individuals are charged with, among other things, assaulting the same officer.

days of the filing of an indictment or the defendant's first appearance before a judicial officer of the court in which the charge is pending. § 3161(c)(1); *see also* LCrR 45.1. However, the statute also requires that certain periods of time shall be excluded from the computation of the time that has elapsed, including periods of "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." § 3161(h)(1)(D). Further, the Act permits the exclusion of time for a "delay resulting from a continuance" granted by the Court on its own motion or at the request of either party if the Court "find[s] that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." § 3161(h)(7)(A). In addition, the statute mandates that the Court set a case for trial "at the earliest practicable time." § 3161(a).

Here, the defendant contends that the Speedy Trial Act is being violated because a trial date has not yet been set in his case. He also objects to the Court's recent findings that it was in the interest of justice to exclude the period of time between August 31 and October 4, 2021, and again from October 4 through October 15. *See* Def.'s Suppl. Br. Regarding Mr. Rodriguez's Speedy Trial Protections [Dkt. # 35] ("Def.'s Mem."). The government maintains that the exclusions of time to date have been proper, and it asks that the Court extend the excluded period through November 15. U.S. Mot. to Exclude Time under the STA [Dkt. # 36] ("Gov't Mot.") at 1–3.

The Court notes at the outset, that pursuant to the August 25, 2021 Standing Order of the U.S. District Court of the District of Columbia, time has been already been excluded in every pending criminal case in this court under the Speedy Trial Act through October 31, 2021. Standing Order No. 21-47 (BAH) (D.D.C. Aug. 25, 2021); *see* Standing Order Nos. 20-9 (BAH) (D.D.C. Mar. 16, 2020), 20-19 (BAH) (D.D.C. Apr. 2, 2020), 20-29 (BAH) (D.D.C. May 26, 2020), 20-62 (BAH) (D.D.C. July 9, 2020), 20-68 (D.D.C. Aug. 10, 2020), 20-89 (BAH) (D.D.C. Nov. 6, 2020), 20-93 (BAH) (D.D.C. Dec. 17, 2020), and 21-10 (BAH) (D.D.C. March 5, 2021). The court's orders were based on careful consideration of the manner in which the coronavirus was currently affecting this community at the time, the directives promulgated by the District of Columbia, the limitations on large gatherings occasioned by the immutable physical footprint of the court building, and the particular dimensions and air flow of each individual courtroom, *see id.*; Continuity of Operations Plan during the COVID-19 Pandemic, U.S. District Court for the District

of Columbia, July 15, 2020, and this Court has not excluded any time that isn't already covered by the Chief Judge's order.[2]  But in an abundance of caution, and since every individual defendant has individual constitutional and statutory speedy trial rights, the Court will also review how the time has been calculated in this particular case.

A warrant was issued for the defendant's arrest on March 24, 2021.  Arrest Warrant [Dkt. # 2-2].  He first appeared before a Magistrate Judge in this court on April 23, 2021.  *See* Apr. 23, 2021 Minute Entry for Proceedings.  At that hearing, the Magistrate Judge granted the government's motion to waive the time under the Speedy Trial Act until the next scheduled hearing on May 17, 2021.  *Id.*  That hearing was vacated on May 14 when the Court was informed that the defendant had not yet been transferred to this district, and when he arrived on June 10, 2021, the government filed a motion seeking a new date and the exclusion of time until that date under section 3161(h).  Mot. to Set Status Conference Date and to Exclude Time under the Speedy Trial Act [Dkt. # 15] at 1, 3–4.  The Court granted the motion and set the status conference for July 15, and at that hearing, the time was excluded over the objection of the defense through the next status conference on August 31.  Tr. of July 15, 2021 Status Conference at 3, 15.[3]

At the August 31 status conference, the government stated that it had provided the defense with approximately 270 pages of records, it was preparing to provide the defendant with a hard drive of data from the FBI in Los Angeles, including data harvested from defendant's cell phone and other media, and it would be making documentary and video evidence related to the broader January 6 events available on two discovery platforms.  Tr. of Video Status Conf., Aug. 31, 2021 [Dkt. # 31] ("Aug. 31 Tr.") at 3–4.  At that point, while it was clear that the defense had not yet received all of the information to which it was entitled and that the volume of the material involved was extraordinary, counsel for the defendant asked the Court to set a trial date.  Aug. 31 Tr. at 6. Cognizant of the requirement in subsection (a) of the Act and the defendant's speedy trial rights

---

2      The defense points to language in this district's Speedy Trial Plan calling for the a status conference within three weeks of arraignment, and, after consultation with counsel, the setting of a trial date at that time, but whether or not that has turned out to be the procedure followed in any particular case once counsel was consulted, the directive has been largely superseded by the exigent circumstances imposed by the pandemic, and the issuance of the nine Standing Orders.

3      A formal transcript of the status conference was not requested from the court reporter. Accordingly, citations to this transcript are from the court reporter's rough draft of the proceedings.

in general, the Court then asked whether the defendant planned to file motions in advance of trial, as that would plainly affect the trial schedule.[4]  Aug. 31 Tr. at 13.  Counsel stated that the defendant did intend to file motions, and when asked how much time she needed to prepare them, she requested forty-five days.  Aug. 31 Tr. at 14–15.  The Court granted that request and set a schedule for the filing of motions beginning on October 15 and culminating with a hearing on November 16.  Aug. 31 Tr. at 16–17, 25.[5]  The Court also set an interim status hearing so that it could continue to oversee the government's compliance with its discovery obligations in the case.  *Id.*  at 20.

  While the defense took the position that the period of time it requested should not be excluded from the Speedy Trial calculation, Aug. 31 Tr. at 25, the government emphasized the work that was ongoing to get the case in a posture to try.  *See* Aug. 31 Tr. at 26 (asking to exclude the time to continue the discovery process and discussions with the defense about the discovery and a possible plea and a debrief).  The Court found it in the interests of justice to exclude the time until the next status conference "given the volume of the discovery in this case and the need for everyone to get it to [the defense] and the need for [the defense] to file all the motions . . . on Mr. Rodriguez's behalf."  Aug. 31 Tr. at 28.

---

[4]  Aug. 31 Tr. at 12.

> THE COURT:  . . . I understand that he's been locked up since April of 2021, and certainly defendants that are incarcerated are getting – we want to get them to trial.  Even though everybody has a speedy trial right, it's more urgent if they're detained.  As you're probably well aware, there are people who have been detained since January 6th.  And then, of course, there are people that have been detained for offenses other than the assault on the Capitol on January 6th that, unfortunately, have been there since 2020 or 2019, during the period of time when the court was closed and it wasn't bringing jurors to the courthouse at all.

> So, now we are bringing jurors to the courthouse and we are trying to move cases forward.  And he is a priority, but he's not the only one in that queue.  So that is something we need to talk about when we're trying to pick a trial date, it has to be a trial date that we can accommodate.

[5]  The defense expressed concerns on both July 15 and August 31 about the defendant's detention status.  The Court noted on each occasion that a bond motion could be filed at any time, but to date, no bond review motion has been submitted.

The parties convened again on October 4, and after reviewing the state of discovery and whether a plea offer had been extended,[6] the Court concluded that it would be in the interests of justice to exclude the time from the date of the status conference until the date the defendant had requested for filing motions, at which point, the Speedy Trial clock would come to a stop.  Oct. 4 Tr. at 7.  Counsel for the defendant insisted that the Court should set a trial date at that point and objected again to the exclusion of time.  *See id.*  The Court ruled that it would exclude the time under the STA until October 15, 2021, but given defendant's objection, it invited the parties to brief the question of whether the time period could properly be excluded under the Act so that it could reconsider the issue with the benefit of the parties' input and any authorities they could provide.  Oct. 4 Tr. at 11–12.

There is no dispute that the Speedy Trial Act does not call for the automatic exclusion of the time spent preparing motions; defendant emphasizes that the excludable delay prescribed in section 3161(h)(1)(D) begins when a motion is filed.  *See* Def.'s Mem. at 7, citing *Bloate v. United States*, 559 U.S. 196, 204 (2010).  But that does not mean that the time cannot be excluded under other provisions of the STA, or that a defense request for a particularly long period to prepare motions can never be a factor in the overall analysis.  The government maintains that the time was properly excluded and that the exclusion of time should be continued until the motions hearing date of November 15 "to permit both parties to file motions in the case, and for the government to complete its collection, review, cataloging, and production of discoverable materials pursuant to Federal Rule of Criminal Procedure 16(a) and the *Brady* doctrine."  Gov't Mot. at 3 (internal footnote omitted).

> Although we have been diligent in our efforts to comply with unprecedented discovery obligations, given the nature and volume of material, our plan is still ongoing.  Our need for reasonable time to address unprecedented

---

6       The defense confirmed that as of August 31, 2021, it had been awaiting a large amount of discovery, but it noted that the material was received as of approximately a week later.  Tr. of Video Status Conf., Oct. 4, 2021 [Dkt. # 32] ("Oct. 4 Tr.") at 10.  The government informed the Court that its ability to extend a plea offer was constrained by "extenuating circumstances" bearing upon both this case and the related matter, as well as by "some additional investigation that is ongoing specific to this defendant."  Oct. 4. Tr. at 4.

> complex discovery obligations warrants the requested continuance and
> exclusion of time under the STA, even over the defendant's objection.

Gov't Mem. at 3; *see also id.* at 2, 4–5 (stating that more than 250 terabytes of data have been gathered, gleaned from officers' body worn video cameras, the CCTV cameras, open source videos, social media information recovered from the execution of search warrants for the contents of cellular phones and social media accounts, and the challenges involved in creating a password protected platform for sharing the information with the hundreds of defendants involved); Gov't Disc. Status Mem. as of Sept. 14, 2021 [Dkt. # 29] 2–4 (explaining that it has made 2,300 hours of body worn camera videos available and uploaded approximately twenty percent of relevant U.S. Capitol Police surveillance footage, in excess of one terabyte of video, consisting of 1,600 hours of footage, and describing challenges with providing documentary evidence); Gov't Disc. Status Mem. as of Aug. 23, 2021 [Dkt. # 24] at 7–9; Gov't Disc. Status Mem. as of July 12, 2021 [Dkt. # 33-1] at 8–9.  Because the defendant's filing of a motion to suppress on October 15, 2021, did, as everyone agreed, stop the speedy trial clock, *see* 18 U.S.C. § 3161(h)(1)(d), the only question before the Court is whether it was appropriate to exclude the time between August 31, when the motions schedule was set, and October 15, which, as noted above, is a time period already also covered by the exclusion in the court's Standing Orders.

Defendant seems to conflate the issue of computing time under the Act with whether the Court has put a trial date on the calendar.  He submits that "the setting of a trial date (even if subsequently changed) serves important purposes[;]" it "serves to focus the parties onto an important target, ensuring a concentrated effort to meet the deadline that counts[,]" and "facilitates judicial efficiency by giving parties a concrete timeline to better avoid the endless discovery disclosures and litigation."  Def.'s Mem. at 6; *see also id.,* citing § 3161(h). ("Both the Speedy Trial Act and the Plan implicitly recognize that delays may – and often do – occur, necessitating an updated trial date.").  But the Act counts the days from the indictment (or the first appearance) and the *trial*, not the date when a trial date is set.  And it certainly does not serve the purposes of the Act if a trial date is set with the going-in understanding that it will be continued, or at a time

when the defense has already indicated that there are other critical steps to be accomplished before it will be ready to proceed.[7]

Defendant argues nonetheless that the Speedy Trial Act has been violated because no trial date has been set, but he cites no authority in which a court has been found in violation of the STA based on its failure to comply with section 3161(a).  The defense emphasizes the word "shall" when it recites the statutory requirement that the Court "at the earliest practicable time, *shall* . . . set the case for trial."  Def.'s Mem. at 5, citing 18 U.S.C. § 3161(a).  But this ignores Congress's choice of the word "practicable," a broad term that accords a trial court considerable discretion. The point of the language in section (a) and the Court's Speedy Trial Plan is to implement the timetable set out in subsection (c); there is nothing about the mere selection of a date that implicates or vindicates a defendant's speedy trial rights in and of itself.  Moreover, the defendant's position is based on the dubious premise that the identification of a mere placeholder date will spur the lawyers to focus on moving matters forward; in the Court's experience setting a trial date with the expectation that it is going to change does little or nothing to focus anyone's attention, and what matters is the setting of a *firm* trial date at the appropriate time.

Furthermore, while it may be the practice in other jurisdictions, under ordinary circumstances, to set a trial date early, recognizing that it may be continued, in the Court's view, neither August 31 nor October 4 was a "practicable time" to set a trial date here.  As of August 31, discovery was still ongoing, and it was not clear on either date how many motions would be filed, what they would address, or how complicated the issues would be.  *See* Aug. 31 Tr.  Moreover, while the Court has considerable availability on its own calendar to try this case and others, it is constrained by the practical difficulties arising out of the current protocols for scheduling trials in this courthouse due to the COVID-19 pandemic.  While trials are now proceeding, under the

---

7       Moreover, there is nothing in the record to indicate that "endless discovery disclosures and litigation" lie ahead or need to be avoided.  Def.'s Mem. at 6.  At the hearing on August 31, counsel expressed similar concerns – based on comments she'd found on Twitter indicating the that government intended to file a superseding indictment – and she urged the Court to set a trial date to forestall the government from continuing to investigate the case and bringing new charges that could delay the trial.  Aug. 31 Tr. at 11.  But she also conceded that neither the STA nor the setting of a trial date would bar the government from superseding if circumstances warranted.  *Id.* at 11–12.

operative Standing Order, strict limits remain on how many trials may take place at a time and where they may occur.

> This Court will continue to limit the number of jury trials that may be conducted at one time in the Courthouse until at least October 31, 2021. The need to maintain proper health and safety protocols, including social distancing, necessarily limits the Court's capacity to conduct trials. The Court anticipates that each criminal jury trial will require the use of multiple courtrooms, including the Ceremonial Courtroom for jury selections. Thus, no more than one criminal jury selection will take place on a given day, and no more than three criminal trials, with an effort to segregate the trials on separate floors, will take place within the Courthouse at one time during this period. The Court will prioritize trials with detained defendants and will schedule trials according to a master trial calendar. Criminal jury trials will take precedence over civil trials in scheduling.

Standing Order No. 21-47 (BAH) at 7 (emphasis omitted). Given these restrictions and defendant's request for a generous briefing schedule, it is the Court's view that the earliest practicable date for choosing a trial date will be when the Court rules on the pretrial motions. *See* Aug. 31 Tr. at 15. If the restrictions imposed by the pandemic have been eased, the Court will have much greater flexibility to accommodate this case and others.

For all of these reasons, the Court finds that the mere fact that the date has not yet been selected does not mean that the statute has been violated.

But what about the exclusions to date? A court may exclude time if it finds in its discretion that "the ends of justice [are] served" if excluding the time outweighs the public's and defendant's interest in a speedy trial. 18 U.S.C. § 3161(h)(7)(A); *United States v. Rice*, 746 F.3d 1074, 1078 (D.C. Cir. 2014) (holding that the determination is left to the district court's "sound discretion"); *Zendar v. United States*, 547 U.S. 489, 498–99 (2006) (stating that subsection (h) gives courts flexibility and "discretion – within limits and subject to specific procedures – to accommodate limited delays for case-specific needs").

Defendant maintains that excluding the time does not serve the ends of justice. He argues that his request for forty-five days to prepare his motions was not a request for a continuance; the case is not complex and discovery is largely complete; plea discussions are not a reason to exclude the time; and the Court did not make a finding that more than the allowed seventy days is needed for counsel to effectively prepare for the case. Def.'s Mem. at 8–11.

8

But the request for forty-five days to file motions, which would then trigger another twenty-one day period for the opposition and reply, not to mention the time needed for the hearing and the ruling, was a clear indication that the defense would not be ready to try the case in seventy days.  And, as of August 31, the government was requesting additional time to address the unique and complicated tasks of organizing and disseminating discovery in the January 6 cases, and to pursue additional investigation and to resolve how and whether the case would be coordinated or consolidated with the related matter.  *See* Gov't Mot. at 4–9; *see also* Notice of Filing [Dkt. # 33-1].  Given all of these factors, the Court in its discretion confirms its prior finding, pursuant to section 3161(h)(7), that the ends of justice served by the exclusion of time through October 15 outweighed the best interests of the public and the defendant in a speedy trial.

Further, the government's motion to exclude time until the November 15 motions hearing will be **DENIED** as moot because the speedy trial clock has now been stopped with the filing of a motion to suppress on October 15, 2021, and there is no further need to address the time between now and the hearing.

That does not mean, however, that there are no steps to be taken now to clarify and expedite matters in order to bring them to trial.

First of all, the Court will require the government to make its intentions plain, and therefore it is **HEREBY ORDERED** that any motion to join this case to any other for trial must be filed by November 5, 2021.  Any motion to extend that date must be based on good cause shown, and vague references to ongoing investigations or extenuating circumstances will not suffice; if matters must be submitted to the Court under seal, the government is familiar with how to accomplish that.

Second, it is **FURTHER ORDERED** that the government must inform the Court by November 5, 2021 whether a plea offer has been extended in this case and if not, why not.

Third, the parties are **ORDERED** to file a joint notice by November 12, 2021 identifying the motions in limine they expect to file, stating how long they expect the trial will take, and

identifying <u>all</u> of the dates in the following list that are mutually available for the setting of a *firm* trial date:[8]

- Voir Dire Feb. 3–4, 2022, Trial Beginning Week of Feb. 7, 2022
- Voir Dire Feb. 14–15, 2022, Trial Thereafter
- Voir Dire Feb. 25 & 28, 2022, Trial Thereafter (to end no later than Mar. 8)
- Voir Dire Feb. 28–Mar. 1, 2022, Trial Thereafter (to end no later than Mar. 8)
- Voir Dire Apr. 4–5, 2022, Trial Thereafter

Fourth, the notice must include the parties' respective positions on whether it would be appropriate to utilize a written juror questionnaire in this case. If they are agreed that step would be necessary, it is **ORDERED** that on November 19, 2021, they must jointly file a list of proposed questions to be included in the written jury questionnaire that indicates:

i.  the questions on which the parties agree;

ii. the questions on which the parties disagree, with specific objections noted below each disputed question and supporting legal authority (if any).[9]

The joint proposed jury questionnaire may not exceed thirty-five questions.

**SO ORDERED**.

AMY BERMAN JACKSON
United States District Judge

DATE:  October 22, 2021

---

8   The parties are advised that the Court will schedule a pretrial conference approximately seven to fourteen days before the start of the trial, and a joint pretrial statement, which must include proposed voir dire questions (if there is no questionnaire), proposed jury instructions, and all stipulations and exhibits (and objections thereto) will be due approximately ten days before the conference.

9   Proposed questions should call for short answers – preferably yes or no answers, or responses that involve checking boxes, where possible.