**United States District Court**
**District of Columbia**

| | |
|---|---|
| United States of America, | |
| Plaintiff, | Case No. 1:21-cr-00246-ABJ-1 |
| v. | |
| Daniel Rodriguez, | |
| Defendant. | |

**REPLY TO GOVERNMENT'S OPPOSITION**
**TO DEFENDANT'S MOTION TO SUPPRESS**

(Evidentiary Hearing Requested)

### I.   Introduction

Contrary to the government's claims, FBI agents obtained Mr. Rodriguez's statements in violation of his Fifth Amendment right to be free from self-incrimination and the requirements under *Miranda v. Arizona*, 384 U.S. 436 (1966). Additionally, given the circumstances of his arrest and interrogation, Mr. Rodriguez's statements cannot be considered knowing and voluntary. Accordingly, Mr. Rodriguez respectfully requests this Court suppress the statements made during his March 31, 2021 FBI interrogation.

II.   **Argument**

   A.   **Mr. Rodriguez's pre-*Miranda* statements were not spontaneous statements.**

The government argues Mr. Rodriguez's pre-*Miranda* statements are admissible because they were "spontaneous" and "not made in response to police questioning."[1]  In making this argument, however, the government ignores a key component of the "spontaneous" statement analysis.

*Miranda* safeguards apply "not only to express questioning, but also to 'its functional equivalent.'" *Arizona v. Mauro,* 481 U.S. 520, 526 (1987).  The "functional equivalent" of interrogation includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

While the focus is primarily "upon the perceptions of the suspect, rather than the intent of the police," *id.,* "any knowledge the police may have had concerning the unusual susceptibility of a defendant to a particular form of persuasion" can be "an important factor in determining what the police reasonably should have known." *Pennsylvania v. Muniz,* 496 U.S. 582, 601 (1990) (cleaned up).  "Thus, custodial interrogation for purposes of *Miranda* includes both express questioning and words or actions that, given the officer's knowledge of any special

---

[1] ECF No. 42 at 6-7 (quoting *United States v. Williamson*, 181 F. Supp. 3d 41, 43 (D.D.C. 2014).

2

susceptibilities of the suspect, the officer knows or reasonably should know are likely to have the force of a question on the accused, and therefore be reasonably likely to elicit an incriminating response." *Id.* (cleaned up).

Here, Mr. Rodriguez's pre-*Miranda* concession of guilt was made in direct response to the agents' interrogation.[2] The government argued there is "nothing to suggest" Mr. Rodriguez's concession of guilt was "made in response to questioning from law enforcement"—pointing to the fact that Mr. Rodriguez's concession came in response to Agent Elias's statement, "I think that there's an opportunity here for us to get clarity on what went down and what you see happened."[3] But this ignores the well-recognized fact that an interrogation is not just express questioning, but also any words or actions that are the "functional equivalent" of express questioning. *Innis*, 446 U.S. at 301. In this case, Mr. Rodriguez's pre-*Miranda* inculpatory statement was made in direct response to words and statements used by agents which were the functional equivalent of express questioning.

One of the main interrogation techniques the agents used against Mr. Rodriguez throughout the course of the interrogation was repeatedly pushing him to take advantage of this "opportunity"—the opportunity to have the agents help him, to tell his side of the story, to explain what really happened on

---

[2] ECF No. 38-1 at 5.

[3] *Id.*

3

January 6.[4]  In fact, seconds after Agent Armenta introduced himself, he immediately turned to this interrogation tactic:

> You seem to have a pretty good idea why we're here, right? . . . So what I wanted to is kind of just explain what's happening and then I want to give you an opportunity to kind of just kind of help us understand, you know, what happened from your perspective, okay? I want to give you that opportunity. That's why we're here.[5]

Agent Armenta then implored Mr. Rodriguez: "I feel like you kind of want to talk about it.  I feel like you kind of want to get it off your chest."[6]  Agent Elias followed up and said to Mr. Rodriguez, "You're in a [sic] important position right now, you know? . . . . This is an opportunity here for you to let us know and help us understand . . . . And I think there's an opportunity here for us to get clarity on what went down and what you see happened."[7]

At the point Mr. Rodriguez concedes his guilt, agents have pushed Mr.  Rodriguez to take advantage of this "opportunity" four different times—and all while Mr. Rodriguez is visibly upset, crying, and handcuffed to the wall.[8]  This is far

---

[4] *See, e.g.*, *id*. at 7, 51, 76-77, 182.

[5] *Id*. at 4; The government argues Mr. Rodriguez's concession was not made in response to questioning from law enforcement because "the statement was made before the agents even mentioned January 6, 2021." ECF No. 42 at 7.  But the above exchange undermines the government's argument.  It is clear the agents knew Mr. Rodriguez understood the purpose of the interrogation.

[6] ECF No. 38-1 at 5.

[7] *Id*.

[8] *Id*. at 4-5.

4

from the spontaneous-statement situation cited by the government, in which a court found the defendant's statement unprompted and, therefore, admissible. *See United States v. Samuels*, 938 F.2d 210, 214 (D.C. Cir. 1991) (finding no interrogation in a situation where police officer was not speaking to defendant and had only removed an item from defendant's bag, which prompted the spontaneous statement).

Indeed, the pre-*Miranda* interrogation here stands in contrast to pre-*Miranda* situations where courts have found the nature of the interaction was not the functional equivalent of police interrogation. *See, e.g., United States v. Hitselberger*, 991 F. Supp. 2d 130, 138 (D.D.C. 2014) (finding no interrogation during the pre-*Miranda* interview where "agents asked only standard questions which were unlikely to elicit incriminating responses" like how defendant was doing, where did he live, what was his age, what was his educational background).

The government attempts to downplay the agents' "opportunity" interrogation tactic as mere "rapport-building"[9] and not police questioning. This classification is not supported by the record. This was an interrogation tactic that the agents employed as soon as the interview started.[10] The agents knew the "opportunity" interrogation tactic was reasonably likely to elicit an incriminating response, which is why they not only immediately started using it, but continued to

---

[9] ECF No. 42 at 13.

[10] *See* ECF No. 38-1 at 4-5.

5

employ it throughout the three-hour interview.[11]  Mr. Rodriguez's incriminating concession was not an "unforeseeable result[]" of the agents' words or actions. *Innis*, 446 U.S. at 302.  It was the result of a successful interrogation ploy.

As experienced agents, Agent Armenta and Agent Elias should have Mirandized Mr. Rodriguez *before* they started any conversation with him.  Instead, they employed their interrogation tactic, obtained Mr. Rodriguez's implicit concession of guilt, and only then opted to read Mr. Rodriguez his *Miranda* rights.[12]  There was no reason for agents to start the interrogation without first providing Mr. Rodriguez with his *Miranda* rights.  *See United States v. Williams*, 435 F.3d 1148, 1157 (9th Cir. 2006) ("Once a law enforcement officer has detained a suspect *and subjects him to interrogation* . . . there is rarely, if ever, a legitimate reason to delay giving a *Miranda* warning until after the suspect has confessed." (emphasis in original)).

Accordingly, Mr. Rodriguez's implicit concession of guilt and all other pre-*Miranda* statements were not spontaneous statements, but rather statements made in direct response to the agents' interrogation.  These pre-*Miranda* statements must, therefore, be suppressed.

---

[11] *See, e.g.*, *id.* at 8, 38, 43, 46, 47, 97.

[12] *Id.* at 4-7.

### B. Mr. Rodriguez's post-*Miranda* statements were the result of an improper two-step interrogation and must be suppressed.

Mr. Rodriguez's post-*Miranda* statements must be suppressed because they were obtained as a result of an improper two-step interrogation. *See Missouri v. Seibert*, 542 U.S. 600, 617 (2004). Agents questioned Mr. Rodriguez before reading him his *Miranda* rights, obtained an inculpatory statement, and then—without applying any curative measures—read Mr. Rodriguez his *Miranda* rights and continued to solicit incriminating information from him.

The government argues "several cases in this District have rejected arguments that *Miranda* warnings given 'midstream' were ineffective or warrants suppression."[13] But, in two of the three cases the government cites, the courts rejected the *Seibert* argument because it was factually inapplicable. In *United States v. Hitselberger*, 991 F. Supp. 2d 130 (D.D.C. 2014), the court found the officer's questioning was "not even close to the calculated two-step inquiry in *Siebert*" because the officer's pre-*Miranda* questions were simply to establish rapport, not about the precipitating incident, and not considered part of the interrogation since the questions asked were standard questions (e.g. identifying information) unlikely to elicit an incriminating response. 991 F.Supp.2d at 141.

Similarly, in *United States v. Apodaca*, 275 F. Supp. 3d 123 (D.D.C. 2017), the court found the facts of that case "wholly distinguishable from *Seibert*" because

---

[13] ECF No. 42 at 12.

agents did not question the defendant and the defendant did not provide any incriminating information before receiving his *Miranda* rights. 275 F.Supp.3d at 146.

As discussed above, unlike the situation in *Hitselberger*, Mr. Rodriguez's pre-*Miranda* statements were the product of agents' interrogation, and unlike the situation in *Apodaca*, Mr. Rodriguez provided an inculpatory statement in response to agents' interrogation tactics.

In the third case the government cites—*United States v. Abu Khatallah*, 275 F. Supp. 3d 32 (D.D.C. 2017)—the court rejected the *Seibert* argument and did not suppress the post-*Miranda* statements. There, unlike the agents' interrogation of Mr. Rodriguez, the agents' interrogation of Abu Khatallah used numerous curative measures which rendered the *Miranda* warnings valid. *See* 275 F.Supp.3d at 63-66. Specifically, there was a substantial break in time between the two interrogations, the interrogations were done by two separate teams in two separate settings, and the agents conducting the criminal interrogation informed defendant the prior interrogation was for a separate purpose and that they were unaware of the information the defendant shared. *Id.* at 64. Because of these curative measures, the court found the post-*Miranda* statements admissible and the *Miranda* waiver valid.

Here, unlike the interrogation in *Abu Khatallah*, the pre-*Miranda* and post-*Miranda* interrogation covered the same topic—Mr. Rodriguez's involvement on January 6. The interrogation was also conducted by the same agents, in the same

room, without any break in time between the pre- and post-*Miranda* statements, and without any warning explaining the likely inadmissibility of the prewarning custodial statement. Additionally, as discussed above, agents immediately began using their "opportunity" interrogation tactic with full knowledge of Mr. Rodriguez's vulnerable emotional state, which ultimately resulted in Mr. Rodriguez's pre-*Miranda* inculpatory statement.

Agents knew Mr. Rodriguez was in custody. They had the *Miranda* waiver form with them. There is no excuse for these experienced FBI agents to not immediately inform Mr. Rodriguez of his rights before beginning their interrogation tactic. As the Ninth Circuit has found, "[o]nce a law enforcement officer has detained a suspect *and subjects him to interrogation* . . . there is rarely, if ever, a legitimate reason to delay giving a *Miranda* warning until after the suspect has confessed." *United States v. Williams*, 435 F.3d 1148, 1157 (9th Cir. 2006).

Because the use of this two-step interrogation without any curative measures "challeng[ed] the comprehensibility and efficacy of the *Miranda* warnings," the post-*Miranda* statements must be suppressed. *Seibert*, 542 U.S. at 617.

### C. The *Miranda* warnings were inadequate, and Mr. Rodriguez's *Miranda* waiver was not knowing, intelligent, and voluntary.

The government has failed to meet its burden to establish Mr. Rodriguez waived his *Miranda* rights. *Miranda*, 384 U.S. at 475. Contrary to the government's claim, the *Miranda* warnings Mr. Rodriguez received were legally insufficient. While precise *Miranda* wording is not required, the warning must

9

nonetheless "reasonably convey to a suspect his rights as required by *Miranda*." *Duckworth v. Eagan*, 492 U.S. 195, 203 (1989) (cleaned up).

Here, the agents gave Mr. Rodriguez an insufficient *Miranda* warning in light of their instruction that Mr. Rodriguez should let them know if questioning made him uncomfortable.[14] Contrary to the government's claim, the agent's subsequent instruction to alert them if a question made Mr. Rodriguez uncomfortable changed the meaning of the *Miranda* warnings that were initially read to him. Because this instruction came after Mr. Rodriguez had heard and reviewed his *Miranda* rights, it improperly narrowed the scope of what Mr. Rodriguez understood his rights to be—confining his right to silence only to those questions that made him feel uncomfortable, as opposed to invoking the right at any time.

Additionally, agents failed in their duties to clarify whether Mr. Rodriguez was invoking his right to remain silent. Although Mr. Rodriguez told the agents he "want[ed] to talk to [the agents]," he added that "in the past, lawyers have always told [him], you know, you don't say anything."[15] This was, at the very least, an ambiguous invocation of Mr. Rodriguez's right to silence. At that point, Mr. Rodriguez had not yet expressly waived any of his *Miranda* rights. Because this ambiguous invocation of his right to remain silent came in direct response to

---

[14] ECF No. 38-1 at 7.

[15] *Id.*

10

the agent's *Miranda* warnings, the agents "were under a duty to clarify what [Mr. Rodriguez] meant—and if he meant he didn't want to talk, that right should have been scrupulously honored." *United States v. Rodriguez*, 518 F.3d 1072, 1080 (9th Cir. 2008) (cleaned up).[16] Because they failed to clarify whether Mr. Rodriguez intended to invoke his right to remain silent, they failed to obtain a valid *Miranda* waiver.

Similarly, when Mr. Rodriguez later clearly invoked his right to silence as to questions related to the assault, agents ignored him and continued to question him.[17] The fact that Mr. Rodriguez continued to answer questions did not constitute a valid waiver. Because Mr. Rodriguez clearly invoked his right to silence, agents violated Mr. Rodriguez's *Miranda* rights "by failing to scrupulously honor" his right to cut off questioning related to the assault. *United States v. Murdock*, 667 F.3d 1302, 1305 (D.C. Cir. 2012).

Looking at the totality of the circumstances—including the legally improper *Miranda* warnings, the government's failure to respect Mr. Rodriguez's invocation of his right to remain silent, and the use of the two-step interrogation using mid-

---

[16] In *Berghuis v. Thompkins*, 130 S.Ct. 2250, 2259–60 (2010), the Court clarified that the *Davis v. United States*, 512 U.S. 452 (1994), "unambiguous" statement standard does control a court's analysis of an initial invocation of both the right to remain silent and the right to counsel. This does not undermine the *Rodriguez* holding but instead clarifies the question that court declined to answer—whether Davis applied to the right to remain silent. *See Rodriguez*, 518 F.3d at 1078 n.5.

[17] *Id.* at 37-38.

11

stream *Miranda* warnings without any curative measures—Mr. Rodriguez's waiver of his *Miranda* rights was not done knowingly, intelligently, and voluntarily.

### D. Mr. Rodriguez's statements were involuntary and must, therefore, be suppressed.

Contrary to the government's claim, the coercive pressures from the entire morning, taken together, rendered Mr. Rodriguez's statements involuntary. Not only did Mr. Rodriguez endure a traumatic arrest at his home, *see, e.g.*, *United States v. Craighead*, 539 F.3d 1073, 1085 (9th Cir. 2008) (recognizing the particularly coercive effect of having a number of armed law enforcement officers in one's home), he was questioned early in the morning on little sleep for more than three hours. In addition to these circumstances, agents subjected Mr. Rodriguez to psychologically coercive interrogation tactics[18]—one of which involved a deliberate attempt to undermine the efficacy of *Miranda* warnings after agents obtained an inculpatory statement.[19] Because Mr. Rodriguez's statements were involuntary, they must be suppressed and cannot be admitted at trial—either as direct or impeachment evidence.

### III. Conclusion

FBI agents violated Mr. Rodriguez's Fifth Amendment right to be free from self-incrimination and denied him the protections required under *Miranda v. Arizona*. They interrogated Mr. Rodriguez without first informing him of his

---

[18] *See* ECF No. 38 at 24.

[19] *See* supra II.B.

12

*Miranda* rights and engaged in an improper two-step interrogation without any efforts to cure the *Miranda* violation. They failed to accurately inform Mr. Rodriguez of his *Miranda* rights and ignored Mr. Rodriguez's attempt to exercise his right to remain silent. Finally, the agents' psychologically coercive interrogation tactics rendered Mr. Rodriguez's statements involuntary. In light of these constitutional violations, Mr. Rodriguez respectfully requests this Court suppress all statements made during the March 31, 2021 interrogation.

**Dated:** November 5, 2021.

Respectfully submitted,

RENE L. VALLADARES
Federal Public Defender

By: */s/Rebecca A. Levy*
*/s/Margaret W. Lambrose*
*/s/Katherine Tanaka*
*/s/Aarin E. Kevorkian*
REBECCA A. LEVY
MARGARET W. LAMBROSE
KATHERINE TANAKA
AARIN E. KEVORKIAN
Assistant Federal Public Defenders

Attorneys for Daniel Rodriguez

## Certificate of Electronic Service

The undersigned hereby certifies that she is an employee of the Federal Public Defender for the District of Nevada and is a person of such age and discretion as to be competent to serve papers.

That on November 5, 2021, she served an electronic copy of the above and foregoing **REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS** by electronic service (ECF) to the person named below:

> CHANNING D. PHILLIPS
> United States Attorney
> Kimberly L. Paschall
> Risa Berkower
> Tara Ravindra
> Assistant United States Attorneys
> 555 4th Street, NW
> Washington, DC 20530

                                      */s/ Cecilia Valencia*
                                      Employee of the Federal Public Defender