**United States District Court**
**District of Columbia**

United States of America,

      Plaintiff,

v.

Daniel Rodriguez,

      Defendant.

Case No. 1:21-cr-00246-ABJ-1

## REPLY TO GOVERNMENT'S SUPPLEMENTAL BRIEF

In its Notice of Response to this Court's December 3 Minute Order, the government claims, for the first time, that instead of saying "No" to the question, "Do you want to talk about [the alleged assault on Officer Fanone]?" Mr. Rodriguez "appears to shake his head and softly mumble a word that starts with "n."[1] This is not only the first time the government has taken this position, it contradicts the position it has consistently taken throughout the entirety of Mr. Rodriguez's case. Prior to the government's recent change, the record from both the parties has been clear: Mr. Rodriguez said, "No" in response to the question, "Do you want to talk about that?"—referencing the alleged assault on Officer Fanone.

Regardless, even considering the government's new position that Mr. Rodriguez did not actually say "No," but rather "softly mumble[d] a word

_____

[1] ECF No. 67 at 1.

that starts with 'n'," the evidentiary record established from the November 16 evidentiary hearing—specifically the testimony elicited from Special Agent Elias—shows that, under the circumstances of Mr. Rodriguez's interrogation, a reasonable officer or agent would have understood Mr. Rodriguez unambiguously and unequivocally invoked his right to silence by responding, "No" to the question, "Do you want to talk about that?"

As discussed below, the government has the burden to establish agents did not violate Mr. Rodriguez's right to remain silent when they failed to scrupulously honor his clear invocation. The government has failed to meet its burden because (1) the evidentiary record indicates Mr. Rodriguez clearly said, "No" in response to the question, "Do you want to talk about that?"; and (2) this audible response combined with Mr. Rodriguez's shaking of his head was an unambiguous and unequivocal invocation of the right to remain silent.

I.  **The government has the burden to establish a defendant's statements obtained during a custodial interrogation may be admitted at trial.**

"[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). As the Supreme Court in *Miranda* made clear:

> Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point

> he has shown that he intends to exercise his Fifth
> Amendment privilege.

*Id.* at 474-75.

The Supreme Court "has always set high standards of proof for the waiver of constitutional rights." *Id.* at 475 (citing *Johnson v. Zerbst*, 304 U.S. 458 (1938)). And, this high standard applies to in-custody interrogation. *Id.* "Since the State is responsible for establishing the isolated circumstances under which the interrogation takes place and has the only means of making available corroborated evidence of warnings given during incommunicado interrogation, the burden is rightly on its shoulders." *Id.* at 475.

Subsequent Supreme Court decisions—specifically *Davis v. United States*, 512 U.S. 452 (1994) and *Berghuis v. Thompkins*, 560 U.S. 370 (2010)— clarified that only unambiguous and unequivocal invocations require interrogations to cease, but the bedrock principle under *Miranda* remains: if "at any time prior to or during questioning" an invocation of the right to remain silent or to the presence of counsel is made, interrogation must cease. *Miranda*, 384 U.S. at 474-75.

"The admissibility of statements obtained after the person in custody has decided to remain silent depends under Miranda on whether his right to cut off questioning was "scrupulously honored." *Michigan v. Mosley*, 423 U.S. 96, 104 (1975). Under "*Mosley,* a court need determine specifically whether there has been a voluntary waiver *only after* the government has carried its burden of

showing that it complied with [all of] the required procedures." *United States v. Barone*, 968 F.2d 1378 (1st Cir. 1992) (emphasis added).

If a defendant asserts he invoked his right to remain silent, but the questioning did not cease, the principle under *Miranda* has been violated and the statement must be suppressed.  "Under *Miranda*, the onus is not on the suspect to be persistent in his demand to remain silent. Rather, the responsibility falls to the law enforcement officers to scrupulously respect his demand."  *Jones v. Harrington*, 829 F.3d 1128, 1141 (9th Cir. 2016) (quoting *United States v. Lafferty*, 503 F.3d 293, 304 (3d Cir. 2007)).

## II.   The government has failed to meet its burden that Mr. Rodriguez's statements addressing the alleged assault of Officer Fanone can be admitted.

### A.   The government has consistently maintained Mr. Rodriguez said "No" in response to the question "Do you want to talk about that?"

In July 2021, the government produced in discovery the transcript of Mr. Rodriguez's FBI interrogation, which both parties relied upon during litigation of the motion to suppress.[2]  The government additionally produced the corresponding interrogation videos.  Neither party raised any issues over the accuracy of the transcript as compared to the interrogation videos.

In its pleading and arguments, the government consistently acknowledged Mr. Rodriguez said "No" in response to the question "Do you want

---

[2] *See, e.g.*, ECF Nos. 42; ECF No. 66-1 (Transcript of November 16, 2021 Evidentiary Hearing).

to talk about that?"[3]  In its Opposition to Mr. Rodriguez's Motion to suppress, the government argued, "A simple 'no' approximately 40 minutes into the interview, in response to a question about whether the defendant wanted to talk about the specific assault on the officer is not an unambiguous invocation . . . ."[4] In its attempt to distinguish this case from DC Circuit precedent in *United States v. Murdock*, 667 F.3d 1302 (D.C. Cir. 2012), the government stated "[t]he 'no' in this case does not come in response to the *Miranda* warnings, or in response to the general question of whether the defendant wants to waive his right to speak to law enforcement at all."[5]  It further noted, "The defendant's 'no' comes in response to a specific question about the most violent allegation in the case . . . ."[6]

At the November 16 evidentiary hearing, in addressing whether there was an invocation that was not scrupulously honored, the government stated, "And I'll note that we have addressed this in our briefing, at the bottom of page 10, where we discuss *Berghuis* and we also discuss that response of, 'No' when Agent Armenta says, "Do you want to talk about it?"[7]  In arguing that there was no unambiguous invocation, the government never once contested the existence

---

[3] ECF No. 42 at 10-11.
[4] *Id.* at 11.
[5] *Id.* at 11, n.3.
[6] *Id.*
[7] ECF No. 66-1 at 109.

of Mr. Rodriguez's "No."  Instead, the government acknowledged the existence of the "No," but argued the "No" is not unambiguous or unequivocal:

> As opposed to what we see where the 'No' comes into play for us, which is about 40 minutes, roughly, into the -- into the interrogation, and an immediate willingness to continue to speak. So, Agent Armenta says, 'Would you like to talk about this?' And he says, 'No.'[8]

**B.    After the Court issued its December 3, 2021 Minute Order, the government, for the first time, claimed the transcript was not accurate and that Mr. Rodriguez did not say "No" in response to the question "Do you want to talk about that?"**

Following the evidentiary hearing, this Court provided the parties with the opportunity to file simultaneous supplemental briefing by November 30, 2021, to further address the issue of Mr. Rodriguez's invocation of his right to silence and whether that right was scrupulously honored.[9]  On November 30, Mr. Rodriguez filed his supplemental brief arguing his response, "No" to the question, "Do you want to talk about that?" was an unambiguous and unequivocal invocation of his right to silence, which the agents failed to scrupulously honor.[10]  The government chose not to file a supplemental brief, nor did they request an extension to respond to the supplemental brief Mr. Rodriguez filed.

On December 3, 2021, this Court issued a Minute Order instructing the parties to state their positions, by December 7, 2021, regarding the accuracy of

---

[8] *Id.* at 110.
[9] ECF No. 66-1 at 94, 101.
[10] ECF No. 68.

the interrogation transcript compared to the video of the interrogation—
"specifically, the precise words used by Special Agent Armenta, and whether the
defendant said the word 'no' when shaking his head."[11]

The Court additionally sua sponte extended the government's deadline to
file briefing on the question of whether Mr. Rodriguez unambiguously asserted
his right to cut off questioning.[12]  The Court gave the government until
December 8, 2021—the day after both notices regarding the accuracy of the
transcript were due.[13]  On December 8, 2021, the government filed its
supplemental brief.[14]  In addition to newly claiming that instead of saying "No,"
Mr. Rodriguez "mumbled a response, which was barely audible," the
government also for the first time argued that there was no evidence that the
agents "even heard the words mumbled by [Mr. Rodriguez]."[15]

Because the government raised these new evidentiary issues for the first
time, defense counsel requested the opportunity to file a reply, which this Court
granted at the hearing on December 9, 2021.[16]  As discussed below, despite the
government's new claims, the evidentiary record shows the agents violated Mr.

---

[11] December 3, 2021 Minute Order
[12] *Id.*
[13] *Id.*
[14] ECF No. 69.
[15] *Id.* at 3.
[16] ECF No. 71.

Rodriguez's right to remain silent when they failed to scrupulously honor his invocation to remain silent.

### C. The record from the evidentiary hearing shows Mr. Rodriguez unequivocally and unambiguously invoked his right to remain silent.

The test to determine whether a defendant unambiguously and unequivocally invoked the right to silence or to an attorney is if "a reasonable police officer in the circumstances would understand the statement to be" such a request. *Davis v. United States*, 512 U.S. 452, 459 (1994). The question is whether a reasonable officer "*in the circumstances*" would understand the invocation to be sufficiently clear. *Id.* In making this determination, the Court must look to the evidentiary record, which includes: (1) the interrogation transcript; (2) the interrogation video; and (3) Special Agent Elias's testimony.

At the evidentiary hearing, the government entered into evidence both the interrogation video and the transcript of the interrogation video.[17] No objections or arguments were raised by either party regarding the accuracy of either the transcript or the interrogation video. Special Agent Elias testified the videos were "fair and accurate" portions of the interview.[18] Special Agent Elias also testified that a transcript was "made of the recorded interview," that he had the "opportunity to review that transcript prior to" his testimony, and

---

[17] ECF No. 66-1 at 14-17.
[18] *Id.* at 14-15.

that the transcript was "a fair and accurate transcript of the interview from March 31, 2021 of Daniel Rodriguez."[19]

During its direct examination of Special Agent Elias, the government played minutes 7:54:00 to 7:55:12 of the interrogation video, which is the portion of the interrogation where Mr. Rodriguez responds to the question "Do you want to talk about that?"[20]  The government further identified the specific pages of the transcript covering this exchange of the interrogation—"I believe that that is pages 36 and 37 of Government's Exhibit 1."[21]

After playing the relevant portion of the interrogation, the government never asked Special Agent Elias whether he could hear Mr. Rodriguez respond to the question "Do you want to talk about that?"[22]  The government never asked Special Agent Elias whether Mr. Rodriguez "mumbled" some "barely audible" response.[23]  And, the government never asked Special Agent Elias if the transcript—which he reviewed prior to the hearing and which he testified

---

[19] ECF No. 66-1 at 16-17.

[20] *Id.* at 25.  Notably, even after watching minutes 7:54-7:55 of the interrogation video played at the evidentiary hearing, the Court referenced Mr. Rodriguez's "No" when it stated to defense counsel:

"And I'm also happy to hear you, if you want to argue about what, if anything, the police were legally required to do when they noticed he was shying away from the subject of the actual assault on the officer and said, "You don't want to talk about that?" and he said "No," if that was supposed to be the end of the inquiry."  *Id.* at 101.

[21] *Id.* at 25.
[22] *Id.*
[23] *See id.*

was fair and accurate—inaccurately captured Mr. Rodriguez's response to the question "Do you want to talk about that?"[24]  In fact, at no point during the hearing did either party, the witness, or this Court express any concern about the accuracy of the transcript.[25]

While the government did not elicit any testimony to support its arguments that Mr. Rodriguez "mumbled" some "barely audible" response or that agents did not hear Mr. Rodriguez say "No," defense counsel did.[26]

> Q.      Page 37, lines 21 -- line 21, and then page 38, line 2, this is when you're talking to him and you say, "And

---

[24] *Id.* at 25.

[25] In fact, during defense counsel's cross-examination, this Court engaged in a discussion with defense counsel over her referencing the transcript in her questions to Special Agent Elias:

I guess my point is, she played the clips, you saw them, he saw them, I saw them, and there's a transcript, which you read and he read and I read. And so you don't have to read them all again to make whatever point you want to make that they establish. . . .

It is a fact. The transcript is in evidence, the video is in evidence. Everything that happened is now in evidence and if there's things that weren't played and weren't highlighted, you want to highlight because you don't want me to miss them, I would encourage you to do that. But if there's something that was already played and we've already discussed, you don't necessarily have to read it aloud to then be able to persuasively argue to me later whatever it is you want to argue. I don't want to stop you from making your record, but the entire thing is in the record, so you can pick and choose what you read aloud.

*Id.* at 63-64.

[26] *Id.* at 78-79.

> you think that's why we're here today, just because
> you climbed the scaffolding?" And he says, "No, you
> guys kind of told me that I assaulted an officer,"
> right?
>
> A.     I'm sorry, I must have mentally registered the wrong
>        page.   Can you give me the page number again,
>        please?
>                                     . . .
> Q.     37, and that's line 21 to 22. And then Mr. Rodriguez
>        responds, 23 to 24. Do you remember that?
> A.     Yes.
> Q.     Now, is he referencing the conversation you guys
>        had in the transport car?
> A.     My assessment is this is a reference to the reason
>        why he was placed under arrest.
> Q.     And Agent Armenta actually then asks him, "You
>        don't want to talk about that?" And that's line 25,
>        page 37. Do you see that? And it goes up until page
>        38, line 1.
> A.     I see that.
> Q.     And Mr. Rodriguez responds, right?
> A.     He does.
> Q.     And he says, "No"?
> A.     Correct.
> Q.     And the "No" is directly after Agent Armenta asks
>        whether he wants to discuss the assault on an
>        officer, right?
> A.     That's correct.

After Special Agent Elias confirmed Mr. Rodriguez said "No" "directly after

Agent Armenta asked whether he wanted to discuss the assault on an officer,"

Agent Elias conceded he did not stop questioning Mr. Rodriguez on the alleged

assault.[27]

> Q.     But after Mr. Rodriguez says no, that he doesn't
>        want to talk about the assault on an officer, you don't
>        stop talking to Mr. Rodriguez, do you?
> A.     I don't.
> Q.     And you don't clarify with him whether he wants to
>        continue speaking with him, correct?

---

[27] *Id.* at 81.

A.      I don't ask that question, no.

Q.      You respond, page 38, lines 4 through 5, "Because, I tell you what, everyone else is going to be talking about that," right?

A.      Yes.

Defense counsel then questioned Special Agent Elias as to why he did not stop questioning Mr. Rodriguez after hearing Mr. Rodriguez say he did not want to talk about the alleged assault on Officer Fanone.[28]

Q.      Okay. What is one of the techniques that you were using when you responded to Danny's "No"?

MS. RAVINDRA: Objection.

THE COURT:   I think he said as a general investigative technique to ask more questions to see if they're willing to talk. He said that. He said it wasn't necessarily the Reid technique. So, I guess your question is: What were you doing at that point? Agent Armenta said to him, "So you don't want to talk about that," meaning the assault on the police officer. He said "No," and then you said something. So what were you doing at that point?

THE WITNESS: So this would be an approach with a narrative, letting him know that there's an alternative, which is that somebody else may be saying something about his case.

BY MS. LEVY:

Q.      You're encouraging him to respond, right?

A.      I suppose so.

Special Agent Elias specifically conceded that, after hearing Mr. Rodriguez respond "No" to the question, "Do you want to talk about that?," he continued talking in an attempt to encourage Mr. Rodriguez to respond.

---

[28] *Id.* at 82-83.

Instead of scrupulously honoring Mr. Rodriguez's invocation of his right to silence, Special Agent Elias pushed forward intending to keep Mr. Rodriguez talking.

> **D.    Even if this Court determines it cannot hear Mr. Rodriguez say "No" on the interrogation video, this does not defeat Mr. Rodriguez's claim that he unambiguously and unequivocally invoked his right to silence.**

Although the test to evaluate whether a defendant properly invoked his right to silence is an objective one, *Davis* is clear that the invocation is to be evaluated from the perspective of "a reasonable police officer *in the circumstances.*" *Davis*, 512 U.S. at 459.

As Special Agent Elias testified, Mr. Rodriguez said "No" in response to the question "Do you want to talk about that?"[29]  Special Agent Elias was not only in the room during the interrogation, he was one of the agents questioning, listening, and observing Mr. Rodriguez.  He did not describe having difficulty hearing the response "No," did not mention anything about Mr. Rodriguez mumbling, and did not indicate he had trouble remembering whether Mr. Rodriguez said "No."  In fact, in other portions of Special Agent Elias's testimony, he indicated if he could not remember something and would even clarify if he did not remember something, but saw it in the transcript.  *See, e.g.*, ECF No. 66-1 at 78 ("I don't remember it, but I do see it on the transcript, and

---

[29] *Id.* at 78-79.

he does say that.").[30]  There was no such qualification by Special Agent Elias during this line of questioning.

The government did not provide any additional witness testimony to contradict Special Agent Elias's description of the interrogation or question whether Special Agent Elias did in fact hear Mr. Rodriguez respond "No."  The government had every opportunity to call Special Agent Armenta to offer additional context, but it declined to do so.  Even during its redirect, where the government had the chance to clarify questions raised by defense counsel, it never asked Special Agent Elias any questions or elicited any testimony that the "No" he claimed to hear was mumbled, inaudible, or in any way unclear.

The government has had multiple opportunities to elicit testimony and provide evidence to clarify that Mr. Rodriguez did not actually respond "No," but it has failed to take any of those opportunities.  In fact, at the December 9 hearing, this Court specifically asked the parties if "anybody [is] of the view that additional testimony is required," and the government responded did "not believe additional testimony is required."[31]  *See United States v. Redman,* 331 F.3d 982, 986 (D.C. Cir. 2003) (holding appellant waived argument by failing to assert it at suppression hearing); *United States v. Vinton*, 594 F.3d 14, 24 (D.C. Cir. 2010) (holding defendant "waived this argument by failing to raise it before

---

[30]  *See also id.*at 72, 75
[31]  ECF No. 71 at 38.

the district court"); Fed. R. Crim. P. 12(e) (any defense or objection not raised in a motion to suppress is waived).

Special Agent Elias's testimony that Mr. Rodriguez said "No" in response to the question "Do you want to talk about that?" is not a subjective assessment of the circumstances. Rather, it is a factual description of what was observed and heard by one of the agents conducting the investigation. Thus, in light of the evidentiary record, the proper question under *Davis* should be whether a reasonable officer questioning Mr. Rodriguez, who heard "No" in response to the question "Do you want to talk about that?," unequivocally and unambiguously invoked the right to silence.

At the December 9 hearing, this Court stated "The transcript, I think, doesn't tell the story. The only thing that tells the story is the video. . . . So I'm going to base my determination on the video."[32] Even assuming this Court discounts the transcript, the video is not the only part of the evidentiary record that tells the story. Special Agent Elias's testimony at the evidentiary hearing also tells the story. This Court must consider the video alongside Special Agent Elias's testimony and description of what went on and the circumstances of the interrogation because his testimony is also part of the evidentiary record. *See, e.g.*, *United States v. Abdallah*, 911 F.3d 201, 212 (4th Cir. 2018) (relying on officers' testimony describing the circumstances of the interrogation, specifically

---

[32] *Id.* at 19.

his observation of the defendant's demeanor, to assess whether the defendant's invocation was unambiguous).

Similarly, although this Court has concluded the government's interrogation transcript is inaccurate and unreliable, it must still consider that Special Agent Elias, who was present during the interrogation, testified he reviewed the transcript of the interrogation and found the transcript was "fair and accurate."[33]  It additionally must consider that neither party at the evidentiary hearing raised any issues or objections to the transcript's accuracy and that there is no testimony elicited from the evidentiary hearing to question the transcript's accuracy.

While an invocation may be deemed ambiguous in situations where there is evidence the defendant's invocation cannot be heard, the situation here is distinguishable.  For example, in *United States v. Dudley*, 804 F.3d 506 (1st Cir. 2015), the First Circuit concluded the district court properly found defendant did not unambiguously invoke his right to counsel where two agents who were present during defendant's arrest testified they did not hear defendant's claimed invocation.  *Id.* at 513.  The First Circuit concluded "[i]f no officer heard" defendant's claimed statements invoking the right to counsel, "it could not have been a clear invocation of his right."  *Id.*  "[O]fficers could not have

---

[33] ECF No. 66-1 at 25.

objectively understood a statement they did not hear to be an assertion of the right to counsel." *Id.*

  Unlike the evidentiary record in *Dudley*, here, there is no testimony from either of the interrogating agents that they did not hear Mr. Rodriguez's "No" in response to the question "Do you want to talk about that?"  On the contrary, there is testimony from Special Agent Elias specifically acknowledging he heard Mr. Rodriguez's invocation.  Just as the court in *Dudley* relied on the testimony and observations of the officers as part of the objective analysis, this Court cannot overlook Special Agent Elias's testimony that Mr. Rodriguez said "No" when determining whether a reasonable officer under the circumstances would find Mr. Rodriguez unambiguously and unequivocally invoked his right to silence.

That the Court cannot hear Mr. Rodriguez's "No" on the interrogation video does not justify a conclusion there was no unambiguous and unequivocal invocation of the right to remain silent, in light of all the other evidence on the record.  Although the government now claims the transcript is inaccurate and Mr. Rodriguez's response on the video is inaudible, neither party has provided any evidence to question or doubt Special Agent Elias's testimony that Mr. Rodriguez said the word "No" in response to the question, "Do you want to talk about that?"

Accordingly, based on the entire evidentiary record before this Court—including Special Agent Elias's testimony and the absence of any evidence from

the November 16 evidentiary hearing to suggest a reasonable officer might not have heard Mr. Rodriguez say "No"—the evidence shows Mr. Rodriguez say "No" in response to the question "Do you want to talk about that?"

> **E.  A reasonable officer under the circumstances of Mr. Rodriguez's interrogation would find a shake of the head followed by an audible "No" in response to the question "Do you want to talk about that?" was an unambiguous and unequivocal invocation of the right to remain silent.**

Courts have found a simple "No" to be an unambiguous and unequivocal invocation of the right to remain silent.[34]  At the December 9 hearing, this Court asked what is the "best case for what is an ambiguous statement after waiver"—i.e. "the right to cut off questioning by someone who's already received valid *Miranda* warnings and waived them."[35]  As an initial matter, whether a person has received and validly waived their *Miranda* rights does not change the test for invocation—the question remains whether the individual unequivocally and unambiguously invoked the right, such that a reasonable officer in the circumstances would understand the statement to be a request for an attorney or an invocation of the right to silence.  *See Berghuis v. Thompkins*, 560 U.S. 370, 382 (2010); *Davis v. United States*, 512 U.S. 452, 459 (1994).

The Supreme Court decision in *Thompkins* offers clear guidance.  In *Thompkins*, "[a]ll concede[d] that the warnings given in the case was in full

---

[34] *See* ECF No. 66 at 2-6.
[35] ECF No. 71 at 32.

compliance with" *Miranda.  Thompkins*, 560 U.S. at 380.  The Supreme Court found Thompkins waived his right to remain silent by making uncoerced statements to the police.  *Id.* at 388-89.  In light of these circumstances, the Supreme Court found:  "Thompkins did not say that he wanted to remain silent or that he did not want to talk with the police. Had he made either of these simple, unambiguous statements, he would have invoked his right to cut off questioning."  *Id.* at 382 (cleaned up).

Here, this Court found Mr. Rodriguez validly waived his *Miranda* rights. When later asked if he wanted to talk about the assault, Mr. Rodriguez said "No."  This simple and direct response unambiguously and unequivocally informed the agents he did not want to talk to them about the assault.[36]

---

[36]  *Hurd v. Terhune*, 619 F.3d 1080 (9th Cir. 2010), though out of circuit, also offers clear guidance.  In *Herd*, the court determined the defendant had properly received and validly waived his *Miranda* rights when he began answering officers' questions.  *Id.* at 1083-89.  The defendant spoke "freely and voluntarily" until officers began asking him to "reenact the shooting." *Id.*  At that point, the defendant responded to the officers' requests by saying, among other things, "No" and "I don't want to do that."  *Id.* at 1089. The Ninth Circuit held that despite his earlier willingness to answer questions, his responses to officers' requests were "objectively unambiguous in context."  *Id.*  He refused to perform in no uncertain terms.  *Id.*  Similar to the situation in *Hurd*, this Court found Mr. Rodriguez waived his *Miranda* rights, and the record shows he freely answered the agents' questions.  However, once agents asked him if he wanted to talk about the alleged assault, Mr. Rodriguez unambiguously and unequivocally declined.

In addition to verbally informing the agents he did not want to talk about the assault, Mr. Rodriguez additionally shook his head in the negative.  In *United States v. Stewart*, 902 F.3d 664, 678 (7th Cir. 2018), the defendant freely spoke to police "after Miranda warnings and before nodding his head. [The defendant] refused to clarify the meaning of the nod and asked to sit in a car because it was cold."  The Seventh Circuit held that "a reasonable officer would have understood [the defendant's] apparent head nod to mean that he might be invoking his right to remain silent, and such an officer would not be required to cease questioning *if the suspect refused to clarify*."  *Id.* at 679 (emphasis added). Here, Rodriguez nodded his head in the negative. At that point, the agents should have requested Rodriguez to clarify.  By failing to do so the agents did not scrupulously honor Rodriguez's invocation.

## III.  The government has submitted a version of the interrogation video to this Court that is not derived from the original interrogation video in evidence.

On December 9, 2021, after the hearing with the parties, this Court issued a minute order instructing the government to "provide an excerpt of the video of the FBI interview . . . comprised of the exchange appearing at pages 37-38 of the transcript."[37]  The Court ordered the excerpt "shall be made from the original video or as close to the original as is available to the government . . . ."[38]

---

[37] December 9, 2021 Minute Order.

[38] December 9, 2021 Minute Order.

On December 17, 2021, the government submitted the Court's requested video excerpts, which appear to be taken from the video of the interrogation that was entered into evidence at the November evidentiary hearing.[39]  The government additionally included "an audio-only file from the March 31, 2021 custodial interview, which the government understands to be a recording from a device on Special Agent Armenta's person."[40]

Mr. Rodriguez objects to the Court's consideration of this audio in its determination regarding whether Mr. Rodriguez invoked his right to silence because this audio recording of the interrogation is not in evidence.  This Court has already held an evidentiary hearing, and both parties have since agreed a further evidentiary hearing is unnecessary.  The government additionally had the opportunity to call Special Agent Armenta to testify at the evidentiary hearing, but it chose not to do so.  Mr. Rodriguez has not had the opportunity to question either agent on this new audio to assess its quality or reliability.

## IV.  Conclusion

For the foregoing reasons, Mr. Rodriguez respectfully requests this Court find the agents failed to scrupulously honor Mr. Rodriguez's unambiguous and unequivocal invocation of his right to remain silent, and consequently suppress any statements addressing the alleged assault on Officer Fanone.

---

[39] December 9, 2021 Minute Order

[40] *Id.*

**Dated:** December 17, 2021.

Respectfully submitted,

RENE L. VALLADARES
Federal Public Defender

*/s/ Rebecca A. Levy*
*/s/ Margaret W. Lambrose*
By:  */s/ Katherine Tanaka*
REBECCA A. LEVY
MARGARET W. LAMBROSE
KATHERINE TANAKA
Assistant Federal Public Defenders

Attorneys for Daniel Rodriguez

**Certificate of Electronic Service**

The undersigned hereby certifies that she is an employee of the Federal Public Defender for the District of Nevada and is a person of such age and discretion as to be competent to serve papers.

That on December 17, 2021, she served an electronic copy of the above and foregoing **REPLY TO GOVERNMENT'S SUPPLEMENTAL BRIEF** by electronic service (ECF) to the person named below:

> CHANNING D. PHILLIPS
> United States Attorney
> Kimberly L. Paschall
> Risa Berkower
> Tara Ravindra
> Assistant United States Attorneys
> 555 4th Street, NW
> Washington, DC 20530

> */s/ Cecilia Valencia*
> Employee of the Federal Public Defender