# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DANIEL RODRIGUEZ,

    Defendant.

Case No. 1:21-cr-00246-ABJ-1

# MOTION TO DISMISS COUNTS TWO AND THREE OF THE REDACTED INDICMENT (ECF No. 65)

# Table of Authorities

**Supreme Court Opinions**                                                    **Page(s)**

*Arthur Andersen LLP v. United States*,
    544 U.S. 696 (2005) ............................................................. 11, 17-18

*Barber v. Thomas*,
    560 U.S. 474 (2010) .................................................................. 6

*Begay v. United States*,
    553 U.S. 137 (2008) ........................................................... *passim*

*Bell v. United States*,
    349 U.S. 81 (1955) ................................................................. 6-7

*Buckley v. Valeo*,
    424 U.S. 1 (1976) ................................................................... 39

*Connally v. General Construction Company*,
    269 U.S. 385 (1926) ................................................................. 7

*Crandon v. United States*,
    494 U.S. 152 (1990) ............................................................ 32-33

*CSX Transp., Inc. v. Alabama Dept. of Revenue*,
    562 U.S. 277 (2011) ............................................................ 27-28

*Duncan v. Walker*,
    533 U.S. 167, (2001) ............................................................... 23

*Hoffman Estates v. Flipside, Hoffman Estates*,
    455 U.S. 489 (1982) ........................................................ 39-40, 42

*I.N.S. v. Nat'l Ctr. for Immigrants' Rts., Inc.*,
    502 U.S. 183 (1991) ................................................................ 32

*Kolender v. Lawson*,
    461 U.S. 352–58 (1983) ............................................................ 8

*Liparota v. United States*,
    471 U.S. 419 (1985) ........................................................................ 20

*M. Kraus & Bros. v. United States*,
    327 U.S. 614 (1946) ........................................................................ 32

*Marinello v. United States*,
    138 S. Ct. 1101 (2018) ................................................................... 11

*Marks v. United States*,
    430 U.S. 188 (1977) ........................................................................ 31

*Marx v. General Revenue Corp.*,
    568 U.S. 371 (2013) ........................................................................ 23

*Milner v. Dep't of Navy*,
    562 U.S. 562 (2011) ........................................................................ 35

*Robinson v. Shell Oil Co.*,
    519 U.S. 337 (1997) ........................................................................ 14

*Russell Motor Car Co. v. United States*,
    261 U.S. 514 (1923) ........................................................................ 22

*Sessions v. Dimaya*,
    138 S. Ct. 1204 (2018) ....................................................... 39, 41, 46

*Setser v. United States*,
    566 U.S. 231 (2012) ........................................................................ 23

*U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*,
    508 U.S. 439 (1993) ........................................................................ 33

*United States v. Aguilar*,
    515 U.S. 593 (1995) ........................................................................ 11

*United States v. Johnson*,
    576 U.S. 591 (2015) ................................................................. 41, 42

*United States v. Lanier*,
    520 U.S. 259 (1997) ............................................................ 11, 19, 39

*United States v. Shabani*,
    513 U.S. 10 (1994) ........................................................................ 6

*United States v. Wiltberger*,
    18 U.S. (5 Wheat.) 76 (1820) ...................................................... 37

*Util. Air Regulatory Grp. v. E.P.A.*,
    573 U.S. 302 (2014) ................................................................... 34

*Washington State Dept. of Social and Health Servs. v. Guardianship Estate of Keffeler*,
    537 U.S. 371 (2003) ................................................................... 22

*Whalen v. United States*,
    445 U.S. 684 (1980) ................................................................... 35

*\*Yates v. United States*,
    574 U.S. 528 (2015) ............................................................. *passim*

**Federal Court Opinions**

*Am. Fed'n of Gov't Emps., AFL–CIO, Local 3669 v. Shinseki*,
    709 F.3d 29 (D.C. Cir. 2013) ..................................................... 14

*Edwards v. District of Columbia*,
    755 F.3d 886 (D.C. Cir. 2014) ................................................... 40

*King v. Palmer*,
    950 F.2d 771 (D.C. Cir. 1991) (en banc) .................................... 27

*McAndrew v. Lockheed, Martin Corp.*,
    206 F.3d 1031 (11th Cir. 2000) ................................................. 18

*United States v. Adams*,
    343 F.3d 1024 (9th Cir. 2003) ..................................................... 7

*United States v. Anderson*,
 59 F.3d 1323 (D.C. Cir. 1995) (en banc) .......................................... 11

*United States v. Ballestas*,
 795 F.3d 138 (D.C. Cir. 2015) ..................................................... 3, 20

*United States v. Binette*,
 828 F. Supp. 2d 402 (D. Mass. 2011) .............................................. 18

*United States v. Bowdoin*,
 770 F. Supp. 2d 142 (D.D.C. 2011) ................................................ 38

*United States v. Bronstein*,
 849 F.3d 1101 (D.C. Cir. 2017) .................................................... 39

*United States v. Dunn*,
 434 F. Supp. 2d 1203 (M.D. Ga. 2006) ........................................... 18

*\*United States v. Ermoian*,
 752 F.3d 1165 (9th Cir. 2013) ............................................... *passim*

*United States v. Eshetu*,
 863 F.3d 946 (D.C. Cir. 2017) .................................................... 10

*United States v. Fiander*,
 547 F.3d 1036 (9th Cir.2008) ...................................................... 9

*United States v. Hite*,
 769 F.3d 1154 (D.C. Cir. 2014) ................................................... 14

*United States v. Hitt*,
 249 F.3d 1010 (D.C. Cir. 2001) .................................................... 9

*United States v. Hutchinson*,
 2006 WL 270019 (W.D. Vir. 2006) ................................................ 6

*\*United States v. Miller*,
 2022 WL 823070 (D.D.C. 2022) ...........................................*passim*

iv

*United States v. Montgomery,*
  2021 WL 6134591 (D.D.C. 2021) ......................................................21, 31, 36

*United States v. Morrison*,
  98 F.3d 619 (D.C. Cir. 1996) ........................................................... 46

*United States v. Petruk*,
  781 F.3d 438 (8th Cir. 2015) .......................................................... 30

*United States v. Poindexter*,
  951 F.2d 369 (D.C. Cir 1991) ................................................... *passim*

*United States v. Ramos*,
  537 F.3d 439 (5th Cir. 2008).......................................................... 17

*United States v. Rodriguez*,
  360 F.3d 949 (9th Cir. 2004) ............................................................ 7

*United States v. Sandlin*,
  2021 WL 5865006 (D.D.C. 2021) .........................................6, 16, 19

*United States v. Sanford Ltd.*,
  859 F. Supp. 2d 102 (D.D.C. 2012) ............................................. 9-10

*United States v. Sharpe*,
  438 F.3d 1257 (11th Cir. 2006) ......................................................... 9

*United State v. Singleton*,
  2006 WL 1984467 (S.D. Tex. 2006) ................................................. 6

*United States v. Stone*,
  394 F. Supp. 3d 1 (D.D.C. 2019) ...................................................... 9

*United States v. Young*,
  916 F.3d 368 (4th Cir. 2019) .......................................................... 17

**U.S. Constitution**

U.S. Const. amend I ........................................................................ 42

U.S. Const. amend. XII ................................................................... 13

## United States Code

3 U.S.C. § 15 ................................................................. 3, 13, 14

3 U.S.C. § 16 ................................................................. 14

3 U.S.C. § 17 ................................................................. 14

3 U.S.C. § 18 ................................................................. 14

18 U.S.C. § 2 ................................................................. 2

18 U.S.C. § 924 ............................................................. 24, 25

18 U.S.C. § 1505 ........................................................... 8

18 U.S.C. § 1512 ........................................................... *passim*

18 U.S.C. § 1513 ........................................................... 15, 19

18 U.S.C. § 1515 ........................................................... 3, 15

18 U.S.C. § 1519 ........................................................... 26, 36

18 U.S.C. § 1521 ........................................................... 19, 21

18 U.S.C. § 1951 ........................................................... 2

## Federal Rules

Federal Rule of Criminal Procedure 12 ........................................... *passim*

## Other

Black's Law Dictionary 1160 (9th ed. 2009) ........................................ 22

Black's Law Dictionary 1204 (6th ed. 1990) ................................... 3-4, 16

## A.    Introduction

This Motion seeks to dismiss Counts Two and Three of the Indictment (ECF No 65):

Count Two is entitled "Obstruction of an Official Proceeding and Aiding and Abetting" under 18 U.S.C. § 1512(c)(2).  It alleges that Daniel Rodriguez, Edward Badalian, and an unnamed codefendant and conspirator did, on or about January 6, 2021, with the District of Columbia, "attempted to, and did, ***corruptly*** obstruct, influence and impede an ***official proceeding"*** in violation of 18 U.S.C. §§ 1512(c)(2) and 2.[1]  (ECF No. 65 at 14 (emphasis added).)[2]

Count Three is entitled Tampering "Tampering with Documents or Proceedings", in violation of 18 U.S.C. § 1951(c)(1).  It alleges that between January 6, 2021, and on or about January 19, 2021, Mr. Rodriguez and codefendants "did ***corruptly*** alter, destroy, mutilate, and conceal a record, document, and other objected, and attempted to do so, with the intent to impair its integrity and availability for use in an **official proceeding"** in violation of 18 U.S.C. § 1512(c)(1).  (*Id.* at 15 (emphasis added).)

While the majority of this Motion is directed toward Count Two and § 1512(c)(2), and some of the discussed infirmities pertain only to that subsection, the Motion's arguments regarding the "official proceeding" and "corruptly" elements

---

[1] 18 U.S.C. § 2 describes aiding and abetting.

[2] All records documents herein reference the page numbers generated by the ECF system.

are relevant to both counts.  Because § 1512(c), by its plain language, did not criminalize the January 6, 2021 action by Congress, the actions described in the Counts are outside the statute's scope.

Accepting the Indictment's allegations as true, the charging document does not describe Mr. Rodriguez taking an action toward an "official proceeding."[3]  The Indictment makes clear that the proceeding the government contends is "official" began at approximately 1:00 p.m. on January 6, 2021.  (*See* ECF No. 65 [hereinafter Indictment] ¶¶ 3, 4.)  A joint session of Congress convened in the U.S. Capitol, accompanied by then Vice President Pence, for the purpose of certifying the vote count of the Electoral College, as required by the Twelfth Amendment and the Electoral Count Act, 3 U.S.C. § 15.  (*See id.* ¶ 4.)  The government alleges that Rodriguez joined a large mob of people that stormed the Capitol to disrupt the certification.

"Official proceeding" is defined as "a proceeding before the Congress."  18 U.S.C. § 1515(a)(1)(B) (2018).  Thus, the meaning of "official proceeding" depends heavily on the meaning of the word "proceeding.'"  *See United States v. Ermoian*, 752 F.3d 1165, 1169 (9th Cir. 2013).  The conflict stems from whether the term "proceeding" should be given a common or legal definition.  Mr. Rodriguez contends the term proceeding connotes actions involving litigation.  *See, e.g.,* Black's Law

---

[3] The Court's analysis of Rodriguez's Motion to Dismiss is limited to the Indictment alone which, for the limited purposes of this action, are presumed to be true.  *See United States v. Ballestas*, 795 F.3d 138, 149 (D.C. Cir. 2015).

Dictionary 1204 (6th ed. 1990) (defining proceeding as, inter alia, "[r]egular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment").  Since the January 6, 2021, Election Certification served a ministerial function with no adjudicative or legal fact-finding involved, it does not meet the statute's definition of "official proceeding."  Therefore, the government has failed to state a viable criminal offense and Count Two must be dismissed.

It is for this reason that Counts Two and Three must also be dismissed.  Both charges are predicated on acts directed toward official proceedings.  Because Congress' January 6, 2021, Electoral College certification does not meet the definition of official proceeding, both Counts Two and Three fail to state a valid defense and should be dismissed.

Count Two has other infirmities.  Congress enacted its operative subsection, 1512(c)(2), as part of the Sarbanes-Oxley Act of 2002 ("SOX").  "An Act to protect investors by improving the accuracy and reliability of corporate disclosures made pursuant to securities laws, and for other purposes."  Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745.  A Senate Judiciary Committee report described the Act's purpose as "provid[ing] for criminal prosecution and enhanced penalties of persons who defraud investors in publicly traded securities or alter or destroy evidence in certain Federal investigations."  S. Rep. No. 107-146, at 2 (2002).

The statute in question is entitled: "Tampering with a witness, victim, or an informant."  It reads:

(c) Whoever corruptly—
(1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
(2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,
    shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512(c) (2018).

Section § 1512(c)(2) applies to a particular manner and means of "corruptly" obstructing, influencing or impeding an official proceeding. Its focus is on interfering with documents or other objects that are vital to the function of that proceeding. The structure and plain language of the statute supports that interpretation. But the Indictment does not charge Mr. Rodriguez with any acts that fall within these parameters.

Instead, the government reads the "otherwise" clause contained in § 1512(c)(2) to be open-ended and untethered from the narrow class of actions defined in § 1512(c)(2). (See ECF No. 65 at 14.) Any form of obstruction will do. It need not be based on document shredding or otherwise despoiling a piece of evidence. This is a plausible, but unlikely, reading of the statute.

There are two reasonable interpretations of the subsection. Many courts have consulted the traditional cannons as well as the structure of the statute and its legislative history. See, e.g., United States v. Miller, 2022 WL 823070, at *6-15 (D.D.C. 2022). The courts have reached different conclusions regarding § 1512(c)(2)'s reach. Some hew closer to Mr. Rodriguez's reading while others to the

government's.  *Compare id. at +7-14; United State v. Singleton*, 2006 WL 1984467, at *3 (S.D. Tex. 2006) (unpublished order) ("The Court holds also, however, that to violate § 1512(c)(2), the charged conduct must have some reasonable nexus to a record, document or tangible object."); *United States v. Hutchinson*, 2006 WL 270019, at *2 (W.D. Vir. 2006) (unpublished) (requiring the individual to corruptly interfere with "a tangible object"), *with United States v. Sandlin*, 2021 WL 5865006, *9 (D.D.C. ("Based on the plain text, the broader context, and the weight of authority, the Court concludes that § 1512(c)(2) covers a broader set of obstructive acts than the defendants contend.").  That the jurist of reason reached different conclusion about the scope § 1512(c)(2) confirms that the statute is saddled with a "grievous ambiguity" that requires applying the narrower construct Mr. Rodriguez proposes.

The rule of lenity "applies only when, after consulting traditional canons of statutory construction, we are left with an ambiguous statute."  *United States v. Shabani*, 513 U.S. 10, 17 (1994).  That different courts have reached different conclusions in what the statute means is the very essence of ambiguity.  *Cf. Barber v. Thomas,* 560 U.S. 474, 488 (2010) ("The rule of lenity only applies if, after considering text, structure, history, and purpose, there remains a 'grievous ambiguity or uncertainty in the statute,' such that the Court must simply 'guess as to what Congress intended.'") (citations omitted); *see also Bell v. United States*, 349 U.S. 81, 84 (1955) ("if Congress does not fix the punishment for a federal offense

clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses").

Third, § 1512(c)(2) as alleged in both Counts Two and Three, is void for vagueness as applied to the facts and circumstances of this case.   Section §1512(c) uses words throughout both subsections that require courts to speculate as to their meaning in the context of the defendant's particular actions. Courts must speculate as to the meaning of the word "corruptly" and the phrase "official proceeding."  This implicates due process and void for vagueness concerns.

Under the "void for vagueness doctrine," a statute is void "if it fails to give adequate notice to people of ordinary intelligence concerning the conduct it proscribes . . ." *United States v. Adams*, 343 F.3d 1024, 1035 (9th Cir. 2003) (citing *Schwartzmiller v. Gardner*, 752 F.2d 1341, 1345 (9th Cir. 1984)).  "The essential purpose of the 'void for vagueness' doctrine is to warn individuals of the criminal consequences of their conduct."  *United States v. Rodriguez*, 360 F.3d 949, 953-954 (9th Cir. 2004) (quoting *Jordan v. De George*, 341 U.S. 223, 230 (1951)).

A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." *Connally v. General Construction Company*, 269 U.S. 385, 391 (1926). In particular, a penal statute must define the criminal offense with sufficient definiteness that ordinary people can understand what conduct it prohibits, and do so in a manner that does not invite arbitrary and discriminatory enforcement by which "policemen,

prosecutors, and juries ... pursue their personal predilections." *Kolender v. Lawson,* 461 U.S. 352, 357–58 (1983).

The first part of the statute in question condemns any who perform the lasted actions "corruptly." 18 U.S.C. § 1512(c) (2018).  In the seminal case of *United States v. Poindexter*, 951 F.2d 369, 377-88 (D.C. Cir 1991), the court, after extensive discussion found the term "corruptly" to be fatally vague as applied to the Witness Protection Act.[4]  In the instant case, the same term renders the statute unconstitutionally vague; particularly as applied to the Indictment's specific allegations.

For these three reasons, all of which are animated to some degree by the ambiguity in § 1512(c) as charged, Mr. Rodriguez respectfully requests, pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v), that this Court dismiss Counts Two and Three of the Redacted Indictment.

---

[4] That relevant portion of the act reads:

> **Whoever corruptly**, or by threats or force, or by any threatening letter or communication influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States, or the due and proper exercise of the power of inquiry under which any inquiry or investigation is being had by either House, or any committee of either House or any joint committee of the Congress—

18 U.S.C. § 1505 (2018) (emphasis added).

## B.     The Parameters of a Pretrial Motion to Dismiss

Mr. Rodriguez brings this motion pursuant to Federal Rule of Criminal Procedure 12(b)(3).  Under the rule, a criminal defendant may, before trial, move to dismiss a count of the indictment based on a "defect in the indictment."  As relevant here, defects include "failure to state an offense."  Fed. R. Crim. P. 12(b)(3)(B)(v).

"In ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the indictment and, more specifically, *the language* used to charge the crimes."  *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006) (emphasis in original).  "Adherence to the language of the indictment is essential because the Fifth Amendment requires that criminal prosecutions be limited to the unique allegations of the indictments returned by the grand jury."  *United States v. Hitt*, 249 F.3d 1010, 1016 (D.C. Cir. 2001).  The district court must "presume the allegations of [the] indictment to be true."  *United States v. Fiander*, 547 F.3d 1036, 1041 n.3 (9th Cir.2008) (internal citation and quotation marks omitted).

A 12(b)(3) motion does not allow a court to dismiss an indictment on a determination of facts that should have been developed at trial."  *See Sharpe*, 438 F.3d at 1263.

"Failure to state an offense" may be due to a question of statutory interpretation or a constitutional issue.  *See United States v. Stone*, 394 F. Supp. 3d 1, 8 (D.D.C. 2019).  The operative question is whether the allegations in the charging document will, if proven, be sufficient to permit a jury to find that the crimes charged were committed.  *See United States v. Sanford Ltd.*, 859 F. Supp. 2d

9

102, 107 (D.D.C. 2012); *see also United States v. Eshetu*, 863 F.3d 946, 952 (D.C. Cir. 2017), *vacated on other grounds*, 898 F.3d 36 (D.C. Cir. 2018) ("The defense of failure of an indictment to charge an offense includes the claim that the statute apparently creating the offense is unconstitutional." (quoting *United States v. Seuss*, 474 F.2d 385, 387 n.2 (1st Cir. 1973)).

### C.    The Operative Facts as Charged in the Indictment

On January 6, 2021, at approximately 1:00 p.m., a joint session of Congress and then Vice President Pence convened in the United States Capitol to engage in the ministerial task of certifying the already confirmed and validated vote count of the Electoral College.  (*See* Indictment ¶¶ 3-4, 13.)  At the same time, a large crowd began to gather outside the Capitol perimeter.  (*See id.* ¶ 14; *accord id.* ¶ 46 (explaining the crowd numbered "thousands").)

The crowd eventually entered the Capitol and made their way through the halls of Congress, forcing members of the House of Representatives, the Senate, and the Vice President to evacuated "their respective chambers."  (*Id.* ¶ 15.)  Law enforcement eventually regained control of the Capitol later that night.  At approximately 8:00 p.m., the Joint Session reconvened.  (*See id.* ¶ 16.)

The government alleges that Mr. Rodriguez was an active participant in January 6, 2021 events.  Prior to that occurrence, he was part of a chat group, "The Patriots 45 MAGA Gang," that supported former President Trump and asserted that the 2020 election was fraudulent.  (*See id.* ¶¶ 8-9.)  In late 2020, Mr. Rodriguez and his codefendants attended pro-Trump rallies and other events concerning affiliated causes.  (*See id.* ¶ 10.)

10

### D.      Courts Must Exercise Restraint When Interpreting Criminal Statutes.

Because Mr. Rodriguez challenges the scope of a federal criminal statute and its application to his alleged conduct, interpretive rules apply.  The lens through which all three of Mr. Rodriguez's challenges to 18 U.S.C. § 1512(c)(2) is that of leniency.  Courts have "traditionally exercised restraint in assessing the reach of a federal criminal statute." *United States v. Aguilar*, 515 U.S. 593, 600 (1995); *accord United States v. Anderson*, 59 F.3d 1323, 1333 (D.C. Cir. 1995) (en banc) (explaining that, because the statute in question was ambiguous, the "rule of lenity must, therefore, govern application of the statute").  The rule is animated by one of fairness and due process.  *See Aguilar*, 515 U.S. at 600 (citations omitted)*; accord United States v. Lanier*, 520 U.S. 259, 268 (1997).  "Due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope."); *cf. Marinello v. United States*, 138 S. Ct. 1101, 1108 (2018) ("A broad interpretation would also risk the lack of fair warning and related kinds of unfairness that led this Court in *Aguilar* to 'exercise' interpretive 'restraint.'").

Specifically in relation to § 1512, the Supreme Court has instructed lower courts to "exercise[] restraint in assessing the reach of [the]...statute both out of deference to ...Congress...and out of concern that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed[.]"  *Arthur Andersen LLP v. United States*, 544 U.S. 696, 703 (2005) (internal citations omitted).

11

Mr. Rodriguez contends that §1512(c)(2) is ambiguous in a number of ways even after resort to both standard canons of construction and the directive that criminal statutes be construed narrowly.

### E. Count Two of the Redacted Indictment Fails to State an Offense Because a Congressional Hearing to Engage in the Ministerial Task of Accepting Electoral College Votes Does Not Constitute an "Official Proceeding."

The first instance of ambiguity involves the meaning of the term "official proceeding."

Count Two of the Redacted Superseding Indictment provides:

**COUNT TWO**
**18 U.S.C. §§ 1512(c)(2), 2—Obstruction of an Official Proceeding and Aiding and Abetting**

73.   Paragraphs 1 through 17 and paragraphs 22 through 72 of this Indictment are re-alleged and incorporated as though set forth herein.

74.   On or about January 6, 2021, within in the District of Columbia, the defendants,

**DANIEL RODRIGUEZ,**
**EDWARD BADALIAN, *and***  ███  ███

attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, the certification of the Electoral College vote, and did aid and abet each other and others known and unknown to do the same.

(In violation of Title 18, United States Code, Sections 1512(c)(2) and 2)

(ECF No. 65 at 14.)

Count Three reads:

**COUNT THREE**
**18 U.S.C. § 1512(c)(1)—Tampering with Documents or Proceedings**

75.    Paragraphs 1 through 17 and paragraphs 22 through 72 of this Indictment are re-alleged and incorporated as though set forth herein.

76.    On January 6, 2021, the Washington, D.C. Field Office of the Federal Bureau of Investigation ("FBI") opened an investigation into the attack on the Capitol, and a grand jury of the United States District Court for the District of Columbia subsequently opened an investigation.

77.    Between on or about January 6, 2021, and on or about January 19, 2021, the defendants, within the District of Columbia and elsewhere, the defendants,

(ECF No. 65 at 15.)

As both the language of the Indictment, and the terms of statute explicitly require, the charged acts of obstruction must be related to an "official proceeding." *See* § 1512(c)(1)-(2).

The putative "proceeding" at issue is a Congressional hearing to count Electoral College votes from the 2020 presidential election pursuant to the Twelfth Amendment and 3 U.S.C. § 15. The event is mostly a formality. The Vice President, acting as President of the Senate, must "open all the certificates" of the electoral results "in the presence of the Senate and House of Representatives." U.S. Const., art. II, § 1, cl. 3; U.S. Const. amend. XII. The "votes shall then be counted." U.S. Const. amend. XII.

The Electoral Count Act, Pub. L. No. 45-90, 24 Stat. 373 (1887), specifies the procedures to be followed. A Joint Session of the Senate and the House of Representatives must meet "at the hour of 1 o'clock in the afternoon" on "the sixth day of January succeeding every meeting of the electors." 3 U.S.C. § 15 (2018). The

Vice President, the presiding officer, opens the certificates of the electoral votes and hands them to tellers appointed by each House, who make a list of the votes. *Id.* When announcing each certificate, the presiding officer calls for objections, if any, which must be made in writing and signed by both one Senator and one Member of the House of Representatives. *Id.*

Thereafter, the Senate and the House withdraw to consider each objection, and "each Senator and Representative may speak to such objection or question five minutes, and not more than once." *Id.* § 17. The presiding officer must cut the debate off after two hours. *Id.* He also has the "power to preserve order" during the session. *Id.* § 18. The Act commands that the session "not be dissolved until the count of electoral votes shall be completed and the result declared." *Id.* § 16.

To determine the meaning of "official proceeding," the analysis begins "with the text of the statute." *Am. Fed'n of Gov't Emps., AFL–CIO, Local 3669 v. Shinseki*, 709 F.3d 29, 33 (D.C. Cir. 2013); *accord Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). "It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain...the sole function of the courts is to enforce it according to its terms." *United States v. Hite*, 769 F.3d 1154, 1160 (D.C. Cir. 2014) (*quoting Caminetti v. United States*, 242 U.S. 470, 485 (1917) (internal quotes omitted)). "The search for the meaning of the statute must also include an examination of the statute's context and history." *Hite*, 769 F.3d at 1160.

14

Therefore, the question is whether the January 6, 2021, Congressional counting of the Electoral College votes meets the text of the operative statutory definition.  Title 18 U.S.C. § 1515(a)(1) defines the term "official proceeding" for the purposes of § 1512:

> (a) As used in sections 1512 and 1513 of this title and in this section—
>
> (1) the term "official proceeding" means—
>
>> (A) a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;
>> (B) a proceeding before the Congress;
>> (C) a proceeding before a Federal Government agency which is authorized by law; or
>> (D) a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce

The question distills down to the whether the Electoral Count constitutes "a proceeding before Congress" under § 1515(a)(1)(B).  That section, unfortunately, does not clear away the ambiguity because it largely uses the terms "proceeding before" various entities without precisely defining the term "proceeding".  *See United States v. Ermoian*, 752 F.3d 1165, 1169 (9th Cir. 2013) (recognizing § 1515(a) is "somewhat circular[ ]" with respect to the meaning of the word "proceeding").

There are two possible routes to defining the term.  The word could be given an ordinary or a legal meaning.  In common terms relevant to this context, a

15

"proceeding" is "a particular way of doing or accomplishing something . . .a particular action or course of action" or "a particular step or series of steps adopted for doing or accomplishing something."  Webster's Third New Int'l Dictionary of the English Language Unabridged 1807 (2002) (definitions 2(a), (b), & (c)).  Under this definition, the government has an argument that the certification of the Electoral College is "a particular way of accomplishing something" before Congress.

However, the plural "proceedings" means "the course of procedure in a judicial action or in a suit of litigation . . . a particular action in at law or case in litigation."  *Id.* (definition (2)(e)(1) & (2)); *see also* Black's Law Dictionary 1204 (6th ed. 1990) (defining proceeding expansively but beginning with: "In a general sense, the form and manner of conducting judicial business before a court or judicial officer").

Mr. Rodriguez contends both the structure of § 1515(a) and its plain terms requires that the proceeding in question be judicial in nature.  There does not appear to be a published federal court of appeals decision on what "a proceeding before Congress" means.  *See United States v. Sandlin*, 2021 WL 5865006, at *3 (D.D.C. 2021).  Courts have, however, interpreted the phrase "proceeding before a Federal Government agency which is authorized by law," as it appears in § 1515(a)(1)(C).  Those courts, considering various statutory clues, have consistently held that "proceeding" should be defined narrowly.

For instance, *United States v. Ermoian* was one of the first appellate decisions to consider the meaning of "official proceeding" as that term is used in

Section 1512(c) and defined in Section 1515.  *See Ermoian*, 752 F.3d at 1168.  That case considered whether a criminal investigation by the FBI was considered an "official proceeding" for purposes of § 1512(c).  It determined that it was not.

"As used in the statute, the definition of the phrase 'official proceeding' depends heavily on the meaning of the word 'proceeding.'"  *Id.* at 1169.  That word is used—somewhat circularly—in each of the definitions for an 'official proceeding' and is key to the phrase's meaning."  *Id.* at 1169.  That the proceeding occurs "before" an agency implies "some formal convocation of the agency in which parties are directed to appear, instead of any informal investigation conducted by any member of the agency."  *Id.* at 1171 (quoting *United States v. Ramos*, 537 F.3d 439, 462-63 (5th Cir. 2008)).  And that "proceeding" is modified by "official," meaning "formal" and "ceremonious," indicates a sense of formality that is normally associated with legal proceedings, but not necessarily with a mere "action or series of actions."  *Id.* at 1170.

As such, neither FBI investigations nor other internal investigations constitute official proceedings.  *See id.* at 1172; *see also United States v. Young*, 916 F.3d 368, 384 (4th Cir. 2019) (agreeing with the reasoning presented in *Ermonian* and *Ramos*).  They lack the required formal adjudicative function.  *See Ermonian*, 752 F.3d at 1171 (requiring the proceeding to be akin to an agency performing "as a tribunal"); *accord Ramos*, 537 F.3d at 463 (explaining that Congress was referring to a proceeding that "involves some formal convocation of the agency in which parties are directed to appear"); *Arthur Andersen LLP v. United States*, 544 U.S.

696, 708 (2005) (interpreting § 1512(c) as requiring knowledge that a defendant's actions will affect a "judicial proceeding); *cf. McAndrew v. Lockheed, Martin Corp.,* 206 F.3d 1031, 1039 (11th Cir. 2000) ("Section 1512 . . . applies to attempts to prevent of influence testimony"); *see also United States v. Binette*, 828 F. Supp. 2d 402, 403-404 (D. Mass. 2011) (finding that a "preliminary" SEC investigation did not constitute an "official proceeding" under § 1512 as it lacked the necessary features of compelled attendance, sworn testimony, and subpoena powers).

Admittedly, the Electoral Count "proceeding" at issue is more akin to a legal proceeding than an internal investigation.  Yet there are commonalities.  Both lack the trappings of judicial process for fact and legal findings.  The January 6, 2021, action before Congress was not a formal proceeding sufficiently similar to adjudicative functions so as to qualify as an "official proceeding."  *Cf..*, 206 F.3d at 1039 ("Section 1512... applies to attempts to prevent or influence testimony not only in federal courts but also ***before Congress***, federal agencies, and insurance regulators." (emphasis added)); *see also United States v. Dunn*, 434 F. Supp. 2d 1203, 1207 (M.D. Ga. 2006) (providing that § 1515(a)(1) "describe(s) events that are best thought of as hearings (or something akin to hearings): for example, federal court cases, grand jury testimony, ***Congressional testimony***, and insurance regulatory hearings" (emphasis added)).

Adding further credence to Mr. Rodriguez's contention is the fact that Sections 1512 and 1515 are contained in Chapter 73 of Title 18 of the United States Code.   Several of the subsections of Chapter 73 explicitly relate to the

administration of justice.  *See* 18 U.S.C. §§ 1503, 1504 (2018) (Influencing or injuring a juror); §1513 (Retaliating against a witness, victim or informant); § 1521 (Retaliating against a federal judge or law enforcement officer by false claim or slander of title).  These laws are related to the obstruction of the administration of justice.  Section 1512(c) falls right within their midst.

The January 6, 2021, function was more akin to a ministerial action because it lacked the fact and legal findings necessary to be a formal hearing and, hence, an "official proceeding."[5]  At the very least, the term is ambiguous and, as noted, that ambiguity inures to Mr. Rodriguez's favor.  *See, e.g., United States v. Lanier*, 520 U.S. 259, 268 (1997).

Neither Counts Two or Three can survive because Congress did not intend to, nor did, criminalize the disruption of a ceremony before Congress.  Relevant only to Count Two, the specter of ambiguity also infects attempts to discern what conduct § 1512(c)(2) proscribes.

> ### 1.   Count Two Fails to State an Offense Because the Conduct it Charges is Beyond the Scope of § 1512(c)(2).

Mr. Rodriguez's second challenge is broader—§ 1512(c)(2) does not criminalize his alleged actions on January 6, even assuming, as this Court must,

---

[5] Mr. Rodriguez recognizes that other courts of this district disagree with this analysis.  *See, e.g., United States v. Caldwell*, WL 6062718, at *6-7 (D.D.C. 2021); *United States v. Sandlin*, 2021 WL 5865006, at *3-5 (D.D.C. 2021). Given the lack of binding precedent foreclosing the argument, Mr. Rodriguez submits the question is nonetheless worth pursuing.

that the allegations contained within the latest Indictment are true. *See, e.g.,*
*United States v. Ballestas,* 795 F.3d 138, 149 (D.C. Cir. 2015).

Mr. Rodriguez contends that a proper reading of section 1512(c)(2) prohibits
only conduct intended to generate false testimony, impede the testimony of
witnesses, or impair the collection of evidence in some fashion. The obstructive
conduct requires some nexus to tangible evidence.

The allegations in the Indictment do not allege this type of conduct.
Therefore, Count Two of the Indictment fails to state a viable offense and must be
dismissed.

In order to assess the merits of this challenge, this Court must determine
what conduct § 1512(c)(2) prohibits and whether Mr. Rodriguez's alleged actions fall
within that prohibition. Applying the traditional tools of statutory interpretation—
text, structure, and the development of the statute over time—Mr. Rodriguez
submits that multiple readings of the statute are possible. This is therefore a
circumstance in which the Court must exercise restraint in assessing the reach of a
federal criminal statute and resolve ambiguities in favor of the defendant. *See, e.g.,*
*Liparota v. United States*, 471 U.S. 419 (1985).

### 2. The Possible Meanings of Section 1512(c)(2)'s "Otherwise" Clause

In Count Two of the Redacted Indictment, Mr. Rodriguez is charged with
Obstruction of an Official Proceeding and Aiding and Abetting under 18 U.S.C.
§ 1512(c)(2). (*See* ECF No. 65 at 14.)

As noted, the analysis must begin with the text of the statute which proscribes:

> (c) Whoever corruptly—
>
>> (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with intent to impair the object's integrity or availability for use in an official proceeding; or
>>
>> *(2) otherwise* obstructs, influences, or impedes any official proceeding, or attempts to do so,
>
> shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512(c) (emphasis added).

Mr. Rodriguez is charged with violating only subsection (2).  (*See* ECF No. 65 at 14.)  This alone is remarkable because § 1512(c)(2) alone is "linguistically awkward."  *United States v. Miller*, 2022 WL 823070, at *6 (D.D.C. 2022).   The adverbial use of the word "otherwise," makes it so the clause cannot stand on its own for it would then read: "Whoever corruptly. . . otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so."   It is beyond peradventure that the meaning of the term "otherwise" is crucial to understanding the scope of the § 1521(c)(2).

There are three possibilities.  The first is that "otherwise" is construed as a clean-break between the two subsections.  This will be the government's preferred take as this interpretation opens up subsection (c)(2) to cover any sort of conduct that "corruptly. . . obstructs, influences, or impedes any official proceeding."

The second is that subsection (c)(1) provides examples of conduct that violate (c)(2). This interpretation allows "otherwise" to tether the two subsections together. The common element is that the unlawful conduct must relate to an "official proceeding." *See Miller*, at *8 (citing *United States v. Montgomery*, 2021 WL 6134591, at *12 (D.D.C. 2021)).

The third, most plausible reading, is that subsection (c)(2) is informed by its preceding subsection. In essence, it is a residual clause that requires that the charged actions be similar in nature to those specifically listed in (c)(1). Mr. Rodriguez contends this is the proper way to read the statute because, inter alia, it is consistent with two canons of construction—*ejusdem generis*, *noscitur a sociis*—the presumption against interpreting statutes in a manner that renders language superfluous, and as previously, discussed, the rule of lenity.[6]

Mr. Rodriguez will discuss each possible interpretation in turn.

---

[6] The interpretive maxim "*noscitur a sociis*," literally translated, means "it is known by its associates." Black's Law Dictionary 1160 (9th ed. 2009). This canon of construction counsels lawyers discerning statutes that "a word may be known by the company it keeps." *Russell Motor Car Co. v. United States*, 261 U.S. 514, 519 (1923).

The phrase *ejusdem generis* is a canon related to *noscitur a sociis*. *Ejusdem generis*, counsels: "Where general words follow specific words in a statutory enumeration, the general words are [usually] construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Washington State Dept. of Social and Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 384 (2003); *see also Yates v. United States*, 574 U.S. 528, 546 (2015) (applying both canons of construction).

### a.      The Untethered Analysis

"Otherwise" has three different definitions that are plausible in this context: "in a different way or manner: differently"; "in different circumstances: under other conditions"; and "in other respects." Webster's Third New Int'l Dictionary of the English Language Unabridged 1598 (2002).

If the first definition governs—"in a different way or manner"—then one could posit there is clean break between subsections (c)(1) and (2).  The two sections are untethered.  If so, then the only question is whether Mr. Rodriguez "corruptly . . . obstruct[ed], influence[d], or impede[d] any official proceeding, or attempt[ed] to do so."  "Under this reading, there would be no relationship between subsections (c)(1) and (c)(2) at all." *Miller*, at * 6.

Mr. Rodriguez suggests this interpretation should be rejected.  The canons of statutory interpretation suggest that "otherwise" should be given a narrow, not expansive, meaning.

Further, this interpretation renders "otherwise" meaningless.  When possible, courts must give effect to every word in a statute.  *See Setser v. United States*, 566 U.S. 231, 239 (2012).  If § 1512(c)(2) is read as untethered to § 1512(c)(1), then "otherwise" would be pure surplusage.  *Cf. Duncan v. Walker*, 533 U.S. 167, 174, (2001) (expressing a general reluctance "to treat statutory terms as surplusage"); *see also Marx v. General Revenue Corp.*, 568 U.S. 371, 386 (2013) ("the canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme").

23

The untethered, clean-break, analysis is also inconsistent with at least two Supreme Court cases. *See Begay v. United States*, 553 U.S. 137 (2008), *abrogated on other grounds by Johnson v. United States*, 576 U.S. 591 (2015); *Yates v. United States*, 574 U.S. 528 (2015).[7]

### i.    *Begay v. United States*

*Begay v. United States*, 553 U.S. 137 (2008), considered whether drunk driving was a "violent felony" under the Armed Career Criminal Act. The ACCA defined a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that "is burglary, arson, or extortion, involves use of explosives, or ***otherwise*** involves conduct that presents a risk of physical injury to another." *Begay*, 553 U.S. at 139-40 (quoting 18 U.S.C. § 924(e)(2)(B)(ii) (2000)) (emphasis added).

Crucial to the Court's analysis was thus what "otherwise" meant because whether a prior conviction for driving under the influence (DUI) qualified as a violent felony under § 924(e)(2)(B)(ii) depended on the scope and meaning of that clause.  See *id.* at 140.  "Drunk driving is an extremely dangerous crime," that undoubtedly presents significant risk.  *Id.* at 141.  "Even so, we find that DUI falls outside the scope of clause (ii)."  *Id.* at 142.  "It is too unlike the provision's listed examples [burglary, arson, extortion, or crimes involving explosives] for us to believe that Congress intended the provision to cover it."  *Id.*

---

[7] *Begay* was abrogated by *Johnson* because that case held that § 924(e)(2)(b)(ii)'s "residual clause" was unconstitutional vague.

24

In reaching the above conclusion, *Begay* explained:

> In our view, the provision's listed examples—burglary, arson, extortion, or crimes involving the use of explosives—illustrate the kinds of crimes that fall within the statute's scope. Their presence indicates that the statute covers only ***similar*** crimes, rather than every crime that "presents a serious potential risk of physical injury to another." § 924(e)(2)(B)(ii). If Congress meant the latter, *i.e.*, if it meant the statute to be all encompassing, it is hard to see why it would have needed to include the examples at all.

*Id.* at 142 (emphases in original).

"'[T]o give effect...to every clause and word of this statute,' we should read the examples as limiting the crimes that clause (ii) covers to crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples themselves." *Id.* at 142 (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)).[8]

The court applied a similar analysis in a case involving whether fish could be considered a "tangible object."

### ii.    *Yates v. United States*

*Yates v. United States*, 574 U.S. 528 (2015), involved an interesting fact pattern where a commercial fisherman, John Yates, directed members of his crew to throw grouper, a kind of fish, overboard after a federal resource-management officer

---

[8] Justice Scalia wrote a concurrence where he agreed with the five-judge majority that "otherwise" tethered the text preceding it to the text following. He disagreed, however, regarding how they related. In Justice Scalia's view, "by using the word 'otherwise' the writer draws a substantive connection between two sets only on one specific dimension—*i.e.*, whatever *follows* 'otherwise.'" *Begay,* 553 U.S. at 151 (Scalia, J., concurring in judgment).  Thus, in Justice Scalia's view, although it isn't entirely clear, the text before "otherwise" did not limit the text that follows it.

had issued him a citation for possession of undersized fish.  *See Yates*, 574 U.S. at

532-34. For his actions, Mr. Yates ended up getting charged with a violation of 18

U.S.C. § 1519, a felony carrying up to a twenty-year sentence.  *See id.* at 534.

Title 18 U.S.C. § 1519 makes it a crime to "alter[], destroy[], mutilate[],

conceal[], cover[] up, falsif[y], or make[] false entry ***in any record, document, or***

***tangible object***" in relation to certain types of investigations, matters, and cases.

*See* 18 U.S.C. § 1519 (2012) (emphasis added).  The prosecution contended that the

grouper the defendant directed be thrown overboard were "tangible object[s]" for the

purposes of the statute.  The trial judge agreed with the government and denied

Mr. Yates' motion for a judgment of acquittal at the close of trial.  *See Yates*, 574

U.S. at 535.  The jury convicted Mr. Yates at trial and he lost his appeal to the

Eleventh Circuit.  The Supreme Court reversed.  *See id.*

A four-Justice plurality of the Supreme Court noted that 18 U.S.C. § 1519

was created through the Sarbanes-Oxley Act—the same act that created 18 U.S.C.

§1512(c), the charge that underlines Count Two of Mr. Rodriguez's Indictment.  The

plurality noted that the Sarbanes-Oxley Act "was prompted by the exposure of

Enron's massive accounting fraud and revelations that the company's outside

auditor, Arthur Andersen, LLP, had systematically destroyed potentially

incriminating documents."  *Id.* at 535-36.  Against this backdrop, the plurality then

determined that the term "tangible object" in § 1519 is only meant to refer to

tangible objects that are of a type with a "record" or "document" and not just to "all

objects in the physical world."  *Id.* at 536.

This conclusion is compelled by the interpretive canons of *noscitur a sociis*, *i.e.*, it is known by its company, and *ejusdem generis*, *i.e.*, it is of the same kind.  *See id.* at 543. [9]  Under the *noscitur a sociis* canon, a term should not be ascribed "a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress."  *Id.* at 543 (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995)).  Under the *ejusdem generis* canon, where "general words follow specific words in a statutory enumeration, the general words are [usually] construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words."  *Id.* at 545 (quoting *Washington State Dept. of Social and Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 384 (2008)).

By applying the *noscitur a sociis* and *ejusdem generis* canons to the phrase "any record, document, or tangible object" in § 1519, the Court determined that "tangible object" should not be understood to be something of a type different than "record" or "document."  *See id.* at 546; *see also CSX Transp., Inc. v. Alabama Dept. of Revenue*, 562 U.S. 277, 295 (2011) ("We typically use *ejusdem generis* to ensure

---

[9] In this aspect of the holding, they were joined by a fifth Justice.  *See Yates*, 574 U.S. at 549-50 (Alito, Justice, concurring).  Under *King v. Palmer*, 950 F.2d 771 (D.C. Cir. 1991) (en banc), to be binding as representing the narrowest grounds for decision, an opinion "must represent a common denominator of the Court's reasoning it must embody a position implicitly approved by at least five Justices who support the judgment."  *Palmer*, 950 F.2d at 781 (interpreting *Marks v. United States*, 430 U.S. 188 (1977)).  Under this reasoning, the majority opinion's discussion of the canons of construction is binding.

27

that a general word will not render specific words meaningless."). "Had Congress

intended 'tangible object' in § 1519 to be interpreted so generically as to capture

physical objects as dissimilar as documents and fish, Congress would have had no

reason to refer specifically to 'record' or 'document' [in the first place]." *Yates*, 574

U.S. at 546.

### iii.   Yates and Begay Demonstrate that the Untethered Interpretation of § 1512(c)(2) Should be Rejected

Under *Yates* and *Begay*, the conduct described in 18 U.S.C. § 1512(c)(2),

under which Mr. Rodriguez is charged—"obstruct[ing], influence[ing], or imped[ing]

[an] official proceeding, or attempt[ing] to do so"—must be understood as being of

the same type as the conduct described in its companion provision, 18 U.S.C.

§ 1512(c)(1)—"alter[ing], destroy[ing], mutilat[ing], or conceal[ing] a record,

document, or other object, or attempt[ing] to do so, with the intent to impair the

object's integrity or availability for use in an official proceeding." The untethered,

clean-break, interpretative approach is not viable.

The interpretive canon of *noscitur a sociis* requires that the conduct described

in § 1512(c)(2) be understood as being of the same character as the conduct

described in § 1512(c)(1). The *ejusdem generis* canon requires that the conduct

described in § 1512(c)(2), which is set out in general terms, not be read to embrace

meanings broader in nature than the conduct described in § 1512(c)(1), which is set

out in more specific terms.

Accordingly, given that the conduct described in § 1512(c)(1) is conduct that

can affect an official proceeding by impacting its ability to consider records,

documents, and other objects, the conduct described in § 1512(c)(2) cannot be read
to include conduct of a different type.  For this reason, § 1512(c)(2) can, at the most,
only be understood to reach conduct that can affect an official proceeding by
impacting the state and content of what it might consider in making its
deliberations.

Another reason to reject the untethered approach is that unless the language
of § 1512(c)(2) is interpreted as being limited by the language of § 1512(c)(1), the
entire subsection becomes a superfluity.  If Congress meant for § 1512(c)(2) to reach
all conduct that "obstructs, influences, or impedes [an] official proceeding, or
attempts to do so" as a general matter, there was no reason to include § 1512(c)(1).
Conduct related to "obstruct[ing], influenc[ing], or imped[ing] [an] official
proceeding, or attempt[ing] to do so" as a general matter would necessarily include
all conduct related specifically to "alter[ing], destroy[ing], mutilat[ing], or
conceal[ing] a record, document, or other object, or attempt[ing] to do, with the
intent to impair the object's integrity or availability for use in an official
proceeding."

This is yet another reason supporting a non-expansive reading of § 1512(c)(2).
*Cf. Yates*, 574 U.S. at 543 ("We resist a reading of [a statutory provision] that would
render superfluous an entire provision passed in proximity as part of the same
Act.").

Mr. Rodriguez recognizes that courts of appeals have adopted this clean-
break reading of "otherwise" in § 1512(c)(2).  This authority is nonbinding and

should be rejected.  For instance, *United States v. Petruk*, 781 F.3d 438 (8th Cir. 2015), adopts an expansive interpretation of § 1512(c) but the decision's textual analysis is curt, and only one paragraph discusses the statutory language.  *See Petruck*, 781 F.3d at 446-47.  Nor does the case discuss *Begay*.

For all these reasons, this Court should reject the clean-break, untethered, interpretation of § 1512(c)(2).  For similar reasons it should also reject the second interpretation—that § 1512(c)(1) provides examples of conduct that violates subsection (c)(2).

### b.    The Example Interpretation

An alternative reading of the statute is that subsection (c)(1) contains specific examples of conduct that is unlawful under subsection (c)(2).  The word "otherwise" in § 1512(c)(2) does have relevance.  It provides examples that fit within (c)(2)'s broader scope.  Under this reading, a common element in, or link between, the subsections is that the unlawful conduct must relate to an "official proceeding."  *See United States v. Miller*, 2022 WL 823070, at *8 (D.D.C. 2022).

This interpretation cures some of the defects of the untethered theory.  It acknowledges that, by using the word "otherwise," Congress indicated a substantive connection between" the text preceding and the text following the word. This is consistent with Justice Scalia's concurrence in *Begay*.  *See Begay v. United States*, 553 U.S. 137, 148-54 (2008).

This interpretation is, however, also invalid.  First, while it may be consistent with Justice Scalia's concurrence, that concurrence is not the controlling precedent

given the majority opinion was supported by five justices. *Cf. Marks v. United States*, 430 U.S. 188, 193 (1977).

Further, "if Congress intended for the common, linking element in both subsections to be the pendency of an 'official proceeding,' then the use of 'otherwise' in § 1512(c)(2) would be superfluous. *Miller*, at * 9. Both "subsections include the term "official proceeding," suggesting that the common link should be something other than the pendency of an official proceeding; otherwise there would be no reason to repeat the term in both subsections." *Id.*

Admittedly, there are important differences between § 1512(c) and the ACCA. As some courts have recognized, the operative language of the ACCA is different in sentence and grammatical structure. *See United States v. Montgomery*, 2021 WL 6134591, at *14 (D.D.C. 2021); *see also Miller,* at *10 ("the ACCA has no line break or semicolon before its use of 'otherwise'"). In Mr. Rodriguez's favor, under the then operative ACCA, "burglary, arson, and extortion," the specific crimes listed before the word "otherwise," are text-book examples of crimes that "involve[ ] conduct that presents a risk of physical injury to another." Section 1512(c) does not have this parity.

Section 1512(c)(2) contains terms such as "obstruct," "influence," and "impede," that are broad. In contrast, § 1512(c)(1) refers to "alter[ing], destroy[ing], mutilat[ing], or conceal[ing]" a record or document. This is a relatively narrow and discrete prohibition; that is, those are very limited ways in which to obstruct, influence or impede an official proceeding. Without some limitation, the text

31

following "otherwise" in subsection (c)(2) is quite broad in relation to the text preceding it.

The structure of § 1512(c) cuts against this reading.  Under the government's interpretation, the substance of the provision is contained in subsection (c)(2) while (c)(1) addresses only a limited, ancillary set of behaviors.  This is not how one would expect a statute to be organized.

Finally, another aspect of *Yates v. United States*, 574 U.S. 528 (2015), counsels against the example interpretive hypothesis.  Justice Alito's governing plurality opinion explained that his "analysis [was] influenced by [Section 1519's] title: 'Destruction, alterative, or falsification of records in Federal investigations and bankruptcy.'"  574 U.S. at 552 (Alito, J., concurring in the judgment).  Similarly, the title for Section 1512 contained in the U.S. Code—"Tampering with a witness, victim, or an informant"—is consistent with Mr. Rodriguez's view of the statute.  "The title of a statute or section can aid in resolving an ambiguity in the legislation's text." *I.N.S. v. Nat'l Ctr. for Immigrants' Rts., Inc.,* 502 U.S. 183, 189 (1991).

In the final analysis, the most plausible interpretation is that § 1512(c)(2) is a residual clause for subsection (c)(1).  This is consistent with *Begay* and also enjoys the virtue of being a limiting construction.  *See M. Kraus & Bros. v. United States,* 327 U.S. 614, 621-22 (1946) (explaining that "provisions must be explicit and unambiguous in order to sustain a criminal prosecution"); *cf. Crandon v. United States,* 494 U.S. 152, 160 (1990) ("Because construction of a criminal statute must

be guided by the need for fair warning, it is rare that legislative history or statutory policies will support a construction of a statute broader than that clearly warranted by the text.").

### c.   Subsection (c)(2) is a Residual Clause for (c)(1).

A third interpretation of the statute is that subsection (c)(2) operates as a residual clause or catchall for the prohibition contained in subsection (c)(1).  This is the correct interpretation and the one espoused by Mr. Rodriguez.  Under this reading, the word "otherwise" links the two subsections, but the link or commonality is found in the conduct prescribed by subsection (c)(1).

This interpretation is consistent with *Begay v. United States*, 553 U.S. 137 (2008), where the majority opinion rejected the government's broad construction of "otherwise."  *See Begay*, 553 U.S. at 144; *see also id.* at 142 ("the provision's listed examples" indicate "that the statute covers only ***similar*** crimes, rather than every crime that 'presents a serious potential risk of physical injury to another." (emphasis in original).

Further, the structure of 18 U.S.C. § 1512 as a whole supports Mr. Rodriguez's interpretation.  While the text of a statute is the starting point, it is not the only factor a court may consider.  "In expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy."  *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 455 (1993) (quoting *United States v. Heirs of Boisdore*, 49 U.S. 113 (1850)).  "A statutory provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme [it is placed in]

33

because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." *Util. Air Regulatory Grp. v. E.P.A.*, 573 U.S. 302, 321 (2014).

Section 1512 is specific in its definitions of criminal conduct. Subsection (a) criminalizes specific forms of violence such as killing another person to prevent the attendance of a person at an official proceeding. *See* 18 U.S.C. § 1512(a)(1)(A) (2018). This subsection also applies when physical force or threats are used against a person with the intent to cause someone to withhold testimony from an official proceeding. *See id.* § 1512(a)(2)(B)(i).

Subsection (b) focuses on verbal conduct, such as making threats with the intent to influence, delay, or prevent some testimony at an official proceeding. *See id.* § 1512(b)(1). Subsection (d) criminalizes the intentional harassment of a person thereby hindering, delaying, preventing, or dissuading any person from attending or testifying in an official proceeding. *Id.* § 1512(d)(1).

Subsection (c)(1) continues the statute's focus on specific and particularized actions. It pertains to acts that impedes the use of items with evidentiary value; particularly documents. It, like the other subsections of § 1512, describes a narrow, focused range of conduct.

If, however, the scope of subsection (c)(2) is not limited by subsection (c)(1) "it would introduce something of an internal inconsistency: subsection 1512(c)(2) would be the only provision in § 1512 not to have a narrow focus." *Miller*, at * 12. And, as previously noted, it would be strange to find that the broadest section of the entire

34

statute is buried deep within a subsection of a subsection.  "Congress does not hide elephants in mouseholes" but the government's interpretation would do precisely that.  *Id.* (citing *Whitman v. Am. Trucking Ass'n, Inc.*, 531 U.S. 457, 468 (2001)). Moreover, § 1512(c), under a broad interpretation, would render many of the specific portions of § 1512 moot.  *See also Whalen v. United States*, 445 U.S. 684, 691 (1980) ("The assumption underlying the rule [against pyramiding punishments] is that Congress ordinarily does not intend to punish the same offense under two different statutes.").

Finally, the legislative history of § 1512(c) supports Mr. Rodriguez's narrow interpretation.  It is reasonable to posit, at this juncture, that the statute is, at least, ambiguous.  "Legislative history, for those who take it into account, is meant to clear up ambiguity, not create it."  *Milner v. Dep't of Navy*, 562 U.S. 562, 574 (2011).

Section 1512(c) was enacted as part of the Sarbanes-Oxley Act of 2002, 116 Stat. 745. "The Sarbanes-Oxley Act, all agree, was prompted by the exposure of Enron's massive accounting fraud and revelation that the company's outside auditor, Arthur Andersen LLP, had systematically destroyed potentially incriminating documents."  *Yates v. United States*, 574 U.S. 528, 535-36 (2015) (plurality opinion).  While § 1512(b) "made it an offense to 'intimidat[e], threate[n], or corruptly persuade another person' to shred documents," the statute did not prohibit individuals from shredding documents themselves.  *See id*. at 536.  The Senate Report for the Act identified this statutory loophole:

> Indeed, even in the current Andersen case, prosecutors have been forced to use the "witness tampering" statute, 18 U.S.C. § 1512, and to proceed under the legal fiction that the defendants are being prosecuted for telling other people to shred documents, not simply for destroying evidence themselves. Although prosecutors have been able to bring charges thus far in the case, in a case with a single person doing the shredding, this legal hurdle might present an insurmountable bar to a successful prosecution.

S. Rep. No. 107–146, p. 7 (2002).

Title 18 U.S.C. § 1519 was originally introduced to plug this gap, and § 1512(c) was added later. *See Yates*, 574 U.S. at 535-36, 542. In particular, Senator Lott introduced § 1512(c) on July 10, 2002. *See United States v. Montgomery*, 2021 WL 6134591, at *15 (D.D.C. 2021). Senator Lott stated that the amendment's "purpose" was "[t]o deter fraud and abuse by corporate executives"— in line with the Enron concern. 148 Cong. Rec. S6542 (daily ed. July 10, 2002). The new subsection "would enact stronger laws against document shredding. Current law prohibits obstruction of justice by a defendant acting alone, but only if a proceeding is pending and a subpoena has been issued for the evidence that has been destroyed or altered." *Id.* at S6545. "So this section would allow the Government to charge obstruction against individuals who acted alone, even if the tampering took place prior to the issuance of a grand jury subpoena. *Id.*

Then-Senator Joseph Biden referred to new subsection (c) as "making it a crime for document shredding," something he thought the pending bill already did. *Id.* at S6546; *see also id.* at S6550 (Senator Hatch noting that the Arthur Andersen prosecutors "had to prove that a person in the corporation corruptly persuaded

another to destroy or alter documents, and acted with the intent to obstruct an investigation." The new § 1512(c) would ensure "that individuals acting alone would be liable for such criminal acts.").

This legislative history suggests that, in the wake of the Enron scandal, Congress was faced with a very specific loophole. Then-existing criminal statutes made it illegal to cause or induce another person to destroy documents, but did not make it illegal to do so by oneself. "Congress closed that loop by passing subsection (c), and nothing in the legislative history suggests a broader purpose than that." *Miller*, at * 14.

Mr. Rodriguez submits that the statute in question is susceptible to at least three possible interpretations. When criminal penalties and constitutional rights are at issue, it is the narrowest interpretation that controls. *United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 95 (1820) ("The rule that penal laws are to be construed strictly, is perhaps not much less old than construction itself.").[10] Under that interpretation, the Indictment's alleged conduct does not violate the statute because it fails to allege he intentionally affected the integrity or availability of evidence relevant to an official proceeding.

---

[10] "It is founded on the tenderness of the law for the rights of individuals; and on the plain principle that the power of punishment is vested in the legislative, not in the judicial department. It is the legislature, not the Court, which is to define a crime, and ordain its punishment." *Wheat*, 18 U.S. at 95.

37

### 3.   Mr. Rodriguez's Alleged Conduct Falls Outside the Scope of § 1512(c)(2).

Given that § 1512(c)(2) can, at the most, only be read to apply to conduct that, like the conduct described in § 1512(c)(1), can affect an official proceeding by impacting the state and content of what it might consider in making its deliberations, Count Two of the Indictment, which charges Mr. Rodriguez with a violation of § 1512(c)(2), must be dismissed for failure to state an offense. *See* Fed. R. Crim. P. 12(b)(3)(B)(v). (*See also* ECF No. 65 at 14 (Count Two of the Indictment).)

But none of the alleged conduct described in Count Two, or even the Indictment as a whole, is conduct that could have affected the specified official proceeding by impacting the state and content of what it might have considered in making its deliberations. While the conduct might have disrupted the official proceeding and hindered its operation, conduct along those lines is nevertheless beyond § 1512(c)(2)'s ambit.

Under a Rule 12(b)(3)(B), motion for failure to state an offense, the ultimate question the court must answer is "whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed." *United States v. Bowdoin*, 770 F. Supp. 2d 142, 146 (D.D.C. 2011). Here, even after assuming the government's allegations are true, Mr. Rodriguez did not violate § 1512(c)(2) as properly interpreted. Mr. Rodriguez respectfully requests this Court dismiss Count Two of the Indictment on this basis.

Moreover, the statute in question suffers from another infirmity of constitutional dimension—it is impermissibly vague.

**F.      Section 1512(c), as Applied to Counts Two and Three, is Impermissibly Vague if the Government's Broad Interpretation is Accepted and Because the Mens Rea Requirement of "Corruptly" Fails the *United States v. Poindexter*, 951 F.2d 369, 371 (D.C. Cir. 1991), Test.**

A criminal statute is unconstitutionally vague if it "fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *United States v. Bronstein*, 849 F.3d 1101, 1106 (D.C. Cir. 2017) (quoting *Johnson v. United States*, 576 U.S. 591, 595 (2015)); *accord Buckley v. Valeo*, 424 U.S. 1, 77 (1976) (explaining that criminal statute must "'provide adequate notice to a person of ordinary intelligence that his contemplated conduct is illegal'"). "[T]he touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259, 67 (1997).

"The void-for-vagueness doctrine . . . guarantees that ordinary people have 'fair notice' of the conduct a statute proscribes. And the doctrine guards against arbitrary or discriminatory law enforcement by insisting that a statute provide standards to govern the actions of police officers, prosecutors, juries and judges." *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018) (citing *Kolender v. Lawson*, 461 U.S. 352, 358 (1983)).

In addition, if the law at issue "interferes with the right of free speech or of association, a more stringent vagueness test [] appl[ies]." *Hoffman Estates v.*

*Flipside, Hoffman Estates*, 455 U.S. 489, 500 (1982) (citing *Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972)).

Vagueness challenges are either facial or as-applied.  "[T]he distinction between facial and as-applied challenges . . . goes to the breadth of the remedy employed by the Court, not what must be pleaded by the complaint."  *Edwards v. District of Columbia*, 755 F.3d 886, 1001 (D.C. Cir. 2014) (quoting *Citizens United v. FEC*, 558 U.S. 310, 331 (2010)).

Mr. Rodriguez's challenge falls into the "as applied" category.

> **1.   Mr. Rodriguez submits that if the government's broad interpretation of § 1512(c)(2) governs, the subsection is void for vagueness.**

Before the January 6, 2021 events, it does not appear that § 1512(c)(2) has ever been successfully used to prosecute a defendant for the obstruction of an "official proceeding" unrelated to the administration of justice, *i.e.*, a proceeding not charged with hearing evidence and making factual findings.  *Cf. United States v. Ermoian*, 752 F.3d 1165, 1168-69 (9th Cir. 2013) (disallowing the government's attempt to use the statute to prosecute someone for interference with an FBI investigation).  Nor is there sufficient notice that a person may be held criminally liable for interference with a proceeding that does not resemble a legal tribunal.

Accordingly, the government's interpretation of § 1512(c)(2) here is void-for -vagueness as applied to Mr. Rodriguez.  In this case, the void-for-vagueness doctrine's function of guarding against arbitrary or discriminatory law enforcement is worth elaborating.  As Justice Gorsuch explained in a *Sessions v. Dimaya* concurrence:

40

> Vague laws invite arbitrary power. Before the Revolution,
> the crime of treason in English law was so capaciously
> construed that the mere expression of disfavored opinions
> could invite transportation or death. The founders cited the
> crown's abuse of 'pretended' crimes . . .as one of their
> reasons for revolution. . . Today's vague laws may not be as
> invidious, but they can invite the exercise of arbitrary
> power all the same—by leaving the people in the dark
> about what the law demands and allowing prosecutors and
> courts to make it up.

*Sessions v. Dimaya*, 138 S. Ct. 1204, 1223-24 (2018).

Concern about vagueness-enabled arbitrary enforcement is present here. It takes two forms. At a general level, the government's enforcement of § 1512(c)(2) against Mr. Rodriguez is arbitrary and impermissible vague because, prior to January 6, it had never prosecuted a violation of that statute by alleging obstruction of a congressional proceeding that was not held pursuant to Congress's investigatory power. Therefore, Mr. Rodriguez could not have reasonably anticipated he would be subject to prosecution.

*United States v. Johnson*, 576 U.S. 591 (2015), supports the contention that 18 U.S.C. § 1512(c) violates due process because it is vague and does not provide sufficient notices as to the conduct it punishes. In particular, Count Two's reliance on 1512(c)(2)'s residual clause is problematic.

In *Johnson*, the Supreme Court considered the constitutionality of residual clause of the Armed Career Criminal Act, which enhanced a defendant's sentence if the defendant had a conviction for a prior felony that "otherwise involved conduct that presented a serious potential risk of physical injury to another." *Johnson,* 576 U.S. at 591. In finding a due process violation, the Supreme Court explained that the

41

residual clause required a "wide-ranging inquiry" in each case as to what could potentially cause injury in each set of circumstances. *Johnson,* 576 U.S. at 597.

Observing that the ambiguity of the residual clause resulted in disparate interpretations, the Supreme Court acknowledged that the "failure of persistent efforts to establish a standard can provide evidence of vagueness." *Id.* at 598.

As in *Johnson*, the residual clause of §1512(c)(2) is constitutionally vague/ Its awkward phrasing requiring courts to speculate and line-draw when distinguishing "official proceedings" from mere ancillary proceedings or investigations. Courts have generally interpreted "official proceeding" to mean something more formal than an investigation, but this has not been clearly established. This renders the statute impermissibly vague.

Also implicated are Mr. Rodriguez's First Amendment rights to petition the government for a redress of grievances. U.S. Const. amend I; *see also Hoffman Estates v. Flipside*, 455 U.S. 489, 500 (1982) (applying stricter scrutiny of vague statutes in the context of activities protected by the First Amendment). The line between protest and riot can be difficult to discern. This observation is amplified by the inherent ambiguity in the statute as it pertains to what constitutes "official proceedings" and what conduct is actually proscribed by § 1512(c)(2).

The government's expansive interpretation of the statute has rendered it vulnerable to a due process vagueness challenge. But that isn't the statute's only due process infirmity.

### 2.   The government's interpretation of "corruptly" fails this Circuit's *Poindexter* test.

The Indictment contends that Mr. Rodriguez's alleged obstruction of Congress on January 6 was aimed at stopping or delaying the Electoral College vote count.  (*See* ECF No. 65 at 14.)   To prove this charge, the government must establish that Mr. Rodriguez's conduct was "corrupt.  *See* 18 U.S.C. § 1512(c) (2018).  In this context, the government's theory renders the statute void-for-vagueness as § 1512(c)(2) provides no notice of that interpretation.  This raises the specter of arbitrary and discriminatory prosecution.

In *United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991), a former national security advisor was charged under § 1505 for obstructing a congressional investigation into the Iran/Contra Affair.  *See Poindexter*, 951 F.2d at 371.  The defendant's obstruction consisted of lying to or misleading Members of the House and Senate Intelligence Committees about U.S. shipments of missiles to Iran.  *See id.* at 372.  The relevant passage of § 1505 provided:

> Whoever corruptly influences, obstructs, or impedes or endeavors to influence, obstruct or impede the due and proper exercise of the power of inquiry under which any inquiry or investigation is being had by either House, or any committee of either House . . .shall be [punished].

The court held that Mr. Poindexter's lying to Congress, while a violation of § 1001, was not an obstruction offense under § 1505.  There are two forms of vagueness existed in the adverb "corruptly."  First, the court observed that the verb "corrupt" "may be used transitively ('A corrupts B,' i.e., 'A causes B to act corruptly') or intransitively ('A corrupts,' i.e., 'A becomes corrupt, depraved, impure, etc.')."

*Poindexter*, 951 F.2d at 379.  Section § 1505's adverb "corruptly" could take on either a transitive or intransitive meaning.  *See id*.

The court decided that § 1505 "favor[ed] the transitive reading."  *Id.*  To "read 'corruptly' in an intransitive sense as "wickedly" or "immorally" would appear to render the other methods of violating the statute superfluous: surely the use of force to influence a congressional inquiry would always be "wicked" or at least "immoral." *Id.*  Regardless, "[e]ither a transitive or an intransitive interpretation would still be unconstitutionally vague, however, if more specific content is not given to the word "corruptly." *Id.*  "[R]eading 'corruptly' to prohibit one from influencing another to act 'immorally' or 'improperly' provides no more guidance than does reading it to prohibit one from acting 'immorally' or 'improperly' oneself." *Id.*

Accordingly, to avoid unconstitutional vagueness, the court construed § 1505 "to include only 'corrupting' another person by influencing him to violate his legal duty." *Id*. The court further found that even that definition of "corruptly" may suffer from unconstitutional vagueness where the defendant's purpose is not "to obtain an improper advantage for himself or someone else. . ." *Id.* at 385.

The court gave this example of activity the adverb "corruptly" may not cover without vagueness problems:

> Someone who influences another to violate his legal duty [but] to cause the enactment of legislation that would afford no particular benefit to him or anyone connected to him. Or, as the Chief Judge instanced at the oral argument of this case, there "would be some purposes that would be corrupt and some that wouldn't be . . . Suppose the [defendant acted] to protect the historical reputation of some historical figure that has been dead for 20 years and

44

> he decides that he doesn't want to mar that person's reputation.

*Poindexter*, 951 F.2d at 386.

After an assessment of the legislative history and judicial interpretation, the court concluded that neither of those inquiries provided defendants with the constitutionally required notice that the statute requires, and found the term vague as applied to the defendant making false statements.  *See id.* at 406.

Following *Poindexter*, Congress amended § 1515 to clarify the corruption requirement.  The statute now reads: "***As used in Section 1505***, the term 'corruptly' means acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering or destroying a document or other information." § 1515(b) (emphasis added).  Congress did not, however, amend § 1515 to define "corruptly" as used in § 1512.  Hence, the problems identified in *Poindexter* still apply.

In addition, the phrase "improper purpose" was held unconstitutionally vague in *Poindexter*.  951 F.2d at 379 ("Words like 'depraved,' 'evil,' 'immoral,' 'wicked,' and 'improper' are no more specific—indeed they may be less specific—than 'corrupt.'").  Here, the Indictment's construction of § 1512(c)'s adverb "corruptly" fails this Circuit's *Poindexter* test.  It does not allege that Mr. Rodriguez obstructed the January 6 joint session "to obtain an improper advantage for himself or someone else. . ." *Poindexter*, 951 F.2d at 386.

Instead, it contends he allegedly obstructed the session in support of the sincerely held political belief that the 2020 presidential election was not fairly

45

decided.  Such an interpretation of § 1512(c) is unconstitutionally vague because it leaves to judges and prosecutors to decide which sincerely held political beliefs are to be criminalized on an ad hoc basis.  *Cf. Dimaya*, 138 S. Ct. at 1223-24.

Mr. Rodriguez realizes the D.C. Circuit later held that the word "corruptly" was not vague as applied.  *See United States v. Morrison*, 98 F.3d 619, 630 (D.C. Cir. 1996).  In *Morrison*, the defendant tried to influence a witness's testimony and "exhorted her to violate her legal duty to testify truthfully in court."  *Id.*  These fell squarely within what the Poindexter Court was clearly unlawful.  Influencing another to "violate their legal duty" was not vague because "it would both take account of the context in which the term 'corruptly' appears and avoid the vagueness inherent in words like 'immorally.'"  *Poindexter*, 951 F.2d at 379.

*Morrison* was not faced with the ambiguity present here.  "Corruptly" in the context of §1512(c), specifically as charged in this case, is impermissibly vague because "influence" alone is another vague word and means something different than "influencing another to violate their legal duty" as described in §1515.

Accordingly, Counts Two and Three should be dismissed they both rest on an unconstitutionally vague interpretation of "corruptly."

## II.   CONCLUSION

For all of the reasons articulated here, Mr. Rodriguez respectfully requests this Court dismiss Counts Two and Three of the pending Indictment under Federal Rule of Criminal Procedure 12(b)(3)(b)(v) for failure to state an offense.  If the Court rejects Mr. Rodriguez's interpretation of 18 U.S.C. § 1512(c)(2), this Court should nonetheless dismiss both those charges as unconstitutionally vague.

**Dated:** May 27, 2022.

Respectfully submitted,

RENE L. VALLADARES
Federal Public Defender

*/s/ Rebecca A. Levy*
*/s/ Margaret W. Lambrose*
By: *  /s/ Katherine Tanaka*
REBECCA A. LEVY
MARGARET W. LAMBROSE
KATHERINE TANAKA
Assistant Federal Public Defenders

Attorneys for Daniel Rodriguez

47

### III.    Certificate of Electronic Service

The undersigned hereby certifies that she is an employee of the Federal

Public Defender for the District of Nevada and is a person of such age and

discretion as to be competent to serve papers.

That on May 27, 2022, she served an electronic copy of the above and

foregoing MOTION TO DISMISS COUNT TWO OF THE REDACTED

INDICMENT (ECF NO. 65) by electronic service (ECF) to the person named below:


CHANNING D. PHILLIPS
United States Attorney
Kimberly L. Paschall
Risa Berkower
Tara Ravindra
Assistant United States Attorneys
555 4th Street, NW
Washington, DC 20530


*/s/ Cecilia Valencia*
Employee of the Federal Public
Defender