**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>DANIEL RODRIGUEZ,<br><br>        Defendant. | Case No. 1:21-cr-00246-ABJ-1 |

**REPLY TO GOVERNMENT'S OPPOSITION (ECF No. 113) TO RODRIGUEZ'S MOTION TO DISMISS COUNTS TWO AND THREE OF THE REDACTED INDICMENT (ECF No. 108)**

I.  **Introduction**

On May 27, 2022, Rodriguez filed a timely motion to dismiss counts Two and Three of the Indictment.  (*See* ECF No. 108; *see also* ECF No 65 (operative Indictment).)  The focus of the Motion was on Count Two which it entitled: "Obstruction of an Official Proceeding and Aiding and Abetting" under 18 U.S.C. § 1512(c)(2).  It alleges that Daniel Rodriguez, Edward Badalian, and an unnamed codefendant and conspirator did, on or about January 6, 2021, within the District of Columbia, "attempted to, and did, ***corruptly*** obstruct, influence and impede an ***official proceeding"*** in violation of 18 U.S.C. §§ 1512(c)(2) and 2.[1]  (ECF No. 65 at 14 (emphasis added).)[2]

The statute in question is entitled: "Tampering with a witness, victim, or an informant."  It reads:

> (c) Whoever ***corruptly***—
>
> (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
> (2) ***otherwise*** obstructs, influences, or impedes any ***official proceeding***, or attempts to do so,
>
> shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512(c) (2018) (emphasis added).

---

[1] 18 U.S.C. § 2 describes aiding and abetting.

[2] All records documents herein reference the page numbers generated by the ECF system.

Mr. Rodriguez's Motion to Dismiss focuses on the statutory terms "corruptly," "official proceeding," and "otherwise."  He contends that the January 6, 2021 Congressional proceeding the government alleges Mr. Rodriguez obstructed does not constitute an official proceeding.  (*See* ECF No. 108 [hereinafter Order] at 18-25.)  Section 1512(c)(2) is informed by the document and evidentiary material focus of the preceding subsection, § 1512(c)(1).  It does not reach, as the government alleges, the general disruptive conduct alleged in the Indictment.  (*See id.* at 25-45.)  Finally, relying primarily on *United States v. Poindexter*, 951 F.2d 369 (D.C. Cir 1991), Mr. Rodriguez contends the meaning of the *mens rea* component—"corruptly"— is impermissibly vague.  (*See id.* at 45-52.)

The Indictment's defects regarding the terms "corruptly" and "official proceeding also infect Count Three which is entitled "Tampering with Documents or Proceedings", in violation of 18 U.S.C. § 1951(c)(1).  It alleges that between January 6, 2021, and on or about January 19, 2021, Mr. Rodriguez and codefendants "did ***corruptly*** alter, destroy, mutilate, and conceal a record, document, and other object, and attempted to do so, with the intent to impair its integrity and availability for use in an **official proceeding"** in violation of 18 U.S.C. § 1512(c)(1).  (*Id.* at 15 (emphasis added).)  (*See, e.g., id.* at 8-9.)

The government filed a timely opposition.

This Reply addresses the government's arguments in turn.  In the final analysis, particularly regarding the scope of § 1512(c)(2) as cabined by the otherwise clause, this Court should reject the government's contentions and adopt the

thorough and cogent reasoning and analysis set forth in , *United States v. Miller*, 2022 WL 823070 (D.D.C. Mar. 7, 2022).  *See also* ECF No. 86 in *United States v. Miller*, 1:21-cr-00119 (CJN) (May 27, 2022 Order denying the government's request for reconsideration).)

## II.  Argument

### A.  The January 6, 2021 Congressional Proceeding Lacked Sufficient Administration of Justice Aspects to Constitute an "Official Proceeding."

Both the language of the Indictment, and the terms of statutes, explicitly require the charged acts found in Counts Two and Three must be related to an "official proceeding."  *See* 18 U.S.C. § 1512(c)(1)-(2) (2018).[3]

The putative "proceeding" at issue is a Congressional hearing to count Electoral College votes from the 2020 presidential election pursuant to the Twelfth Amendment and 3 U.S.C. § 15.  That event was mostly a formality that lacks the administration of justice framework that requires the event be considered an official proceeding.

As explained in his Motion, the operative definition of "official proceeding" is found at 18 U.S.C. § 1515(a)(1)(B).  (*See* Motion at 21-22.)  That section, as the government recognized, does not clear away the ambiguity because it largely uses the terms "proceeding before" various entities without precisely defining the term

---

[3] (*See also* ECF No. 65 at 14-15 (Indictment).)

"proceeding." (*See* Opposition, at 6 (citing *United States v. Ermoian*, 752 F.3d 1165, 1169 (9th Cir. 2013)).)

The government, while recognizing the importance of *Ermoian*, makes the mistake that case cautioned against. (*See* Opposition at 12 (advocating for "ordinary parlance").) Official proceeding should be given a legal, rather than lay construct. *See Ermoian*, 752 F.3d at 1170 ("Several aspects of the definition for "official proceeding" suggest that the legal—rather than the lay—understanding of term "proceeding" is implicated in the statute."). The government's interpretation would lead results such as, *e.g.,* a prosecution for demonstrating at a Congressional awards ceremony. *See* 2 U.S.C. § 801 (2018) (establishing the Congressional Award Board).)

Mr. Rodriguez contends both the structure of § 1515(a) and its plain terms require that the proceeding in question be judicial in nature.

Even if the legal definition governs, the government, stressing the formality and solemnness of the January 6, 2021 Electoral College certification proceeding, maintains it meets the legal definition. (*See* Opposition at 6-8.) Mr. Rodriguez recognizes this was a formal, important proceeding; albeit largely ministerial in function. This solemnity does not equate with a proceeding related to the administration of justice. Such a proceeding involves legal and fact-finding investigations. Proceedings where evidence is gathered. Section 1512 is designed to protect compromising those types of proceedings.

4

As described in his Motion, this assertion is supported by: 1) the grammatical context of the "official proceeding" definition found in § 1515; 2) the broader statutory context; 3) case law such as *Ermoian*, 752 F.3d at 1171, and *United States v. Ramos*, 537 F.3d 439, 462-63 (5th Cir. 2008),[4] which require the proceedings be akin to formal legal proceedings; and 4) case law that considered § 1512 in various contexts related to the administration of justice.  *See, e.g., Arthur Anderson, LLP v. United States*, 544 U.S. 696, 708 (2005) (interpreting § 1512(c) as requiring knowledge that a defendant's actions will affect a "judicial proceeding); *accord United States v. Burge*, 711 F.3d 803, 809 (7th Cir. 2013) ("the phrase 'before a judge or court' in § 1515(a)(1)(A) only describes which **types** of proceedings can be considered "official," not where the criminal obstruction must occur.  Obstruction of justice occurs when a defendant acts to impede the types of proceedings that take place before judges or grand juries."); *see also United States v. Young*, 916 F.3d 368, 384 (4th Cir. 2019) (agreeing with the reasoning presented in *Ermonian* and *Ramos*).[5]

---

[4] *Ramos* held that "an internal informal investigation, in its most preliminary stages, of employee violations of an agency policy is not an 'official proceeding' within the meaning of § 1512(c)."  *See* 537 F.3d at 463.

[5] The Department of Justice agrees with Mr. Rodriguez's interpretation as reflected in their own sources.  *See* Department of Justice, *Criminal Resources Manual* § 1729 (explaining that § 1512 "proscribes conduct intended to illegitimately affect the presentation of evidence in Federal proceedings or the communication of information to Federal law

5

The cases the government relies upon prove Mr. Rodriguez's point. For instance, *United States v. Perez*, 575 F.3d 164 (2d Cir. 2009),[6] found that a federal Bureau of Prisons fact-finding inquiry required by regulations to occur whenever there is a use of force incident constituted an "official proceeding." *See Perez*, 575 F.3d at 168 (explaining BOP procedures required these proceedings in the aftermath of every use of force by BOP staff upon an inmate (citing 28 C.F.R. §§ 0.96(o); 552.22(j), 552.27)).) Contrary to its representations here, the government contended that the other proceedings covered by subsection 1515(a)(1), particularly court and congressional proceedings, indicate that an "official proceeding," for purposes of subsection 1512(c)(2), is one in which a witness is directed to appear and testifies under oath. *See id.*

The Second Circuit found BOP use-of-force proceedings qualified as "official proceedings" because they were adjudicative in nature. The Use of Force Program Statement, which was in evidence, contemplates more than a preliminary investigation. *See id.* at 169. It sets forth a detailed process of review and decision-making. *Id.* "After a Use of Force Report is prepared, a review panel of senior officials, including the Warden and the Associate Warden, is convened and required "to determine if policy was adhered [to], and complete the standard After–Action

---

enforcement officials"), *available at* https://www.justice.gov/archives/jm/criminal-resource-manual-1729-protection-government-processes-tampering-victims-witnesses-or (last accessed June 16, 2022).

[6] Cited and relied upon on pages 7-8 of the Opposition.

Report (BP–E586), indicating the nature of the review and findings." *Id*. "The panel 'should also decide if the matter requires further investigation,' in which event the matter may be referred for higher level review." *Id.*

"Because the review panel must 'determine' if there has been a violation of BOP policy, must make 'findings,' and may 'decide' to refer the matter to senior departmental authorities, its work is sufficiently formal to satisfy the 'official proceeding' element of subsection 1512(c)(1)." *Id.*

This is the point made by Mr. Rodriguez. To constitute an "official proceeding" the event in question must include, at least in part, an adjudicative, administration of justice component. Unlike the quasi-judicial proceeding at issue in *Perez*, the January 6, 2021, hearing lacks these features.

Similarly, another case relied upon by the government, *United States v. Kelley*, 36 F.3d 1118 (D.C. Cir. 1994), found that a formal investigation conducted by the Agency for International Development (AID) qualified as a "official proceeding" for purposes of 18 U.S.C. § 1505. (*See* Opposition at 7.) In so holding, the court emphasized the Inspector General's office of AID is charged with the duty of supervising investigations relating to the proper operation of the agency. *See Kelley*, 36 F.3d at 1127 (citing 5 U.S.C. App. 3 § 2). "In addition, the Inspector General is empowered to issue subpoenas and to compel sworn testimony in conjunction with an investigation of agency activities." *Id*. "Accordingly, the Inspector General's inquiries, albeit preliminary, constitute a 'proceeding' within the meaning of § 1505." *Id.*

7

Once again, the type of proceedings that qualify as "official proceedings" is determined by their function and ability to conduct adjudicative functions. To engage in fact-finding and determinations that are within the rubric of administering justice. The January 6, 2021 proceeding charged in the Indictment lacks these features and therefore does not constitute and "official proceeding" for the purposes of 18 U.S.C. § 1512(c).

**B.     Count Two Fails to State an Offense Because the Conduct it Charges is Beyond the Scope of § 1512(c)(2)'s Focus on Obstruction Involving Documents and Other Items of Evidentiary Value.**

Mr. Rodriguez's second challenge is broader—§ 1512(c)(2) does not criminalize his alleged actions on January 6, 2021. He contends that a proper reading of section 1512(c)(2) prohibits only conduct intended to generate false testimony, impede the testimony of witnesses, or impair the collection of evidence in some fashion. The obstructive conduct requires some nexus to tangible evidence.

The allegations in the Indictment do not allege this type of conduct. Therefore, Count Two of the Indictment fails to state a viable offense and must be dismissed.

The government counters that its interpretation of § 1512(c)(2) falls broadly within its scope and that Judge Nichols' ruling to the contrary in *United States v. Miller*, 2022 WL 823070 (D.C.C. Mar. 7, 2022), is incorrect. (*See* Opposition, at 16-28.) The government expends a lot of energy arguing that *Miller* was wrongly decided. The government made the same arguments in its Motion for Reconsideration of Judge Nichols' decision. (*See* ECF No. 75 in *United States v.*

8

*Miller*, 1:21-cr-00119 (CJN).)  Judge Nichols rejected those contentions in his Order denying that Motion.  *See* ECF No. 86 in *United States v. Miller*, 1:21-cr-00119 (CJN) [hereinafter *Miller* Reconsideration Order].

Mr. Rodriguez concurs with and adopts Judge Nichols' finding that § 1512(c)(2), which can be, and has been, construed many ways, is fatally ambiguous.  This ambiguity triggers application of the rule of lenity which cautions toward a limiting construction of a penal statute.

The rule of lenity provides that, "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Cleveland v. United States*, 531 U.S. 12, 25 (2000) (quoting *Rewis v. United States*, 401 U.S. 808, 812 (1971)).  The government is correct that the rule of lenity only applies when other means of interpretation have been exhausted.  *See Moskal v. United States*, 498 U.S. 103, 108 (1990)); *accord Barber v. Thomas*, 560 U.S. 474, 488 (2010) ("[T]he rule of lenity only applies if, after considering text, structure, history, and purpose, there remains a 'grievous ambiguity or uncertainty in the statute,' such that the Court must simply 'guess as to what Congress intended.") (citations omitted)).

The government contends, correctly, that what is required is a "grievous ambiguity." (Opposition at 20 (citing *Barber*, 560 U.S. 488).)  This is a high standard that is met in the case at bar.  As Judge Nichols' decision amply demonstrates, there are at least three discrete ways of interpreting § 1512(c)(2) and the import of its use of the term "otherwise." *See Miller*, at *6-11.  Of the three interpretations, the most plausible, and limited, is the interpretation that

9

§ 1512(c)(2) is limited by § 1512(c)(1). Subsection (c)(2) operates as a residual clause or catchall for the prohibition contained in subsection (c)(1). *See id.* at *9. Under this reading, the word "otherwise" links the two subsections but the link or commonality is found in the conduct prescribed by subsection (c)(1). *Id.*

The *Miller* decision resorts to all applicable statutory canons of construction, the statute's development history, and its legislative history, before reaching the conclusion that the limiting interpretation must control as the statute is grievously ambiguous. *See id.* at *11-16.

On rehearing, Judge Nichols found no defect- in its analysis. *See Miller* Reconsideration Order at 1-3. Nor was the court swayed by the same argument the government primarily relies on here—other district courts have adopted the government's interpretation. In fact, Judge Nichols surveyed that case law and correctly determined that each court appears to reach its conclusion for different reasons and applies different interpretations to § 1512(c)(2). *See id.* at 2 n.1.

For instance, some decisions conclude that § 1512(c)(1) acts as a carve-out from § 1512(c)(2) broad scope. *See, e.g., United States v. Reffit*, 2022 WL 1404247, at *8 (D.D.C. May 4, 2022). Others interpret "otherwise" to require a link between the subsections that is tethered together only by the requirement that the activity impact official proceedings. *See United States v. Montgomery*, 2021 WL 6124951, at *12 (D.D.C. Dec. 28, 2021). Mr. Rodriguez recognizes that contrasting judicial decisions alone do not prove the existence of statutory ambiguity. *See Moskal*, 498 U.S. at 108 ("Nor have we deemed a division of judicial authority automatically

sufficient to trigger lenity." (citing *United States v. Rodgers,* 466 U.S. 475, 484 (1984)).) Yet here, given the uncertainty of the statutory proscription, and that precedent such as *Begay v. United States,* 553 U.S. 137 (2008), suggest the term "otherwise" should be read as a word of limitation, the fact that other district courts have been inconsistent in assigning meaning to § 1512(c)(2) suggests the statute is fatally ambiguous.

Further buttressing this contention is the fact that the previous Attorney General Barr agrees with Mr. Rodriguez's interpretation. *See* Memorandum from William Barr to Deputy Attorney General Rob Rosenstein and Assistant Attorney General Engel of June 8, 2018 [hereinafter Barr Memo]. [7] That, once again, a reasoned legal mind reaches a different interpretation of § 1512(c)(2) than the government demonstrates the ambiguity inherent in the statute.

Attorney General Barr relied on the same cases emphasized in Mr. Rodriguez's Motion—*Begay v. United States*, 553 U.S. 137 (2008), and *Yates v. United States*, 574 U.S. 528 (2015). He explained:

> I think it is clear that the use of the word "otherwise" in the residual clause [of section 1512(c)(2)] expressly links the clause to the forms of obstruction specifically defined elsewhere in the provision. Unless it serves that purpose, the word "otherwise" does no work at all and is mere surplusage. [An] interpretation of the residual clause as covering any and all acts that influence a proceeding read the work "otherwise" out of the statute altogether. But any

---

[7] Available at: https://s3.documentcloud.org/documents/5638848/June-2018-Barr-Memo-to-DOJ-Muellers-Obstruction.pdf (last accessed June 16, 2022).

11

> proper interpretation of the clause must give effect to the work "otherwise"; it must do some work.

Memo at 4.

The Memo discusses *Begay* and *Yates* and how those cases reach the same conclusion as Judge Nichols—"specific examples enumerated prior to the residual clause are typically read as refining or limiting in some way the broader catch-all term used in the residual clause." *Id*.

> As the Supreme Court has suggested, *Begay v. United States*, 553 U.S. 137, 142-143 (2008), when Congress enumerates various specific acts constituting a crime and then follows that enumeration with a residual clause, introduced with the words "or otherwise," then the more general action referred to immediately after the word "otherwise" is most naturally understood to cover acts that cause a similar kind of result as the preceding listed examples, but cause those results in a different manner.

*Id*.

Under the statute's "plain language and structure" the most "natural and plausible" reading of § 1512(c)(2) is that it covers acts that have the same kind of obstructive impact as the listed forms in § 1512(c)(1). *Id*. Subsection 1512(c)(2) encompasses conduct "that is directed at undermining a proceeding's truth-finding function through actions impairing the integrity and availability of evidence." *Id*. at 4-5.

Caselaw reflects this application of § 1512(c)(2) as only applying to "attempts to interfere with, or render false, evidence that would become available to a proceeding." *Id*. at 5 (citing *United States v. Volpendesto*, 746 F.3d 273 (7th Cir. 2014) (concerning soliciting tips from corrupt cops to evade surveillance); *United*

12

*States v. Phillips*, 583 F.3d 1261 (10th Cir. 2009) (involving disclosing the identity of an undercover agent to the subject of a grand jury drug investigation).[8]

The government dismisses the impact of the legislative history of § 1512(c). (*See* Opposition at 13.) Attorney General Barr did not. That legislative history reveals the section "was expressly designed to 'clarify' and close loopholes in the existing criminal laws relating to the destruction or fabrication of evidence and the preservation of financial and audit records." (Memo, at 5-6.) "The legislative history thus confirms that § 1512(c) was not intended as a sweeping provision supplanting wide swaths of obstruction law, but rather as a targeted gap-filler designed to strengthen prohibition on the impairment of evidence." (*Id.* at 6.)

Moreover, former Attorney General agrees with Mr. Rodriguez that interpreting § 1512(c)(2)'s residual clause broadly would render superfluous virtually every other provision of Title 73. Reading "the residual clause as an all-encompassing proscription cannot be reconciled either with the other subsection of § 1512, or with the other obstruction provision in Title 18 that must be read *in pari passu* with those in § 1512." (*Id.* at 5.)

---

[8] *See also United States v. Carston*, 560 F.3d 566, 584 (6th Cir. 2009) (concerning false testimony to a grand jury); *United States v. Jefferson*, 751 F.3d 314, 321 (5th Cir. 2014) (involving false statement in a preliminary hearing); *United States v. Lucas*, 499 F.3d 769, 780-81 (8th Cir. 2007) (attempting to convince others to proffer false claims of ownership of a firearm to prevent conviction); *United States v. Mintmire*, 507 F.3d 1273, 1290 (11th Cir. 2007) (attempting to "orchestrate" grand jury testimony); *United States v. Pugh*, 945 F.3d 9, 28 (2d Cir. 2019) (concerning the destruction of evidence involving USB drives and data).

13

If this Court were to interpret § 1512(c)(2) as broadly as the government espouses, it would subsume virtually all other obstruction provisions of Title 18. (*See id*. at 5.) This violates the canon against surplusage which "is strongest when an interpretation would render superfluous another part of the statutory scheme." *Marx v. General Revenue Corp.*, 568 U.S. 371, 386 (2013).

In sum, employment of canons of construction, statutory history and structure, and legislative history all reveal § 1512(c)(2) to be grievously ambiguous. Given this, the most limiting construction of subsection applies. It must be read *in pari materia* with § 1512(c)(1). It applies only to obstructive behavior directed toward documents or other tangible items of evidentiary value. This construction is not only required by the rule of lenity, it enjoys the advantage of being the most natural and plausible interpretation of the subsection.

### C. The *Mens Rea* Requirement of "Corruptly" is Unconstitutionally Vague Under the Government's Construction of the Statute.

Mr. Rodriguez's motion contends that the government's interpretation of § 1512(c)(2) is void-for -vagueness as applied to Mr. Rodriguez and that the government's interpretation of "corruptly" fails this Circuit's *United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991), test.

The government disagrees, contending Mr. Rodriguez had fair notice that his actions were punishable under § 1512(c)(2). (*See* Opposition at 31-34.)

In order to comply with due process, a statute must give fair warning of the prohibited conduct. *See Bouie v. City of Columbia*, 378 U.S. 347, 351 (1964); *accord Johnson v. United States,* 576 U.S. 347, 351 (1964) (explaining a statute is

14

unconstitutionally vague if "it fails to give ordinary fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement").[9]

It is problematic to apply the term "corruptly" to Mr. Rodriguez's alleged conduct. It is true that the term is defined in 18 U.S.C. § 1515(b) as "acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying or other information." However, that definition is only applicable to § 1505.[10] *See* § 1515(b). Accordingly, this Court must look elsewhere for the operative definition. That journey starts with *United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991).

Mr. Rodriguez previously described that case in some detail. (*See* Opposition at 49-51.) In essence, it found that the term "corruptly" was vague on its face. "[I]n the absence of some narrowing gloss, people must guess at its meaning and differ as to its application.'" *Poindexter*, 951 F.2d at 378 (quoting, without citation, *Connally*

---

[9] The government claims that this Court should disregard *Begay* because *Johnson* found its analysis of the Armed Career Criminal Act failed to bring clarity to that statute's residual clause. (*See* Opposition at 26; *see also* Motion, at 41-42 (discussing *Johnson*).) This argument falls short. *Johnson*, if anything, proves Mr. Rodriguez's point that § 1512(c)(2)'s residual clause is ambiguous and must, under the rule of lenity and doctrine of constitutional avoidance, be given the narrowest construction possible. *See also Clark v. Martinez,* 543 U.S. 371, 381 (2005) (explaining that the doctrine of constitutional avoidance "is a tool for choosing between competing plausible interpretations of a statutory text, resting on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts").

[10] Additionally, if the government is correct that the § 1515 definition applies, this enhances Mr. Rodriguez's assertion that § 1512(c)(2) only applies to evidentiary materials.

*v. General Construction Company*, 269 U.S. 385, 391 (1926)). "Corruptly" must have some meaning or the statute could be employed in a manner that was contrary to legislative intent and could lead to absurd results. *See id*. at 377-78.

Contrary to the government's assertions, the same problems exist in the instant prosecution. (*Compare* Opposition at 31-33.) In Count Two, the government accuses Mr. Rodriguez of corruptly obstructing, influencing, and impeding and official proceeding by, it is assumed, entering and remaining in the U.S. Capitol without authority and then engaging in acts of civil disobedience and disruptive, violent, conduct. (*See* ECF No. 65 at 14.)

As in *Poindexter*, in the absence of "some narrowing gloss," Mr. Rodriguez must guess as to the meaning of "corruptly" given the broad interpretation the government has given § 1512(c)(2). Corruptly obstructing a proceeding before Congress does not necessarily encompass entering and remaining in the Capitol and engaging in disruptive conduct. Is riotous behavior inherently corrupt? While philosophers may debate the issue, a criminal defendant is not required to be so inquisitive. What is required is fair and concrete notice. *Cf. Kolender v. Lawson*, 461 U.S. 352, 357-58 (1983) ("a penal statute must define the criminal offense with sufficient definiteness that ordinary people can understand what conduct it prohibits"). It is not sufficiently apparent that Mr. Rodriguez's alleged conduct can be properly deemed "depraved," "evil," "immoral," or "improper." *Cf. Poindexter,* 951 F.2d at 379.

Allowing the government to proceed also raises the specter of arbitrary enforcement. As pointed out in *Poindexter*, insufficient narrowing of what conduct is corrupt would allow the statute to be applied to allow conduct that potentially influences Congressional proceedings. *See id.* at 377-78. An "absurd result that the Congress could not have intended in enacting the statute." *Id.* at 378.

Finally, the definition of "corruptly" could be limited to save its constitutionality. For example, the Ninth Circuit defines "corruptly" as acting "with the purpose of obstructing justice." *United States v. Bonds*, 784 F.3d 582, 583 (9th Cir. 2015) (citing *United States v. Rasheed*, 663 F.2d 843, 852 (9th Cir. 1981)). This is problematic for the government, however, because this non-vague interpretation substantiates Mr. Rodriguez's argument that a violation of § 1512(c)(2) must relate to a proceeding related to the administration of justice.

Given the Indictment does not allege Mr. Rodriguez acted with the purpose of obstructing justice attendant to an adjudicative proceeding, even with the proffered non-vague definition of "corruptly," Counts Two and Three of the Indictment must still be dismissed.

### III. CONCLUSION

For all of the reasons articulated here, Mr. Rodriguez respectfully requests this Court reject the contentions set forth in the government's Opposition and dismiss Counts Two and Three of the pending Indictment under Federal Rule of Criminal Procedure 12(b)(3)(b)(v) for failure to state an offense. If the Court rejects Mr. Rodriguez's interpretation of 18 U.S.C. § 1512(c)(2), this Court should nonetheless dismiss both those charges as unconstitutionally vague.

17

**Dated:** June 17, 2022.

          Respectfully submitted,

          RENE L. VALLADARES
          Federal Public Defender

          */s/Rebecca A. Levy*
          */s/Margaret W. Lambrose*
By:  */s/Katherine Tanaka*
          REBECCA A. LEVY
          MARGARET W. LAMBROSE
          KATHERINE TANAKA
          Assistant Federal Public Defenders

          Attorneys for **Daniel Rodriguez**

## IV. Certificate of Electronic Service

The undersigned hereby certifies that she is an employee of the Federal Public Defender for the District of Nevada and is a person of such age and discretion as to be competent to serve papers.

That on June 17, 2022, she served an electronic copy of the above and foregoing REPLY TO THE GOVERNMENT'S OPPOSITION (ECF NO. 113) TO MR. RODRIGUEZ'S MOTION TO DISMISS COUNTS TWO AND THREE OF THE REDACTED INDICMENT (ECF NO. 108) by electronic service (ECF) to the person named below:

> CHANNING D. PHILLIPS
> United States Attorney
> Kimberly L. Paschall
> Risa Berkower
> Tara Ravindra
> Assistant United States Attorneys
> 555 4th Street, NW
> Washington, DC 20530

*/s/ Cecilia Valencia*
Employee of the Federal Public Defender