# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 21-CR-246 (ABJ)** |
| | : | |
| **DANIEL RODRIGUEZ, et. al.,** | : | |
| | : | |
| **Defendants.** | : | |

## UNITED STATES'S MOTION *IN LIMINE* TO ADMIT STATEMENTS

The United States respectfully submits this memorandum of law in support of its motion *in limine* to admit categories of statements that the United States intends to use at trial. Through this motion, the United States presents its theories of admissibility for certain categories of statements that the United States intends to introduce at trial. The statements in the government's case-in-chief are often admissible under multiple, nonexclusive theories, including that the statements are (1) not hearsay because they are statements by a party opponent (including coconspirator statements), Fed. R. Evid. 801(d)(2); (2) not hearsay because they are either not assertions or not offered for the truth of the matter asserted or both, Fed. R. Evid. 801(c)(2); and/or (3) exceptions to the rule against hearsay because they are present sense impressions, excited utterances, or statements of the declarant's then existing state of mind (such as motive, intent, or plan), Fed. R. Evid. 803, or statements against interest, Fed. R. Evid. 804(b)(3).

To assist this Court in its analysis of the admissibility of evidence to be presented at trial, the United States begins with a summary of the charged conspiracy and the facts that the United States anticipates will be elicited at trial. Thereafter, this brief serves to demonstrate the relevance and admissibility of certain statements to the issues in controversy. Primary among those issues to be resolved by the jury are questions of intent. Specifically, the jury will be called upon to evaluate whether defendants and their coconspirators entered into an agreement to accomplish an

unlawful objective.  Defendants' own words, and those of their coconspirators, reveal (1) their agreement and intent to obstruct an official proceeding, namely Congress's certification of the Electoral College vote; (2) their motive for doing so; (3) their agreement and intent to corruptly alter, destroy, mutilate, and conceal a record, document, or other object to prevent evidence of their unlawful acts on January 6, 2021 from being used in an official proceeding, namely the grand jury investigation into the attack on the Capitol on January 6, 2021; (4) their motive for doing so; and (5) their efforts to encourage other individuals join in these agreements.  Thus, these statements are relevant and necessary for the jury to evaluate the defendants' intent.

## I.      INTRODUCTION AND BACKGROUND

On November 18, 2021, the grand jury returned a Superseding Indictment, which charges each defendant[1] with violations of 18 U.S.C. §§ 371 (conspiracy), 1512(c)(2) & 2 (obstruction of an official proceeding), 1512(c)(1) (tampering with documents or proceedings); 1752(a)(1)[2] (entering and remaining in a restricted building or grounds).  Defendant Rodriguez is also charged with violations of 18 U.S.C. §§ 231(a)(3) (obstruction of law enforcement during civil disorder), 111(a)(1) & (b) (assaulting, resisting, or impeding certain officers using a dangerous weapon), 641 (theft of government property), and 1361 (destruction of government property).

The evidence at trial will show that each of these crimes was motivated by defendants' refusal to accept the results of the 2020 Presidential Election.  In the fall of 2020, defendants created a Telegram group, titled "PATRIOTS[45] MAGA Gang" (the "Patriots 45 Chat"), to support then-President Trump and to discuss what they claimed they viewed as fraudulent election results.

---

[1] The Superseding Indictment charges three individuals, including one whose identity remains under seal.  Accordingly, this brief addresses only Defendant Rodriguez and Defendant Badalian.

[2] As part of this count, Defendant Rodriguez is also charged under 18 U.S.C. § 1752(b)(1)(A), reflecting his use of a deadly and dangerous weapon during the commission of this offense.

Defendants used the Patriots 45 Chat to advocate violence against perceived political enemies—including those political leaders prepared to certify the 2020 presidential election results for President Joe Biden.

On December 19, 2020, then-President Trump tweeted: "Statistically impossible to have lost the 2020 Election.  Big protest on January 6th.  Be there, will be wild."  The next day, Defendant Badalian put out a call to the Patriots 45 Chat: "ok so who is down to drive to DC on Jan 4?"  Defendants arranged to travel to Washington, D.C. for the January 6, 2021 riot, with several coconspirators.  Subsequent messages made defendants' violent and obstructive purpose clear.  Defendant Badalian stated on December 21, 2020, "we need to violently remove traitors and if they are in key positions rapidly replace them with able bodied Patriots."  On December 29, 2020, Defendant Rodriguez wrote, "Congress can hang.  I'll do it.  Please let us get these people dear God."

Defendants' conduct in advance of January 6, 2021 went beyond mere rhetoric. Defendants organized and hosted training activities to, in the words of Defendant Badalian, "practice[] manuevers and formations" and prepare for "a firefight with armed terrorists."  On January 5, 2021, Defendant Badalian clarified his purpose: "we dont want to fight antifa lol we want to arrest traitors."  Defendants' preparations also included the collection of weapons and tactical gear to bring to Washington, D.C., including a taser, pepper spray, a baseball bat, gas masks, and walkie talkies.  Defendants did, in fact, rent a car and, with others, travel to Washington D.C., leaving Los Angeles, California on January 3, 2021, and joining a caravan in Louisville, Kentucky on January 5, 2021.  On January 5, 2021, in anticipation of the riot to come, Defendant Rodriguez wrote to the Patriots 45 Chat, "There will be blood.  Welcome to the revolution."

On January 6, 2021, defendants attended a rally and speech by then-President Trump at the Ellipse in Washington, D.C.  After that rally, defendants walked down Pennsylvania Avenue to the U.S. Capitol building.  Defendants gathered with thousands of others at Lower West Terrance of the Capitol.  Defendant Rodriguez joined rioters trying to gain access to the building via the Lower West Terrace tunnel, pushing against police officers, and participating in a "heave ho" effort against law enforcement.  Defendant Rodriguez threw a flagpole at the police line in the doorway and deployed a fire extinguisher at officers.  At approximately 3:18 p.m. Metropolitan Police Department Officer M.F. was pulled out of the police line and into the crowd by another rioter.  Shortly thereafter, Defendant Rodriguez twice applied a taser to the back of Officer M.F.'s neck, causing Officer M.F. to lose consciousness.

Later, defendants, along with others, entered the U.S. Capitol building itself, through a broken window, and entered room ST2M.  While inside, Defendant Rodriguez attempted to break another window in another office—ST4M—by slamming a flagpole repeatedly into the window. Defendant Rodriguez led other rioters in searching for "intel" in another room—ST6M.  Defendant Rodriguez admitted his conduct that day on the Patriots 45 Chat, writing, "Omg I did so much fucking shit rn and got away tell you later" and "[t]azzzzed the fuck out of the blue."

Following these events, defendants sought to cover up their crimes.  After another rioter had shared information with the Internet-based show InfoWars, defendants, along with another coconspirator, visited that rioter, seeking to have her destroy evidence pertinent to the United States's investigation into the events on January 6, 2021.  The coconspirator with defendants wrote a note to the rioter, which read, "I WANT TO HELP YOU DELETE EVERYTHING AND TO TRANSFER THE FILES TO A SECURE HARD DRIVE."  Defendant Badalian told that rioter he did not want her using his name when discussing the events at the Capitol on January 6, 2021.

4

## II.     ARGUMENT

As the above factual summary demonstrates, defendants and their coconspirators made statements before, during, and after the attack on the Capitol relevant to their charged offenses. They made these statements to each other and to their followers.  They made them to inflame, to exhort, to recruit, to direct, and to congratulate.  In all cases, the statements are admissible at trial.

To begin, virtually all of the statements to be admitted were made by defendants and their coconspirators during and in furtherance of the conspiracy; as such, they are "not hearsay" pursuant to Rule 801(d)(2)(E).

At the same time, the statements will almost never be offered to prove the truth of any matter asserted—not to prove that the election was stolen, that members of Congress defendants disagreed with were traitors, nor that a revolution was justified.  Instead, they will be offered to show the intent and motivation of defendants and relevant third parties.  *See* Fed. R. Evid. 803(3).

In the rare instance where neither of the above factors applies—that is, where the United States offers a statement for the truth of the matter asserted that was not made by a coconspirator in furtherance of the conspiracy—the statements will be admissible pursuant to one or more hearsay exceptions.  *See* Fed. R. Evid. 803, 804.  As discussed below, such statements qualify variously as present sense impressions, excited utterances, statements of then-existing conditions, and/or statements against interest.

Before beginning the analysis, it bears noting that most of the statements identified below are admissible under multiple exclusions and exceptions; indeed, some are admissible under all of the identified theories and exceptions.  Therefore, an argument that a particular statement is not being offered for the truth of the matter asserted, for example, does not imply that the same statement is not also admissible as a coconspirator statement or under one of the hearsay

exceptions.  The examples and arguments below are nonexhaustive; they provide a framework for

resolving any challenges the defense may make to these or to other, similar statements that the

United States seeks to introduce at trial.[3]

### A.      Background: Relevance and Hearsay

Relevant evidence is admissible, Fed. R. Evid. 402, and evidence is relevant if "(a) it has

any tendency to make a fact more or less probable than it would be without the evidence; and (b)

the fact is of consequence in determining the action," Fed. R. Evid. 401.

Relevant evidence may be excluded under Rule 403 only if its "probative value is

*substantially* outweighed" by countervailing factors such as "unfair prejudice, confusing the

issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative

evidence." Fed. R. Evid. 403 (emphasis added).  This rule "establishes a high barrier to justify the

exclusion of relevant evidence, by requiring that its probative value must be 'substantially'

outweighed by considerations such as 'unfair' prejudice." *United States v. Lieu*, 963 F.3d 122,

128 (D.C. Cir. 2020).  "Rule 403 does not bar powerful, or even prejudicial evidence.  Instead, the

Rule focuses on the danger of *unfair* prejudice, and gives the court discretion to exclude evidence

only if that danger *substantially* outweighs the evidence's probative value." *United States v.*

*Pettiford*, 517 F.3d 584, 590 (D.C. Cir. 2008) (internal quotation marks and alterations omitted)

(quoting *United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C. Cir. 1998)).  In this analysis, "it is

a sound rule that the balance should generally be struck in favor of admission when the evidence

indicates a close relationship to the event charged." *United States v. Moore*, 732 F.2d 983, 989

(D.C. Cir. 1984) (quoting *United States v. Day*, 591 F.2d 861, 878 (D.C. Cir. 1978)); *see also*

---

[3] The specific statements discussed in this filing are illustrative only.  The United States anticipates offering additional statements at trial—through documents and testimony.  The United States anticipates that the arguments herein will apply to these additional statements as well.

*United States v. Roberson*, 581 F. Supp. 3d 65, 76 (D.D.C. 2022) ("Rule 403 does not countenance exclusion of evidence because it too effectively suggests that the defendant committed the charged crime.").

When a party seeks to introduce an out-of-court statement to prove the truth of a matter asserted, it may be subject to exclusion under the rule against hearsay. Fed. R. Evid. 801, 802. This rule, however, applies only to statements that are offered "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c)(2). The rule also is inapplicable to statements by a party-opponent, including his coconspirators, which are not hearsay. Fed. R. Evid. 801(d)(2)(A), (d)(2)(E). Additionally, the rule is subject to various exceptions for statements that, although offered for the truth of the matter asserted, are nonetheless admissible because they fall into categories with special indicators of reliability. Fed. R. Evid. 803, 804.

In sum, as long as an out-of-court statement is relevant, has probative value not substantially outweighed by countervailing factors, and is not inadmissible hearsay, it should be admitted.

      B.      **<u>Nonhearsay: Coconspirator Statements</u>**

          1.      <u>Legal Standard</u>

Rule 801 provides that a statement "offered against an opposing party" is "not hearsay" under certain circumstances. Fed. R. Evid. 801(d)(2). That definitional exclusion applies not only to statements "made by the party" himself, *id.* (d)(2)(A), but also includes statements "made by the party's coconspirator during and in furtherance of the conspiracy," *id.* (d)(2)(E). Nearly every out-of-court statement anticipated to be offered by the United States during this trial is admissible on this basis.

Three requirements apply for the admission of coconspirator statement: (1) a conspiracy existed; (2) the declarant and the defendant against whom the statement is offered were members of the conspiracy; and (3) the statements were made in furtherance of the conspiracy. *See, e.g.*, *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987); *United States v. Perholtz*, 842 F.2d 343, 356 (D.C. Cir. 1988). Each of these elements needs to be proven by only a preponderance of the evidence, *see United States v. Brockenborrugh*, 575 F.3d 726, 735 (D.C. Cir. 2009), and can be shown by evidence that is not itself admissible, *see* Fed. R. Evid. 104(a); *Bourjaily*, 483 U.S. at 176–79. Any finding by the Court that the requirements of Rule 801(d)(2)(E) are met must, however, be based at least partially "on some independent evidence of the conspiracy," that is, on evidence other than the statements whose admissibility is in question. *See United States v. Gewin*, 471 F.3d 197, 201 (D.C. Cir. 2006). The required independent evidence may take many forms, including "contemporaneous acts suggestive of the charged conspiracy and/or corroborative of the contents of the purported coconspirator statements." *United States v. Bailey*, No. 19-cr-156, 2022 WL 4379059, at *2 (D.D.C. Sept. 22, 2022).

## 2.   No Pretrial Hearing Is Necessary

Before applying the above requirements to statements in this case, a note on procedure: "In this district it is common practice for a court to avoid a disfavored mini-trial of the evidence by deferring its determination regarding the admissibility of alleged co-conspirator statements until after the close of the government's case." *United States v. Loza*, 763 F. Supp. 2d 108, 112 (D.D.C. 2011) (internal quotation marks omitted) (quoting *United States v. Cooper*, 91 F.Supp.2d 60, 78 (D.D.C.2000)); *see also United States v. Jackson*, 627 F.2d 1198, 1218 (D.C. Cir. 1980). Foregoing such proceedings prior to trial is entirely proper, and, in fact, the necessary findings can even wait until after the jury has heard or seen the statements, because a court "may, in [its]

discretion, permit the introduction of evidence as to things said and done by an alleged co-conspirator subject to being connected up and followed by evidence of the existence of the conspiracy." *Jackson*, 627 F.2d at 1218 (quoting *United States v. Vaught*, 485 F.2d 320, 323 (4th Cir. 1973)); *see also United States v. Slade*, 627 F.2d 293, 307 (D.C. Cir. 1980) (noting that the trial court "retains discretion . . . to admit particular co-conspirator statements conditioned on a later showing of substantial independent evidence of the three prerequisites for their admission").

There are good reasons that this district rejects "mini-trials" on the admissibility of coconspirator statements.  For one, such hearings would involve the same evidence to be later offered at trial, making them "wasteful of judicial time, as the hearing and trial testimony . . . would have been largely duplicative." *United States v. White*, 116 F.3d 903, 915 (D.C. Cir. 1997).  For another, they might give defense counsel "two bites at the apple to cross-examine" witnesses. *United States v. Apodaca*, 275 F. Supp. 3d 123, 139 (D.D.C. 2017).  And third, given the frequent importance of cooperator testimony in proving conspiracies, pretrial hearings would often pose risks to witness safety. *See United States v. Edelin*, 128 F. Supp. 2d 23, 45 (D.D.C. 2001).

Accordingly, while the United States submits this motion to assist the Court in its evaluation of statements to be offered and to provide fair notice to defense counsel, the Court is not required to conclusively decide any Rule 801(d)(2)(E) issues before trial, leaving no need for any separate evidentiary hearing on the topic.

Relatedly, binding Circuit precedent holds that the United States need not specify every coconspirator statement it intends to offer at trial, because "[n]othing in the Federal Rules of Evidence or in the Jencks Act requires such disclosure." *United States v. Tarantino*, 846 F.2d 1384, 1418 (D.C. Cir. 1988).  In this case, the United States has already provided through discovery

the defense with numerous coconspirator statements in the form of chat messages and videos, which the United States anticipates will be offered as exhibits at trial.  As *Tarantino* makes clear, there is no separate requirement that the United States identify other coconspirator statements that may be proven by, for example, the testimony of cooperating witnesses.

       3.    <u>Analysis</u>

For each coconspirator statement to be offered at trial, the evidence satisfies Rule 801(d)(2)(E)'s requirements by a preponderance of the evidence.

       a.    <u>A conspiracy existed</u>

Defendants are charged in Count One with a conspiracy to commit an offense against the United States, in violation of Title 18, United States Code, Section 371.  The Indictment charges that "[t]he goals of the conspiracy were (1) to stop, delay, and hinder Congress's Certification of the Electoral College vote, and (2) to corruptly alter, destroy, mutilate, and conceal a record, document or other object to prevent evidence of their unlawful acts on January 6, 2021 from being used in an official proceeding, that is, the grand jury investigation into the attack of the Capitol on January 6, 2021."  ECF No. 65.  Based on all the facts summarized above, and those that will be adduced at trial, the United States will demonstrate by a preponderance of evidence that a conspiracy existed and that defendants were members.[4]

       b.    <u>Declarants were members of the conspiracy</u>

"Where one is a defendant, the declarations of his co-conspirator done in furtherance of the

---

[4] The Indictment charges a specific conspiracy, but this need not be the "conspiracy" at issue for purposes of Rule 801(d)(2)(E).  Even a lawful "joint enterprise" could serve as the "conspiracy" under Rule 801(d)(2)(E).  *United States v. Brockenborrugh*, 575 F.3d 726, 735 (D.C. Cir. 2009) ("Admission, however, is not contingent upon the finding of an unlawful combination.  Rather we have held that, despite its use of the word 'conspiracy,' Rule 801(d)(2)(E) allows for admission of statements by individuals acting in furtherance of a lawful joint enterprise.").

conspiracy formed between them are deemed to be authorized by the defendant and are admissible against him." *United States v. Russo*, 302 F.3d 37, 45–46 (2d Cir. 2002); *see also United States v. Miller*, 738 F.3d 361, 374 (D.C. Cir. 2013). This principle applies to statements of codefendants charged in the same conspiracy case, but also to the statements of uncharged coconspirators.

There is no requirement that the defendant heard or later became aware of the statement. For example, "statements of [the defendant's] co-conspirators are admissible against him, even if made before he joined the conspiracy." *United States v. Badalamenti*, 794 F.2d 821, 828 (2d Cir. 1986); *see also United States v. Farhane*, 634 F.3d 127, 161 n.35 (2d Cir. 2011) ("[W]here statements are made in the course of an existing conspiracy in which the defendant later joins hose statements may be admitted against him, even though he was not a member of the conspiracy at the time the statements were made.").

Nor is it required that "the person to whom the statement is made also be a member" of the conspiracy. *United States v. James*, 712 F.3d 79, 106 (2d Cir. 2013) (quoting *In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93, 139 (2d Cir. 2008)); *see also United States v. Edmond*, 52 F.3d 1080, 1111 (D.C. Cir. 1995) ("Rule 801(d)(2)(E) does not require that the statement be made to a co-conspirator."); 2 McCormick On Evid. § 259 (8th ed.) ("The statement need not be made to a member of the conspiracy but may be made to someone outside the conspiracy and even unwittingly to a government informer as long as a conspiracy exists and the person making the statement is making it during and in furtherance of the conspiracy.").

For each example in the "Selected Statements" section below—and for any other coconspirator declarant whose statements are offered at trial—there are sufficient facts that will be adduced at trial to establish that the declarant was a member of the conspiracy.

c.    <u>Statements were made in furtherance of the conspiracy</u>

Courts have "broadly construed" the category of statements made "in furtherance of" a conspiracy.  *United States v. Johnson*, 872 F.2d 612, 623 (5th Cir. 1989); *see also, e.g.*, *United States v. Patton*, 594 F.2d 444, 447 (5th Cir. 1979) ("Although the phrase 'in furtherance of the conspiracy' has a talismanic ring to it, the phrase must not be applied too strictly or the purpose of the exception would be defeated."); *United States v. Escobar*, 50 F.3d 1414, 1423 (8th Cir. 1995). The breadth of the concept is evident in the variety of theories that have been affirmed.   For example, statements are admissible as being in furtherance of the conspiracy under the following theories:

- Statements promoting the objectives of the conspiracy, *see, e.g.*, *United States v. Hamilton*, 689 F.2d 1262, 1270 (6th Cir. 1982) ("It is enough that they be intended to promote the conspiratorial objectives."); *United States v. Townley*, 472 F.3d 1267, 1273 (10th Cir. 2007).

- Statements identifying coconspirators, *see, e.g.*, *United States v. Handy*, 668 F.2d 407, 408 (8th Cir. 1982) ("Statements of a coconspirator identifying a fellow coconspirator are considered to be made in furtherance of the conspiracy."); *United States v. Smith*, 833 F.2d 213, 219 (10th Cir. 1987).

- Statements revealing the existence of the conspiracy, *see, e.g.*, *United States v. Kocher*, 948 F.2d 483, 485 (8th Cir. 1991) ("[S]tatements which reveal the existence and progress of a conspiracy are also in furtherance of the conspiracy.").

- Statements outlining the history of the conspiracy, *see, e.g.*, *United States v. Thai*, 29 F.3d 785, 813 (2d Cir. 1994) ("Statements relating past events meet the in-furtherance test if they serve some current purpose in the conspiracy."); *United States v. Celis*, 608 F.3d 818,

843 (D.C. Cir. 2010); *United States v. Dawson*, 141 F.3d 1160 (4th Cir. 1998); *United States v. Stratton*, 779 F.2d 820, 828–29 (2d Cir. 1985); *United States v. Reyes*, 798 F.2d 380, 384 (10th Cir. 1986).

- Statements explaining the current status of the conspiracy, *see, e.g.*, *United States v. Weaver*, 507 F.3d 178, 185 (3d Cir. 2007) ("A declarant's statement explaining the current status of the conspiracy is 'in furtherance' of that conspiracy only if the addressee is also a co-conspirator."); *Townley*, 472 F.3d at 1273; *Celis*, 608 F.3d at 843.

- Statements inducing the assistance of others or giving directions to facilitate the conspiracy, *see, e.g.*, *Tarantino*, 846 F.2d at 1412 ("If the statement, however, can reasonably be interpreted as encouraging a co-conspirator or other person to advance the conspiracy, or as enhancing a co-conspirator or other person's usefulness to the conspiracy, then the statement is in furtherance of the conspiracy and may be admitted."); *United States v. Williamson*, 53 F.3d 1500, 1521 (10th Cir. 1995).

- Statements reassuring members of the conspiracy or building trust and cohesiveness among coconspirators, *see, e.g.*, *United States v. Maldonado-Rivera*, 922 F.2d 934, 958–59 (2d Cir. 1990) ("Statements between coconspirators that may be found to be in furtherance of the conspiracy include statements that provide reassurance, or seek to induce a coconspirator's assistance, or serve to foster trust and cohesiveness, or inform each other as to the progress or status of the conspiracy."); *United States v. Ammar*, 714 F.2d 238, 252 (3d Cir. 1983); *United States v. Nazemian*, 948 F.2d 522, 529 (9th Cir. 1991).

"Moreover, so long as a co-conspirator statement was in furtherance of the conspiracy, there is no requirement that it have been in furtherance of the interests of the defendant himself or of any particular co-conspirator." *United States v. Gupta*, 747 F.3d 111, 124 (2d Cir. 2014).

4.      Selected Statements

Both defendants—as well as coconspirators—made many statements in furtherance of the conspiracy, which the United States anticipates introducing at trial.  These statements fall into many of the above categories of statements in furtherance of a conspiracy.

For example, Defendant Badalian's statements scheduling and soliciting participation in training exercises in advance of January 6, 2021, are statements inducing the assistance of others in a conspiracy, *see, e.g.*, *Tarantino*, 846 F.2d at 1412, as well as statements building trust and cohesiveness among coconspirators, *see, e.g.*, *Maldonado-Rivera*, 922 F.2d at 958–59. Specifically, on November 23, 2020, Defendant Badalian wrote, on the Patriots 45 Chat, "hey everyone i don't mean to be all pushy and shit but i really do think we need a dedicated 8 or 10 man squad with practiced manuevers and formations and going to paintball this sunday could be a great way to practice such things."[5]  On November 29, 2020, he wrote, in that chat, "No offense but 9am tmrw at Warped Paintball is where its at….another drunken late night wont lead to a day of solid training for the coming unrest.  Weve been slipping.  Its way scarier for the powers that be if they see Patriots are amassing for training rather than just rallying."  Further, on December 22, 2020, also in the chat, Defendant Badalian scheduled another training: "so this Sunday. Paintball.  one last group training before DC.  please guys.  and gals.  we need to know how to fight together while under fire.  get used to that feeling.  learn one anothers advantages and disadvantages."  When another member of the chat asked what Badalian was training for, he responded, "a firefight with armed terrorists."

Both defendants also made statements promoting the objectives of the conspiracy, *see, e.g.*, *Hamilton*, 689 F.2d at 1270.  For example, on January 2, 2021, on the Patriots 45 Chat, Defendant

---

[5] All messages are reproduced as written; all typos are from the original source.

Badalian wrote, "we have to take down anyone who attacks other shit theyre probably antifa in disguise.  no attacking cops remember they just follow orders."  Badalian added, "and its about arresting them no shooting traitors either.  if they resist arrest thats different."  Defendant Rodriguez also made such statements.  For example, on December 31, 2021, on the Patriots 45 Chat, when members of the group were discussing what gear to bring—brass knuckles, knives, a collapsible baton—Defendant Rodriguez wrote, "I'm telling everyone bring it.  War baby!"

A similar analysis supports introduction of statements related to the collection of weapons and tactical gear in advance of January 6, 2021.  On December 31, 2020, on the Patriots 45 Chat, another chat member wrote, "Im bringing a knife and three pepper sprays and a stun gun."  Defendant Rodriguez wrote, "Yes exactly all that!"  On January 2, 2021, on the Patriots 45 Chat, Defendant Badalian wrote, "ok i have 5 respirators 1pb mask, 2 snow goggles, 2 sets of kneepads, 2 full baseball helmets for everyone."

The United States will also introduce coconspirator statements, which were made in furtherance of the conspiracy by revealing the conspiracy through efforts to cover it up, *see, e.g.*, *Kocher*, 948 F.2d at 485.  For example, on January 12, 2021, on the Patriots 45 Chat, Daniel Rodriguez wrote, "Assume everyone who went to DC or talked to someone who went to DC now has their phones tapped and monitored[.]  I essentially got confirmation about that inadvertently[.] please don't ask or talk about anything that you don't want the fbi knowing.  Congratulations everyone we're being watched."  On or about January 10, 2021, another coconspirator, in the presence of Rodriguez and Badalian, wrote a note to another individual, "I WANT TO HELP YOU DELETE EVERYTHING AND TO TRANSFER THE FILES TO A SECURE HARD DRIVE."

Because the above statements, and other statements that fall into the categories discussed above, are statements in furtherance of a conspiracy, they should be admitted at trial under Fed. R. Evid. 801(d)(2)(E).

### C.   Nonhearsay: Statements Not Offered for the Truth of the Matter Asserted

Statements may be excluded as inadmissible hearsay only when "a party offers [the statement] in evidence to prove the truth of the matter asserted in the statement."  Fed. R. Evid 801(c)(2); *see also Sabre Int'l Sec. v. Torres Advanced Enter. Sol., LLC*, 72 F. Supp. 3d 131, 141 (D.D.C. 2014) ("[The hearsay rule] does not apply to evidence that is not offered for its truth but for another purpose.").  Nor does it apply to statements that are not "intended . . . as an assertion." Fed. R. Evid. 801(a), (c); *see also Ali v. District of Columbia Government*, 810 F. Supp. 2d 78, 83 (D.D.C. 2011) ("If [a] statement is not an assertion or is not offered to prove the facts asserted, it is not hearsay" (quoting 2 McCormick On Evid. § 249 (6th ed. 2009))).

In this case, many of the statements that the United States will seek to admit will serve to demonstrate the intent, motive, or state of mind of the declarant.  Such statements, as discussed below, are admissible under an exception to the rule against hearsay.  Fed. R. Evid. 803(3).  The same or other statements will be introduced to show the effect on the listener; the conveyance of some question, command, or instruction; and/or circumstantial evidence of the declarant's state of mind.  Such statements are definitionally not hearsay.  Fed. R. Evid. 801, 802.

Note that these purposes are not mutually exclusive; in fact, they tend to overlap.  A message from one coconspirator to another, for example, might be relevant all at once to (1) circumstantially show the declarant's mental state; (2) prove the effect on the listeners; (3) provide context for messages that directly follow; and (4) explain the future conduct of the coconspirators. None of these purposes depends on the truth of any matter being asserted.

1.    <u>Questions and Commands</u>

"Questions and commands generally are not intended as assertions, and therefore cannot constitute hearsay." *United States v. Thomas*, 451 F.3d 543, 548 (8th Cir. 2006) (collecting cases); *see also United States v. Moore*, No. 18-cr-198, 2021 WL 1966570, at \*5 (D.D.C. May 17, 2021) ("A statement is an 'oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion,' not a question, command, greeting, or other 'nonassertive' communication where any 'conveyed messages . . . were merely incidental and not intentional.'" (quoting Fed. R. Evid. 801(a); *United States v. Long*, 905 F.2d 1572, 1580 (D.C. Cir. 1990))).   In this case, coconspirators would regularly give commands, or ask questions of one another.  Because none of these questions or commands were statements intended as assertions, they are nonhearsay and are admissible.   To the extent defendants would claim any of these statements were intended as assertions, they would have the burden of establishing that intent.  *See Long*, 905 F.2d at 1580; *see* Fed. R. Evid. 801 advisory committee notes ("The rule is so worded as to place the burden upon the party claiming that the intention existed; ambiguous and doubtful cases will be resolved against him and in favor of admissibility.").

a.    <u>Selected Statements</u>

The United States anticipates offering at trial certain questions asked or commands made by defendants.  For example, on December 20, 2020, Defendant Badalian wrote, on the Patriots 45 Chat, "ok so who is down to drive to DC on Jan 4?"  On December 21, 2020, in the same chat, Defendant Badalian wrote, "we need to violently remove traitors and if they are in key positions rapidly replace them with able bodied Patriots."  Because these questions and commands, and others like them, are not intended as assertions, they are definitionally nonhearsay and should be admitted at trial.

17

2.      Defendant's State of Mind

Statements are likewise not offered for the truth of a matter asserted, and are therefore nonhearsay, when they circumstantially show the defendant's "intent, motive, or state of mind," and thereby "help to explain his future conduct, or refute any possibility of mistake or misunderstanding." *Moore*, 2021 WL 1966570, at *5 (alteration omitted) (quoting *United States v. Safavian*, 435 F. Supp. 2d 36, 45 (D.D.C. 2006)).[6]

The United States expects that, at trial, much of defendants' physical conduct will not be in serious dispute. The main questions for the jury will instead be those relating to mens rea: what defendants knew and intended, and what was their shared understanding of the agreement they entered into. It is therefore necessary that the jury receive evidence of statements that "help to explain [defendants'] motive and intent at the time [they] undertook certain actions," *Moore*, 2021 WL 1966570, at *5—such as the creation of Patriots 45 group and the storming of the Capitol. When offered for those purposes, such statements are nonhearsay.

a.      Selected Statements

Both defendants, along with their coconspirators, made statements that the United States anticipates offering at trial to show defendants' intent and state of mind, rather than for the literal truthfulness of the statements. For example, the day before the January 6, 2021 riot, in the Patriots 45 Chat, Defendant Rodriguez wrote, "There will be blood. Welcome to the revolution." The United States will not offer these words for their truthfulness. The United States will not offer

---

[6] This nonhearsay basis of admission is separate and distinct from the hearsay exception under Rule 803(3) for a "statement of the declarants then-existing state of mind (such as motive, intent, or plan)," under which an assertion is offered for its truth. The difference is between "Don't shoot!" (circumstantially showing fear) and "I'm scared" (offered for its truth). *Cf. United States v. Reyes*, 78 M.J. 831, 834 (A. Ct. Crim. App. 2019) (explaining that the analogous Rule of Military Evidence 803(3) "should not be confused with the nonhearsay *use* of statements offered as *circumstantial* evidence of a declarant's state of mind"), *aff'd*, 80 M.J. 218 (C.A.A.F. 2020).

these statements to prove that Defendant Rodriguez accurately predicted violence, or that he, in fact, welcomed anyone to a revolution. Instead, the United States will offer these statements as probative of defendants' intent with respect to the actions they would take on January 6, 2021.

Many other statements by defendants similarly carry no truth value, and are not offered to establish any, but will instead be offered to show defendants' intent and state of mind, including their anticipation that they would be participating in violent conduct and seeking to obstruct Congress. For example:

- o On December 21, 2020, on the Patriots 45 Chat, Defendant Badalian wrote, "we need to violently remove traitors and if they are in key positions rapidly replace them with able bodied Patriots."

- o On December 22, 2020, on the Patriots 45 Chat, Defendant Badalian wrote, "he [i.e., President Trump] has to let it sit on his desk until Jan 3. veto. by the time mitch can do the override we will be there. then he can invoke and Patriots will be a[t] the ready."

- o On December 29, 2020, on the Patriots 45 Chat, Defendant Rodriguez wrote, "Congress can hang. I'll do it. Please let us get these people dear God."

- o Between December 31, 2020 and January 4, 2021, Daniel Rodriguez said he would "assassinate Joe Biden" if he got the chance, and said he "would rather die than live under a Biden administration."

- o On January 2, 2021, on the Patriots 45 Chat, Defendant Badalian wrote, "real Trump supporters are looking to arrest traitors like Nancy and Mitch and Biden etc. not attack buildings lol."

Because these and similar statements will be offered to show defendants' state of mind, they should be admitted as nonhearsay.

### 3.   Effect on the Listener

Like statements offered to show the speaker's mental state, statements offered to show an effect on the listener are nonhearsay because they are offered to prove something other than the truth of the matter asserted. *See, e.g.*, *United States v. Thompson*, 279 F.3d 1043, 1047 (D.C. Cir. 2002) ("An out-of-court statement that is offered to show its effect on the hearer's state of mind is not hearsay under Rule 801(c)."). This principle applies to the many communications among coconspirators, which shaped the coconspirators' understanding of the agreement they formed.

### a.   Selected Statements

Many of the statements in the Patriots 45 Chat, and among coconspirators elsewhere, will be offered by the United States not for their truthfulness, but for the effect on the listener. For example, on January 5, 2021, on the Patriots 45 Chat, Defendant Rodriguez wrote, "There will be blood. Welcome to the revolution." As noted above, this statement should be admitted as to Defendant Rodriguez's state of mind, but it should also be admitted for its effect on Defendant Badalian, who, after hearing Defendant Rodriguez's call for "blood" and "revolution," nonetheless joined him and continued with the conspiracy on January 6, 2021, thus demonstrating his own intent and understanding of the scheme.

Many other planning statements may similarly be introduced for their effect on coconspirator listeners. For example, on November 23, 2020, Defendant Badalian wrote, on the Patriots 45 Chat, "hey everyone i don't mean to be all pushy and shit but i really do think we need a dedicated 8 or 10 man squad with practiced manuevers and formations and going to paintball this sunday could be a great way to practice such things." Defendant Rodriguez responded by

asking who should go and identifying several individuals.  This exchange between defendants, like many others, demonstrates their understanding of their conspiratorial goals: to obstruct Congress's certification of the electoral college vote on January 6.

Likewise, statements by then-President Trump and others at the January 6, 2021 rally at the Ellipse, or in advance, would not be offered for the truth of the matter asserted, but for the effect on the listener.  For example, on December 19, 2020, then-President Trump wrote on Twitter, "Statistically impossible to have lost the 2020 Election.  Big protest in D.C. on January 6th.  Be there, will be wild."  The United States would offer this statement for the effect on the defendants—rather than for the assertion that it was "[s]tatistically impossible" that then-President Trump lost the election, or that the January 6, 2021 protest would "be wild."  On January 6, 2021, at the Ellipse, Rudy Giuliani stated, "Let's have trial by combat."  Here too, the statement would be offered for the effect on the defendants, not for the truth of any matter asserted; and, in any event, as this is a command, there is no assertion.

These statements, and other statements offered for the effect on the listener, rather than the truth of the matter asserted, should be admitted at trial as nonhearsay.

**D.    Hearsay Exceptions**

Various statements the United States will offer are covered by hearsay "exceptions," Fed. R. Evid. 803, 804, either as alternative bases for admission or (in rare cases) the sole basis of admissibility.

1.    Rule 803(1): Present Sense Impressions

a.    Legal Standard

The "present sense impression" exception permits the use for the truth of any "statement describing or explaining an event or condition, made while or immediately after the declarant

perceived it." Fed. R. Evid. 803(1). "The exception is grounded in the idea that 'statements about an event and made soon after perceiving that event are especially trustworthy because substantial contemporaneity of event and statement negate the likelihood of deliberate or conscious misrepresentation.'" *United States v. Wills*, No. 18-cr-0117, 2018 WL 6716096, at *2–3 (D.D.C. Dec. 21, 2018) (quoting *Navarette v. California*, 572 U.S. 393, 400 (2014)). The "contemporaneity of event and statement" need only be "substantial" and not absolute, because "in many, if not most, instances precise contemporaneity is not possible and hence a slight lapse is allowable." Fed. R. Evid. 803 advisory committee notes. The "fundamental premise behind this hearsay exception 'is that substantial contemporaneity of event and statement minimizes unreliability due to the declarant's defective recollection or conscious fabrication.'" *United States v. Green*, 556 F.3d 151, 155 (3d Cir. 2009) (alterations omitted) (quoting *United States v. Manfre*, 368 F.3d 832, 840 (8th Cir. 2004)).

b.    Selected Statements

Statements made by the defendants at the U.S. Capitol on January 6, 2021, captured on videos taken by others present on the grounds, will primarily compromise the statements the government will seek to admit as present sense impressions. For instance, when Defendant Rodriguez and his coconspirators were inside ST6M, rifling through desks and bags in a Congressional office, he stated "we are going to open this up looking for intel," referring to a bag he was holding. He then announced what he found in the bags, stating "emergency escape hoods! Guys, who needs to get out of here alive" and "emergency preparation guide!  Intel!"

2.      Rule 803(2): Excited Utterances

a.      Legal Standard

The "excited utterance" exception permits the use for the truth of any "statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(2).  "The rationale underlying the 'excited utterance' exception is that 'excitement suspends the declarant's powers of reflection and fabrication, consequently minimizing the possibility that the utterance will be influenced by self interest and therefore rendered unreliable.'"  *United States v. Alexander*, 331 F.3d 116, 122 (D.C. Cir. 2003) (quoting *United States v. Brown*, 254 F.3d 454, 458 (3d Cir. 2001)); *see also United States v. Joy*, 192 F.3d 761, 766 (7th Cir. 1999) ("This exception is premised on the belief that a person is unlikely to fabricate lies (which presumably takes some deliberate reflection) while his mind is preoccupied with the stress of an exciting event.").

"For a statement to qualify as an excited utterance, the proponent of the exception must establish: (1) the occurrence of a startling event; (2) that the declarant made the statement while under the stress of excitement caused by the event; and (3) that the declarant's statement relates to the startling event." *Alexander*, 331 F.3d at 122.  "[U]nlike the hearsay exception for present sense impressions, an excited utterance need not be contemporaneous with the startling event to be admissible.  Rather, the utterance must be contemporaneous with the excitement engendered by the startling event." *Id.* (internal quotation marks and citations omitted) (quoting Fed. R. Evid. 803(1); *United States v. Tocco*, 135 F.3d 116, 127 (2d Cir. 1998); *Joy*, 192 F.3d at 766).  Relevant factors in assessing the sufficiency of the "excitement" include "the characteristics of the event; the subject matter of the statement; whether the statement was made in response to an inquiry; and

the declarant's age, motive to lie and physical and mental condition." *Id.* For an audio-recorded statement, the Court can also consider the declarant's "tone and tenor of voice." *Id.*

        b.    Selected Statements

Much like the present sense impressions, statements made by the defendants on videos taken by other rioters at the U.S. Capitol on January 6, 2021, will primarily compromise the excited utterance excepted statements. For instance, when Defendant Rodriguez first entered the Lower West Terrace tunnel and saw another rioter he knew from California, that rioter was filming a video on her cell phone. As rioters worked to break down the door in the tunnel in front of him, Defendant Rodriguez exclaimed, jumping up and down, "Hey! Yeah! We're fucking doing it! We're fucking doing it!"

      3.    Rule 803(3): Then-Existing Mental, Emotional, or Physical Condition

        a.    Legal Standard

The "then-existing mental, emotional, or physical condition" exception permits the use for the truth of any "statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will." Fed. R. Evid. 803(3). To qualify under this exception, "[t]he statement must be limited to a declaration showing the declarant's state of mind and not the factual occurrence engendering that state of mind." *United States v. Lentz*, 282 F. Supp. 2d 399, 411 (E.D. Va. 2002), *aff'd*, 58 F. App'x 961 (4th Cir. 2003).

        b.    Selected Statements

Many of the statements discussed as definitionally nonhearsay when offered not for the truth of the matter asserted, but for their relevance to demonstrating defendants' intent could

alternatively be admitted under Rule 803(3).  For example, on December 21, 2020, in the Patriots

45 Chat, Defendant Badalian wrote, "we need to violently remove traitors and if they are in key

positions rapidly replace them with able bodied Patriots."  For the reasons stated above, this

statement should be admitted as nonhearsay; however, this statement is also a clear articulation of

Defendant Badalian's intent, motive, and plan.  This statement and similar statements of

defendants' then-existing intent and motive should be admitted at trial pursuant to Rule 803(3).

        4.     <u>Rule 804(b)(3): Statements Against Interest</u>

        a.     <u>Legal Standard</u>

The "statement against interest" exception permits the use for the truth of certain statements

that "a reasonable person in the declarant's position would have made only if the person believed

it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary

interest or had so great a tendency to invalidate the declarant's claim against someone else or to

expose the declarant to civil or criminal liability."  Fed. R. Evid. 804(b)(3).  Two additional

requirements apply here: First, the declarant must be "unavailable as a witness," Fed. R. Evid.

804(b), which generally applies to defendants in criminal trials who are expected to exercise their

Fifth Amendment privilege, *see, e.g.*, *Stratton*, 779 F.2d at 828; *United States v. Rhodes*, 22-cr-15,

ECF No. 322, at 2 (D.D.C. Sept. 19, 2022) ("[The defendant] is unavailable to the government as

a witness, because presumably she would invoke her Fifth Amendment privilege against self-

incrimination if called by the prosecution.").  Second, given that this is a criminal case, the

statement must be "supported by corroborating circumstances that clearly indicate its

trustworthiness."  Fed. R. Evid. 804(b)(3).  This exception is based on the "commonsense notion

that reasonable people, even reasonable people who are not especially honest, tend not to make

self-inculpatory statements unless they believe them to be true." *Williamson v. United States*, 512 U.S. 594, 599 (1994).

Admission of such statements "hinges on whether the statement was sufficiently against the declarant's interest that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." *United States v. Williams*, 506 F.3d 151, 155 (2d Cir. 2007) (internal quotation marks omitted) (quoting *Williamson*, 512 U.S. at 603–04). "Whether a challenged statement is sufficiently self-inculpatory can only be answered by viewing it in context"; accordingly, "this determination must be made on a case-by-case basis." *Id.* at 155.

To qualify as a statement against interest under Rule 804(b)(3), the statement need not be sufficient, standing alone, to convict the declarant. *See United States v. Persico*, 645 F.3d 85, 102 (2d Cir. 2011). Instead, Rule 804(b)(3) "encompasses disserving statements by a declarant that would have probative value in a trial against the declarant." *United States v. Alvarez*, 584 F.2d 694, 699 (5th Cir. 1978); *see also Persico*, 645 F.3d at 102. Nor does the Rule "require that the declarant be aware that the incriminating statement subjects him to immediate criminal prosecution." *Persico*, 645 F.3d at 102 (quoting *United States v. Lang*, 589 F.2d 92, 97 (2d Cir. 1978)).

### b.     Selected Statements

The United States will seek to admit many of defendants' statements as statements against their interest—in addition to other, independent avenues of admissibility. For example, following some of defendants' conduct on January 6, 2021, that same day, on the Patriots 45 Chat, Defendant Rodriguez wrote, "Omg I did so much fucking shit rn and got away tell you later." He further added that he "[t]azzzzed the fuck out of the blue." These admissions are so demonstrably against Defendant Rodriguez's interests that the Court can be assured that "a reasonable person in the

declarant's position would not have made the statement unless believing it to be true." *Williams*, 506 F.3d at 155.  Accordingly, this statement, and similar statements against interest, should be admitted at trial under Rule 804(b)(3).

## **CONCLUSION**

For the foregoing reasons, the United States respectfully submits that all the above-described and similar statements are admissible at trial.

Date: December 15, 2022

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By:    */s/ Kimberly L. Paschall*
KIMBERLY L. PASCHALL
D.C. Bar No. 1015665
Assistant United States Attorney
Capitol Siege Section
United States Attorney's Office
for the District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-2650
Kimberly.Paschall@usdoj.gov


By:    */s/ Anthony W. Mariano*
ANTHONY W. MARIANO
MA Bar No. 688559
Trial Attorney, Detailee
Capitol Siege Section
United States Attorney's Office
for the District of Columbia
601 D Street N.W.
Washington, DC 20530
(202) 476-0319
Anthony.Mariano2@usdoj.gov
