UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) Crim. Action No. 21-0246-1, 2 (ABJ) |
| DANIEL RODRIGUEZ, | ) |
| EDWARD BADALIAN, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

On October 6, 2022, defendant Badalian docketed what was styled as a "notice of filing juror questionnaire" [Dkt. # 128], which was recast as a motion for juror questionnaire [Dkt. # 130] on October 11 ("Mot."). The government stated in response [Dkt. # 131] that it did not oppose the motion or the questionnaire. Defendant Rodriguez did not file anything with respect to the motion, but he did orally join the motion at a status conference on November 3. The Court recognizes that on December 15, 2022, it granted the motion in part and denied the motion in part; it approved of a written questionnaire process, but noted that the particular questionnaire would be revised. Dec. 15, 2022 Minute Order.

The Court has since spent considerable time reviewing the questionnaire closely, and it has come to the opinion that the questionnaire is too lengthy and too intrusive to be an appropriate or necessary substitute for the ordinary voir dire process in this case. The Court has now overseen jury selection in two January 6 cases in its courtroom, and it can say, based on its own experience and the experience of multiple other judges in the courthouse, that the ordinary voir dire process has been effective in identifying potential jurors who are already familiar with the particular case before the Court or who have strong opinions about the events of January 6 in general. Use of a questionnaire has been the exception rather than the rule, and the cases where questionnaires were used have been those where there has been considerable publicity about a group to which the co-defendants and alleged co-conspirators belonged as well as some of the individual defendants personally.

Here, we have two individual defendants who have been the subject of little, if any, pretrial publicity in the district. Defendant Badalian pointed out that "[t]he use of a prescreening questionnaire may be considered when a lengthy trial is anticipated, or certain biases may be at issue or there has been a great deal of pretrial publicity." Mot. at 1, citing *Skilling v. United States*, 130 S. Ct. 2896 (2010). He then argued: "[i]n this matter, potential jurors may hold biases against people who were inside any Capitol building or expressed any desire to keep the then current administration in power. Certainly, there was and remains a great deal of pretrial publicity." Mot. at 1. But he has not pointed to any instance in which the publicity involved him in particular. For that reason, the Court explained in its minute order that it found the request for a questionnaire to

be appropriate "given the publicity surrounding the particular assault that forms the basis of Counts Four and Six against defendant Rodriguez, as opposed to January 6 allegations in general," but it advised that it might revisit the issue if defendant Rodriguez's case were to be resolved and Badalian was being tried individually. In other words, defendant Badalian's request did not weigh heavily in the decision; unlike Jeffrey Skilling, who was the Chief Executive Officer of Enron and was a major focus of the publicity after the company's collapse, Badalian has not shown that he is generally known in this district.

And upon further reflection, while the Court notes that there were some news accounts of its ruling on defendant Rodriguez's motion to suppress more than a year ago, it has been provided with nothing to indicate that he is known to many potential jurors in this district either. In the Court's view, the more likely source of potential bias in this case would be the jurors' familiarity with, or opinions about, the alleged victim of the assault charged in Counts Four and Six, as that individual has testified and commented publicly about the events of January 6 in general and the injuries he suffered in particular, and he has done so recently. There is no question that it will be essential to inquire about potential jurors' pretrial exposure to this witness and whether any opinions they may have formed about him render them unable to serve as fair and impartial jurors in this case. But this could be the subject of a single targeted voir dire question put to the entire panel, with individual follow up as needed, and it does not justify requiring the jury to answer, and permitting follow up questions about, the numerous personal details explored in the proposed questionnaire.

For these reasons, the Court will revise the decision set forth in the December 15 Minute Order, deny the motion for a jury questionnaire, and vacate the February 10, 2023 proceeding that was scheduled for the completion of the questionnaires. The jury selection procedure to be followed is summarized in the Voir Dire Criminal Procedure docketed with the Scheduling Order on September 14, 2022, Criminal Voir Dire Procedure [Dkt. # 122-1], and reattached here. The procedure reflects the Court's decision that since there are two defendants, it will exercise its discretion pursuant to Fed. R. Crim. Proc. 24(b) to accord the defendants two additional peremptory challenges.

In addition, it is hereby **ORDERED** that by **January 30, 2023**, as part of the Joint Pretrial Statement, the parties must submit **proposed voir dire questions** (which must be in the form of yes or no questions in accordance with the attached description of the Court's Criminal Voir Dire Procedure) that indicate the voir dire questions on which the parties agree, and the *voir dire* questions on which the parties disagree, with specific objections noted below each disputed question and supporting legal authority, if any.

SO ORDERED.

AMY BERMAN JACKSON
United States District Judge

DATE: January 20, 2023