UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 21-CR-246-1 (ABJ) |
| DANIEL RODRIGUEZ, | |
| Defendant. | |

**RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM
REGARDING DEADLY AND DANGEROUS WEAPON ENHANCEMENT**

The United States of America, by and through the United States Attorney for the District of Columbia, respectfully responds to the defendant's sentencing memorandum. ECF No. 191. The Court invited the government to address the defendant's arguments concerning whether the weapon involved qualifies as a dangerous weapon in its Minute Order from June 18, 2023. The government responds briefly below.

For purposes of U.S.S.G. § 2A2.2(b)(2)(B), a "dangerous weapon" has the meaning given that term in §1B1.1 "and *includes any instrument that is not ordinarily used as a weapon (e.g., a car, a chair, or an ice pick)* if such an instrument is involved in the offense with the intent to commit bodily injury." *See* U.S.S.G. §2A2.2, Comment. n.1. Section 1B1.1 defines "dangerous weapon" as "an instrument capable of inflicting death or serious bodily injury" or one that closely resembles such an object and is used "in a manner that created the impression that the object was such an instrument." *See* U.S.S.G. § 1B1.1, Comment. n. 1(E). As Rodriguez expressly agreed in the plea agreement, he used the electroshock weapon on the neck of Officer Fanone, involving physical contact with that officer and causing bodily injury to the officer, the details of which were

1

also included in the statement of offense. ECF No. 160, at ¶ ¶ 15-16, 20. Indeed, it is inherent in Rodriguez's guilty plea to Count Six that the weapon he used was a "deadly or dangerous weapon." *See* 18 U.S.C. § 111(b).

For purposes of that statute, an object is a deadly or dangerous weapon if it is designed to be used, actually used, capable of being used, or threatened to be used in a manner likely to produce death or serious bodily harm. *See* Assault With a Dangerous Weapon (definition of dangerous weapon), Redbook 4.101 (modified); *United States v. Arrington*, 309 F.3d 40, 45 (D.C. Cir. 2002). Courts in this district have found skateboards and police batons to be "deadly or dangerous weapons" for purposes of § 111(b). *See, e.g.*, *United States v. Owens*, Case No. 21-cr-286 (BAH), 2021 WL 2188144, at *7 n.5 (D.D.C. May 28, 2021) (skateboard); *United States v. Sabol,* 534 F. Supp. 3d 58, 74 (D.D.C. 2021) (police baton). By definition, therefore, if a weapon qualifies as a "deadly or dangerous weapon" for purposes of § 111(b), it almost certainly meets the Guidelines definition of "dangerous weapon."

Several January 6th rulings opine on the deadly and dangerous weapons used by rioters at the Capitol. A close review of those rulings confirm that the weapon Rodriguez used against Officer Fanone is a deadly and dangerous weapon both for purposes of conviction under 18 U.S.C. § 111(a)(1) and (b), and for purposes of U.S.S.G. § 2A2.2(b)(2) at sentencing.

In *United States v. Richard Barnett*, 21-cr-38 (CRC), Judge Cooper reviewed the evidence underlying the jury's determination that a "hike n' strike" stun gun carried by the defendant was a deadly or dangerous weapon. The Judge found that evidence about its construction (including the "spike electrodes") from the president of the company who manufactures the device, and a demonstration by the lead special agent as to its "full blast" shock feature was sufficient evidence

for the jury to find the device was a deadly or dangerous weapon. *Barnett*, 21-cr-38, ECF No. 203, at 21-22.

In *United States v. McCaughey*, 21-cr-40 (TNM), Judge McFadden ruled that a police riot shield could be a deadly or dangerous weapon sufficient to sustain a conviction under § 111(b). While the Judge did not believe that a shield is necessarily or inherently a dangerous weapon, "it is capable of causing bodily injury or death and the Defendant used it in this manner." *See* Exhibit 1, Portion of Transcript from *McCaughey* Verdict. Judge McFadden credited the officer's testimony as to the effects of the riot shield, noting "Mr. McCaughey's use of the shield caused him significant pain, specifically in his lungs, his head and his face, that it crushed him and its hard surface prevented him from fighting against the assault and that he screamed out in part in pain because of Mr. McCaughey's actions against him." *Id.*; *see also*, *United States v. Webster,* 21-cr-208 (APM), ECF No. 99, 2-4 (determining in an order denying a Rule 29 motion that there was evidence to support jury's verdict that a flagpole swung at an officer was a deadly or dangerous weapon); *United States v. Sabol*, 534 F. Supp. 3d 58, 74 (D.D.C. 2021) (determining at a detention hearing that a police baton is a deadly or dangerous weapon.)

Rodriguez now argues, inconsistent with the plea agreement, that he deserves credit for agreeing to an enhancement that shouldn't apply. ECF No. 191, at 16-19. The defense relies primarily on a single jury verdict, in *United States v. GossJankowski*, 21-cr-123 (PLF) to make its argument, stating: "Ultimately, the jury believed that Mr. GossJankowski committed the offenses charged by the government, but they did not find the handheld device was a deadly/dangerous weapon." ECF No. 191, at 18. This statement is misguided at best, and disingenuous at worst. If *GossJankowski* had been tried as a bench trial, the public would have the benefit of the Court's

3

ruling on the elements of the crime, and one could say with certainty that the finder of fact made a determination based on certain evidence presented, or the lack thereof. That cannot be said of a jury trial, without breaching the providence of the jury's deliberations. *See United States v. Watts*, 519 U.S. 148, 155 (1997) ("the jury cannot be said to have 'necessarily rejected' any facts when it returns a general verdict of not guilty.")

Indeed, the facts in *GossJankowski* lend themselves to a wholly different interpretation: not that the instrument itself can never be a deadly or dangerous weapon, but, in the context of that case, it was not used by GossJankowski as a deadly or dangerous weapon. The defendant in *GossJankowski* made his way through the crowd on the inaugural platform towards the officer in question and, while that officer was assaulted and engulfed by the mob, GossJankowski extended an activated stun gun towards the officer's helmet, which he had also grabbed with a free hand. *See United States v. GossJankowksi*, 21-cr-123 (PLF), ECF No. 147, Response to Motion for Bill of Particulars. The defendant never landed a blow on the officer. This case is entirely different. Not only did the defendant land two blows of the electroshock weapon in a particularly dangerous area of Officer Fanone's body (his neck),[1] Rodriguez's use of the weapon caused significant injury to Officer Fanone, as described in the plea's statement of offense and the government's sentencing

---

[1] The government invites the Court to review its expert disclosure on electrical shock weapons (ECF No. 135), in which the government noticed the testimony of Mr. David Wright, Chief Master Instructor for Axon, a public safety technology company that sells, among other things, energy weapons including Tasers. In that notice, the government anticipated Mr. Wright's testimony would include a discussion of an electrical shock weapon's effect on the body, which is determined by the type of weapon, how and where it is used, and how it is deployed. His notice states that if a stun gun or Taser were used on certain parts of the body—such as the neck, face, or groin—severe pain, serious harm, or incapacitation could occur. ECF No. 135, at 7. By contrast, a weapon deployed in other, less sensitive areas may not incapacitate someone, but could cause pain or irritation. *Id.*

memorandum. ECF No. 160, at ¶ ¶ 15-16; ECF No. 189, at 32-34. No such injury was alleged after GossJankowski's assault on the officer. Finally, Rodriguez himself recognized the actions he took and their effect on the officer with his message to the Patriots45MAGA Gang Group chat after his assault and reiterated his intent with those actions: "Tazzzed the fuck out of the blue." *See* Government's Sentencing Exhibit 1.

Finally, Rodriguez's reliance on a jury verdict is additionally misplaced because the standard of proof for purposes of sentencing is lower than what is required at trial—a preponderance of the evidence standard as opposed to proof beyond a reasonable doubt. U.S.S.G. § 6A1.3 commentary; *see also Watts*, 519 U.S. at 156 ("The Guidelines state that it is 'appropriate' that facts relevant to sentencing be proved by a preponderance of the evidence, USSG § 6A1.3, comment., and we have held that application of the preponderance standard at sentencing generally satisfies due process."). The fact that Rodriguez agreed to conduct that the government can easily prove against him is not especially "meritorious" warranting any kind of departure from this Court; nor does his present litigation of this issue speak well of his true acceptance of responsibility.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

BY:   /s/
KIMBERLY L. PASCHALL
Assistant United States Attorney
D.C. Bar No. 1015665
601 D St, N.W.,
Washington, D.C. 20001
202-252-2650
Kimberly.paschall@usdoj.gov